**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) ) ) Chapter 11 |
| MODIVCARE, INC, *et al.*[1] | ) ) ) Case No. 25-90309 (ARP) |
| Debtors. | ) (Jointly Administered) ) |
| | ) Re: Docket No. 439 |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PRELIMINARY OBJECTION TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 (A) APPROVING A GLOBAL SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS AND UHC AND (B) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows in support of this preliminary objection (the "**Preliminary Objection**") to the *Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 9019 (A) Approving a Global Settlement Agreement By and Among the Debtors and UHC and (B) Granting Related Relief* [Docket No. 439] (the "**Motion**") seeking approval of a global settlement agreement (the "**Settlement**") with UnitedHealthcare Insurance Company and certain of its affiliates (collectively, "**UHC**") to amend the Network Access Agreement, dated as of March 15, 2009, and related market specific addenda (as amended from time to time, the "**UHC Agreement**") by and between Debtor ModivCare Solutions, LLC (the "**Company**") and UHC:

---

[1] A complete list of each of the Debtors in these chapter 11 cases (the "**Chapter 11 Cases**") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/ModivCare. Debtor ModivCare Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 6900 E. Layton Avenue, Suite 1100 & 1200, Denver, Colorado 80237.

**PRELIMINARY STATEMENT**[2]

1.　For fiscal year 2024, the Debtors generated $161.1 million of EBITDA.[3] Although the Committee's investigation and plan preparation are not complete, there seems to be little doubt that this quantum of EBITDA implies an enterprise value that would have provided for a substantial distribution to unsecured creditors had the Debtors just reorganized ten months ago. For fiscal year 2026, however, the Debtors are now projecting to generate only $126.6 million in EBITDA.[4] Again although the Committee's work is not yet done, it appears that even with the Debtors' newfound, radically pessimistic projections, an appropriate distribution scheme would still support unsecured creditors' recoveries in these cases. Naturally, the Debtors view the situation differently, taking the position in their Plan that their projected rapid and sustained decline in their profit-making abilities produces an equity value insufficient to pay the First Lien Lenders in full.[5]

2.　The dispute over the value of the Debtors' enterprise and where value breaks in the Debtors' capital structure is directly correlated to the pending Motion. As this Court will see at the hearing on the Motion, the Debtors projected disengagement with UHC results in an annual

---

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings given to them in the body of the Preliminary Objection, and capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the *Declaration of Chad J. Shandler in Support of the Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 9019 (A) Approving a Global Settlement Agreement By and Among the Debtors and UHC and (B) Granting Related Relief* [Docket No. 543] (the "**Shandler Declaration**"), as applicable.

[3] *See Declaration of Chad J. Shandler in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 14] at ¶ 9.

[4] *See Notice of Filing Of (I) Liquidation Analysis, (II) Financial Projections, and (III) Valuation Analysis with Respect to Disclosure Statement for Joint Chapter 11 Plan of Reorganization of ModivCare Inc. and Its Debtor Affiliates* at Ex. D. [Docket No. 350]; *see generally Disclosure Statement for First Amended Joint Chapter 11 Plan of Reorganization of ModivCare Inc. And Its Debtor Affiliates* [Docket No. 550] (the "**Disclosure Statement**").

[5] *See generally* Disclosure Statement.

2

loss of EBITDA in 2026 alone of approximately $35 to 40 million. Quite literally, the resolution of the UHC relationship may dictate whether unsecured creditors are or are not in the money, and as such, the Committee is keenly interested in the future of the UHC relationship.

3.  As laid out in the Motion, the Debtors see no future in the UHC relationship. Instead, they are seeking to transition away from it over the next several months in what is, in effect, a slow disengagement, which will only become final after the projected effective date of the Debtors' proposed Plan.[6] Given the current confirmation schedule, this Court will already have had to decide which constituency is the fulcrum before anyone knows whether the UHC "divorce" is truly final. No one involved in the process of these cases (other than the First Lien Lenders) wants to see a situation in which the Company rekindles the UHC relationship in a few months and the Debtors return to 2024 levels of profitability, all for the benefit of the First Lien Lenders. The Fifth Circuit does not need another *National Gypsum* conflagration.

