IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
: 
In re: : Chapter 11
: 
MODIVCARE INC., *et al.*, : Case No. 25-90309 (ARP)
: 
Debtors.[1] : (Jointly Administered)
: 
------------------------------------------------------------ x

**DEBTORS' REPLY IN SUPPORT OF
THEIR MOTION FOR ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY RULE 9019 (A) APPROVING
A GLOBAL SETTLEMENT AGREEMENT BY AND AMONG
THE DEBTORS AND UHC AND (B) GRANTING RELATED RELIEF**

ModivCare Inc. and its debtor affiliates in the above-captioned cases, as debtors and debtors in possession (collectively, the "**Debtors**" or "**ModivCare**"), respectfully submit this reply (the "**Reply**") (a) in further support of the *Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 9019 (A) Approving a Global Settlement Agreement By and Among the Debtors and UHC and (B) Granting Related Relief* [Docket No. 439][2] (the "**Motion**"),[3] and (b) in response to *The Official Committee of Unsecured Creditors' Preliminary Objection to the Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 9019 (A) Approving a Global Settlement Agreement By and Among the Debtors and UHC and (B) Granting Related Relief* [Docket No. 576] (the "**Objection**").

---

[1] A complete list of each of the Debtors in these chapter 11 cases (the "**Chapter 11 Cases**") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/ModivCare.  Debtor ModivCare Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 6900 E. Layton Avenue, Suite 1100 & 1200, Denver, Colorado 80237.

[2] The version of the Motion filed at Docket No. 439 was filed under seal, a publicly-available version was filed at Docket No. 440.

[3] Capitalized terms used but not otherwise defined in this Reply shall have the meanings ascribed to them in the Motion.

US-DOCS\165312984

**PRELIMINARY STATEMENT**

1. The Committee's Objection is premised on the theory that ModivCare and UHC have conspired to terminate their relationship for the benefit of the Company's secured creditors. The Committee does not offer a shred of evidence in support of that theory despite having received over 3,500 documents relating to the Debtors and UHC, as well as access to key personnel through interviews and depositions. The Committee's theory is highly speculative at best, and its attempt to fill the evidentiary void by insinuating that the Debtors or their professionals have failed to disclose key terms of the Motion and the UHC Agreement, particularly with this Court and regulators' oversight, is reckless and dangerous. The Objection ought to be ignored.

2. The UHC Amendment represents the culmination of ModivCare's efforts to mitigate the loss of one of its key customers. Those efforts followed the Debtors' numerous unsuccessful attempts to salvage the UHC Agreement. Contrary to the Committee's suggestions, the UHC Agreement will not renew and the relationship will terminate regardless of whether the relief sought under the Motion is granted. UHC is entitled in its sole discretion to end (and has ended) the UHC Agreement. Given this reality, the UHC Amendment, at least will provide the Debtors with substantial benefits in connection with the UHC's decision to end the relationship.

3. As detailed in the Motion, approval of the UHC Amendment will entitle ModivCare to an immediate payment of $25 million (at least five months earlier than provided under the best case scenario under the UHC Agreement), as well as materially higher fixed, pre-arranged capitated payments for the balance of the term of the UHC Agreement. These payments clearly benefit the Debtors and their estates. In exchange, ModivCare has agreed to permit UHC to terminate the addenda relating to six different markets before the end of their annual terms. For three of those addenda, the termination will take effect 14 days early, and for the other three addenda, termination will take effect two and a half months early. This has a modest impact on

revenue.[4]  If the relief is not granted, the UHC Agreement simply would continue pursuant to its current terms until the termination notices issued by UHC take effect between January 1 and March 14, 2026, at which time ModivCare would be left to pursue a reconciliation amount that could be greater than $50 million.  As explained in the Motion, pursuing that amount through the reconciliation process, which is fact-dependent, subject to documentation, and open to dispute, may expose the Debtors' estates to considerable risk.

4. Against this backdrop, the Debtors' entry into the UHC Amendment clearly falls within the range of reasonable litigation alternatives and reflects a sound exercise of the Debtors' business judgment.  The arguments raised in the Objection—challenging valuation, projections, and timing—are irrelevant to the Court's consideration of the proposed settlement and, while without merit, are more appropriately raised at the plan confirmation stage.  The sole issue before the Court on this Motion is whether the UHC Amendment is fair, reasonable, and in the best interests of the Debtors' estates.  For the reasons set forth in the Motion and herein, the Debtors respectfully request that the Court overrule the Objection and grant the relief requested in the Motion.