4.  The Debtors will certainly protest that the UHC relationship is truly over and that the $35 to 40 million of EBITDA it brought to the Debtors is never to return. Herein lies the problem: the Committee has not completed its diligence on the merits of the Settlement and has significant concerns, based on the parties' pattern of performance in this and other situations, as to whether there is, in fact, an enterprise transforming disengagement on the horizon. Therefore, until the Committee's diligence is complete, which includes its review of the document production only completed last week and its deposition of the Debtors' witness scheduled for October 28, and it is able to understand the full ramifications of the Settlement, approval of the Motion is premature.

---

[6] *See* Shandler Decl. ¶ 5; *First Amended Joint Chapter 11 Plan of Reorganization of ModivCare Inc. And Its Debtor Affiliates* [Docket No. 465] (the "**Plan**").

3

**LEGAL STANDARD**

5. A court may approve a compromise or settlement pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 9019(a). "However, the court should approve the settlement only when the settlement is fair and equitable and in the best interest of the estate." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). "The words 'fair and equitable' are terms of art, referring to the creditor priority scheme of the Bankruptcy Code." *In re GPR Holdings, L.L.C.*, 2003 Bankr. LEXIS 1402, at *3 (Bankr. N.D. Tex. Oct. 29, 2003) (citation omitted). When considering a settlement, a court considers: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Foster Mortg.*, 68 F.3d at 917 (citation omitted); *In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016). Factors "bearing on the wisdom of the compromise" include the "paramount interests of creditors with proper deference to their reasonable views" and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Foster Mortg.*, 68 F.3d at 917–18; *Wright*, 545 B.R. at 561.

**PRELIMINARY OBJECTION**

6. UHC has historically been one of the Debtors' largest customers as measured by revenue.[7] The Debtors, however, are now seeking to wind down the parties' relationship through a "settlement" that may not be fair and equitable and may not provide any meaningful benefit to the Debtors' estates relative to the risks at hand. *See Foster Mortg.*, 68 F.3d at 917. The Settlement, among other things, provides that UHC will pay $25 million to the Company in "true

---

[7] *See* Disclosure Statement, Sec. IV.A.v.; Shandler Decl. ¶ 5.

up" payments for non-emergency medical transportation services earlier than the March 2026 reconciliation period and implement higher contracted payments for services rendered from July through December 2025.[8] In exchange, the Company agrees to wind down its relationship with UHC and forgo approximately $15 million of revenue by terminating certain addenda to the UHC Agreement prior to their annual terms.[9]

7. The Committee asserts this Preliminary Objection for at least three interrelated reasons:

8. *First*, the Committee is concerned that all of the material terms of the Settlement may not have been disclosed in the record. In the Motion, the Debtors claim that, as a result of UHC's prepetition termination notices, the UHC Amendment will fully wind down the parties' relationship by February 28, 2026.[10] During an interview with Committee professionals, Kenneth Shepard, the Debtors' SVP of Finance, explained that UHC had previously threatened to, or did, in fact, terminate prior contracts with the Company before reengaging and reaching new agreements. Neither the Motion nor the Shandler Declaration discloses this pattern of performance between the parties nor UHC's pattern of performance with other contract parties.[11] Instead, the Shandler Declaration, offered by an individual with no apparent personal knowledge of these events, only states that the UHC Amendment "preserves constructive relations with a key industry counterparty." [12] Given these facts, the Committee is concerned how truly "final" the

---

[8] *See* 9019 Mot. ¶ 16; *see also* Disclosure Statement Sec. IV.I.

[9] *See* 9019 Mot. ¶ 17.

[10] *See id.* ¶ 10.

[11] *See, e.g.*, UnitedHealth Group, *UnitedHealthcare's Network Negotiations Are About Protecting Access to Affordable Care*, Oct. 6, 2025, https://www.unitedhealthgroup.com/newsroom/2025/2025-10-06-uhc-network-negotiations-about-protecting-access-to-affordable-care.html.