## REPLY

5. As detailed in the Motion, the Fifth Circuit has established a three-factor balancing test pursuant to which bankruptcy courts analyze proposed settlements.  The Committee acknowledges these factors but does not provide any substantive analysis on how the UHC Amendment measures up against them.  In fact, the Committee fails to specify the precise terms it believes are objectionable or what better or alternative terms the Debtors could have obtained.

---

[4] The UHC Agreement contains no minimum volume commitment and does not obligate UHC to direct a certain number of trips or revenue to ModivCare.  Even if the proposed UHC Amendment were not approved, UHC could reduce the Debtors' volume by engaging other vendors for its members.

6. Instead, the Committee's primary focus is the notion that the termination of the UHC Agreement may not be "truly final." That is based on unsupported conjecture of a supposed UHC "pattern of performance" of terminating agreements and later reengaging and renegotiating with its counterparties. The Committee also alleges, without any evidence, that all material terms of the UHC Amendment may not have been disclosed. These allegations and concerns are unfounded and do not reflect the reality of the current situation, which is what matters here. UHC unequivocally has exercised its right to not renew the UHC Agreement and, despite ModivCare's best efforts, UHC has not rescinded its non-renewal notices. Indeed, UHC has given no indication of its desire to continue any business relationship with the Debtors at this time. Accordingly, UHC's non-renewal of the UHC Agreement is "truly final" and will proceed irrespective of the Motion. The Committee's suggestion to the contrary is mere speculation.

7. The Committee's other focus is timing. The Committee alleges that it requires more time to consider the relevant issues, despite having had more than the standard 21-day objection period, plus interviews, access to over 3,500 UHC-related documents and emails, and a deposition solely related to this settlement. Even with all of this information, the Committee has been unable to articulate any material gap in the record or the information provided, and certainly has not identified anything that would raise serious doubt about whether this settlement is reasonable in context. Accordingly, these arguments should not preclude the Court's approval of the relief sought under the Motion.

8. As for the three-factor balancing test, the Debtors submit the following:

9. *First*, the likelihood of success of litigating against UHC regarding the non-renewal of the UHC Agreement is low. UHC has issued the non-renewal notices in accordance with the notice provisions of the UHC Agreement and related addenda. As for potential litigation regarding

renegotiation of capitated payments or the reconciliation amounts, this process likely would require substantial expenditure and be uncertain as detailed in paragraphs 18 and 28 of the Motion. In contrast, the UHC Amendment allows ModivCare to lock in a substantial amount of the reconciliation amount now—at least five months earlier, and likely closer to eight months, than it would under the UHC Agreement without the UHC Amendment. Additionally, the UHC Amendment would increase the capitated payments to more accurately reflect what is owed to ModivCare on a monthly basis going forward. This will materially reduce the amount needing to be reconciled at the end of the contract term and mitigate the uncertainty, cost, and risks inherent in that process.

10. *Second*, the UHC Amendment is the product of good-faith, arm's-length bargaining between the Debtors and UHC, each of which were represented by counsel. The Committee has not challenged these matters and cannot credibly argue the UHC Amendment was the product of fraud or collusion.

11. *Third*, the UHC Amendment is reasonable and in the best interests of the Debtors' estates because it (a) will provide ModivCare considerable incremental liquidity, (b) will end relations with a key industry counterparty on amicable terms, such that ripple effects with other customers and stakeholders are minimized, (c) safeguards high-quality transportation for the country's most vulnerable patient populations, and (d) avoids considerable uncertainty and materially accelerates the recovery of what the Debtors expect to be over $50 million of receivables.

12. Accordingly, ModivCare's decision to enter the UHC Amendment is a fair and reasonable compromise within the range of reasonable litigation alternatives, reflects the Debtors' sound exercise of business judgment, and should be approved.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:   October 29, 2025         Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Catherine A. Rankin (Texas Bar No. 24109810)
Brandon Bell (Texas Bar No. 24127019)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
           catherinerankin@hunton.com
           bbell@hunton.com

-and-

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Keith A. Simon (NY Bar No. 4636007)
George Klidonas (NY Bar No. 4549432)
Jonathan J. Weichselbaum (NY Bar No. 5676143)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
           keith.simon@lw.com
           george.klidonas@lw.com
           jon.weichselbaum@lw.com

*Co-Counsel for the Debtors
and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on October 29, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

      */s/ Timothy A. ("Tad") Davidson II*
      Timothy A. ("Tad") Davidson II