[12] Shandler Decl. ¶ 19. It is unclear what Mr. Shandler means by "preserves" when the premise of the Motion is that

5

disengagement is.

9. *Second*, the Committee has not had the opportunity to fully diligence the merits of the Motion, including its deposition of the Debtors in connection therewith. On October 7, the Committee sent the Debtors' counsel (i) a request for production with a production deadline of October 16 (collectively, the "**Document Requests**"), and (ii) a Rule 30(b)(6) notice of a Debtor deposition with eight topics of examination. On October 16 and October 17, the Committee's professionals interviewed Messrs. Shepard and Shandler on an array of topics for two hours each (the allotted time provided by Debtors' counsel), including the Motion and the UHC relationship. However, several of the Committee's questions on that topic remained unanswered after the interviews, and discussions between the Committee's advisors and management remain ongoing. On October 20, the Debtors' counsel sent their responses and objections to the Document Requests, stating that they would produce emails from one custodian, Mr. Shepard, and relevant board materials in response to the Document Requests. On October 21, the Debtors stated that they had completed their document production (although the Committee continues to diligence what appears to be certain gaps in the Debtors' 9019-focused discovery).[13] On October 22, Debtors' counsel agreed to give the Committee a short extension for its objection deadline and a short deposition, which will occur after the filing of this Preliminary Objection. Therefore, the Committee will need time to complete its due diligence on the Motion before it can form a complete view on a Settlement that seeks to wind down one of the Company's biggest customers.[14]

10. *Third*, even if the UHC disengagement is permanent, the Settlement's purported

---

the relationship is terminated.

[13] On October 23, the Debtors sent an additional production purported to also be responsive to the Document Requests.

[14] *See* Shandler Decl. ¶ 5.

6

benefits to the Debtors' estates are still unclear. In support of the Settlement, the Shandler Declaration explains that the UHC Amendment (i) removes uncertainty of the reconciliation process (which would occur in March 2026), and (ii) decreases the risk of UHC disputing the amounts owed to the Company because UHC would "no longer have any incentive to support the Debtors."[15] There is, however, no evidence in the current record to support a $10 million reduction in amounts due under the UHC Agreement, much less evidence that UHC would not act in good faith during the reconciliation process.[16]

11. With these questions still unanswered, the Debtors have not yet adequately demonstrated that the Settlement is "fair and equitable" and in the best interest of the Debtors' estates.

## RESERVATION OF RIGHTS

12. The Committee reserves all rights to supplement this Preliminary Objection prior to the hearing on the Motion, including, but not limited to, in light of ongoing discovery and the deposition of the Debtors' witness.

## CONCLUSION

13. For the reasons stated above, this Court should deny the Motion.

[*Remainder of Page Intentionally Left Blank*]

---

[15] Shandler Decl. ¶ 12.

[16] During the Committee's interview of Mr. Shepard, he characterized the relationship with UHC as good and healthy.

Dated: October 27, 2025
Houston, Texas

*/s/ Charles R. Koster*

| | |
|---|---|
| **WHITE & CASE LLP** | **WHITE & CASE LLP** |
| Charles R. Koster (Texas Bar No. 24128278) | J. Christopher Shore (admitted *pro hac vice*) |
| 609 Main Street, Suite 2900 | Scott Greissman (admitted *pro hac vice*) |
| Houston, Texas 77002 | Andrew Zatz (admitted *pro hac vice*) |
| Telephone: (713) 496-9700 | 1221 Avenue of the Americas |
| Facsimile: (713) 496-9701 | New York, New York 10020 |
| Email: charles.koster@whitecase.com | Telephone: (212) 819-8200 |
| | Facsimile: (212) 354-8113 |
| | Email: cshore@whitecase.com |
| | sgreissman@whitecase.com |
| | azatz@whitecase.com |

- and -

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.co

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**Certificate of Service**

   I certify that on October 27, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                    */s/ Charles R. Koster*
                    Charles R. Koster