**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| | |
| | Case No. 25-90309 (ARP) |
| MODIVCARE INC., *et al.,* | |
| | (Jointly administered) |
| Debtors. | |

**MEDEX MEDICAL TRANSPORT SERVICES, INC.'S LIMITED OBJECTION TO
DEBTORS' NOTICE OF POTENTIAL ASSUMPTION OF CERTAIN DEBTORS'
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
[Relates to Dkt. 605]

MedEx Medical Transport Service, Inc. ("MedEx"), by and through its undersigned counsel, hereby files this limited objection and reservation of rights (the "Limited Objection") to the *Notice of Potential Assumption of Certain of Debtors' Executory Contracts and Unexpired Leases* [Docket No. 605] (the "Cure Notice") filed by the debtors in the above-captioned proceeding (collectively, the "Debtors") and in support thereof state as follows:

**BACKGROUND**

1.      On August 20, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas. The Debtors continue to operate the business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Prior to the Petition Date, MedEx was a counterparty to a medical transportation services contract with one of the Debtors—ModivCare Solutions, LLC (the "MedEx Contract"). On the Petition Date, the Debtors owed MedEx $7,542,604.22 pursuant to services provided under

the MedEx Contract, as well as for past due statutory and contractual penalties and interest. Details of the pre-petition amounts owed pursuant to the MedEx Contract can be found in proof of claim number 1469 filed on October 1, 2025 by MedEx (the "MedEx Claim"). The MedEx Contract is attached to the MedEx Claim. *See* MedEx Claim attached and incorporated herein as **Exhibit A.**

3.      Since the Petition Date, ModivCare has continued to request services and MedEx has continuously provided them, pursuant to the MedEx Contract.

4.      On October 30, 2025, the Debtors filed the Cure Notice which included a list, attached as Schedule 1-B to the Cure Notice, of contracts to be potentially assumed. The MedEx Contract was seemingly listed multiple times as a contract which could potentially be assumed and assigned.  The cure amount was listed at $0.00 for each, as shown below.

**Schedule 1-B**
**Contract Counterparties F - O**

| Name of Executory Contract/Lease | Debtor | State the Nature of Contract/Lease | Cure Amount |
|---|---|---|---|
| MED-BLESS TRANSPORT CARE LLC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDCAB LLC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDCARE TRANSPORTATION CORP | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDCOAST MEDSERVICES INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDCOAST MEDSERVICES, INC. DBA | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEVAC AMBULANCE INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEVAC AMBULANCE INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEVAC MIDAMERICA INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEX | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| Medex Medical Transport Service Inc | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEX TRANSPORTATION | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEX TRANSPORTATION INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MEDEX TRANSPORTATION SERVICES INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |
| MED-EXPRESS AMBULANCE SERVICE INC | ModivCare Solutions, LLC | Trip Providers Agreement | $0.00 |

## **LIMITED OBJECTION**

5.      MedEx does not generally object to assumption of the MedEx Contract, but files this Limited Objection to ensure that the Debtors or other responsible parties pay for all defaults under the MedEx Contract if it is assumed.

6.      On October 30, 2025, the Debtors filed and served the Cure Notice where the Debtors provided notice of their potential intention to assume, among other things, a "Trip

Providers Agreement," which is believed to be the MedEx Contract, with a proposed cure amount of $0.00. MedEx is seemingly listed five different times under various names, each highlighted above. This Limited Objection applies to all five listings.

7.     Section 365(b)(1) of the Bankruptcy Code requires debtors to cure or provide adequate assurance of curing defaults as a condition for assuming such contracts or leases. MedEx objects to the proposed Cure Notice because the amounts needed to cure the past due amounts in connection with the MedEx Contract are currently $7,542,604.22 in connection with services provided to the Debtors, as well as for past due statutory and contractual penalties and interest.

8.     MedEx reserves its right to amend and/or to supplement this Limited Objection as necessary or appropriate, including to supplement with cure amounts that become due or amounts that, after reconciliation, are due and owing as of the date hereof.

MedEx respectfully requests that his Court enter an order (i) sustaining this objection, (ii) address any changes or adjustments by the Debtors to the proposed cure amount, (iii) to account for any amounts due for additional post-petition services, and (iv) granting MedEx relief consistent with the relief requested herein and such other relief as is just and proper.


Dated: November 14, 2025

Respectfully submitted,

*/s/ Zachary McKay*
**JACKSON WALKER LLP**
Zachary McKay (TX Bar No. 24073600)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: zmckay@jw.com

43835708v.2

## <u>CERTIFICATE OF SERVICE</u>

The is to certify that on November 14, 2025, a true and correct copy of the foregoing was served upon all parties receiving notice pursuant to the Court's ECF notification system.

*/s/ Zachary McKay*
Zachary McKay

43835708v.2

# **EXHIBIT A**

Claim #1469  Date Filed: 10/1/2025

| Fill in this information to identify the case: |
| --- |

Debtor   ModivCare Solutions, LLC

United States Bankruptcy Court for the:   Southern _____   District of Texas _____
(State)

Case number   25-90359 _____

## Modified Official Form 410
# Proof of Claim
04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies or any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

MedEx Medical Transport Service, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.   From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| MedEx Medical Transport Service, Inc.<br>Jackson Walker LLP Attn: Zachary McKay<br>1401 McKinney St. Suite 1900<br>Houston, Texas 77010, Unites States | |
| Contact phone   713-752-4261 | Contact phone |
| Contact email   zmckay@jw.com | Contact email |

Uniform claim identifier (if you use one): _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.   Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

2590359251001000000000021

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

---

**7. How much is the claim?**

$ _7542604.22_____ . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_Trade claim Statutory and contractual penalties and interest NC GS 58-3-225_

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature or property:**

☐ Real estate: If the claim is secured by the debtor's principle residence, file a _Mortgage Proof of Claim Attachment_ (Official Form 410-A) with this _Proof of Claim._

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amount should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Official Form 410 | **Proof of Claim** |

2590359251001000000000021

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$_____

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/01/2025
                   MM / DD / YYYY

*/s/Dillon Lowe*
Signature

Print the name of the person who is completing and signing this claim:

| Name | Dillon Lowe |
|---|---|
| | First name   Middle name   Last name |
| Title | CEO |
| Company | MedEx Medical Transport Service, Inc. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 901 E. Memorial Drive, Ahoskie, NC, 27910, United States |
| Contact phone | 2523775100   Email   dillon@medextransport.com |

2590359251001000000000000021

# Verita (KCC) ePOC Electronic Claim Filing Summary

For phone assistance: Domestic (888) 733-1521 | International (310) 751-2636

| | |
|---|---|
| **Debtor:**<br>25-90359 - ModivCare Solutions, LLC<br>**District:**<br>Southern District of Texas, Houston Division | |
| **Creditor:**<br>MedEx Medical Transport Service, Inc.<br>Jackson Walker LLP Attn: Zachary McKay<br>1401 McKinney St. Suite 1900<br><br>Houston, Texas, 77010<br>Unites States<br>**Phone:**<br>713-752-4261<br>**Phone 2:**<br><br>**Fax:**<br><br>**Email:**<br>zmckay@jw.com | **Has Supporting Documentation:**<br>Yes, supporting documentation successfully uploaded<br>**Related Document Statement:**<br><br>**Has Related Claim:**<br>No<br>**Related Claim Filed By:**<br><br>**Filing Party:**<br>Creditor |
| **Other Names Used with Debtor:** | **Amends Claim:**<br>No<br>**Acquired Claim:**<br>No |
| **Basis of Claim:**<br>Trade claim Statutory and contractual penalties and interest<br>NC GS 58-3-225 | **Last 4 Digits:**<br>No / **Uniform Claim Identifier:** |
| **Total Amount of Claim:**<br>7542604.22 | **Includes Interest or Charges:**<br>Yes |
| **Has Priority Claim:**<br>No | **Priority Under:** |
| **Has Secured Claim:**<br>No | **Nature of Secured Amount:** |
| **Amount of 503(b)(9):**<br>No | **Value of Property:** |
| **Based on Lease:**<br>No | **Annual Interest Rate:** |
| **Subject to Right of Setoff:**<br>No | **Arrearage Amount:**<br><br>**Basis for Perfection:**<br><br>**Amount Unsecured:** |
| **Submitted By:**<br>Dillon Lowe on 01-Oct-2025 11:33:13 a.m. Pacific Time<br>**Title:**<br>CEO<br>**Company:**<br>MedEx Medical Transport Service, Inc.<br>**Optional Signature Address:**<br>901 E. Memorial Drive<br><br>Ahoskie, NC, 27910<br>United States<br>**Telephone Number:**<br>2523775100<br>**Email:**<br>dillon@medextransport.com | |

VN: 973AE63F2FFA62B52601AD14CDD8FBB3

Unpaid Pre-petition trade claim

| Run | Date of Run | Level of Service | Balance | Billed Date | Last Date before to CH 11 | Days before pmt | Days late | Interest | Penalty |
|---|---|---|---|---|---|---|---|---|---|
| 2443815:1 | 1/14/2025 | BLS | $508.81 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.76 | $55.97 |
| 2458510:1 | 1/20/2025 | BLS | $396.17 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.15 | $43.58 |
| 2465981:1 | 1/23/2025 | BLS | $394.41 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.14 | $43.39 |
| 2471588:1 | 1/25/2025 | BLS | $392.65 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.13 | $43.19 |
| 2473885:1 | 1/26/2025 | BLS | $413.77 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.24 | $45.51 |
| 2475252:1 | 1/27/2025 | BLS | $394.41 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.14 | $43.39 |
| 2478250:1 | 1/28/2025 | BLS | $618.81 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $3.36 | $68.07 |
| 2478155:1 | 1/28/2025 | BLS | $866.09 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $4.70 | $95.27 |
| 2480560:1 | 1/29/2025 | BLS | $371.53 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.02 | $40.87 |
| 2486491:1 | 1/31/2025 | BLS | $394.41 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.14 | $43.39 |
| 2505557:1 | 2/7/2025 | BLS | $883.69 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $4.79 | $97.21 |
| 2526014:1 | 2/15/2025 | BLS | $403.21 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.19 | $44.35 |
| 2533020:1 | 2/18/2025 | BLS | $441.93 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.40 | $48.61 |
| 2516788:1 | 2/19/2025 | BLS | $370.65 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.01 | $40.77 |
| 2549222:1 | 2/25/2025 | BLS | $394.41 | 7/9/2025 | 8/19/2025 | 41.00 | 11.00 | $2.14 | $43.39 |
| 2556183:1 | 2/27/2025 | BLS | $393.53 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2499986:1 | 2/27/2025 | BLS | $691.85 | 8/15/2025 | 8/19/2025 | | | | $0.00 |
| 2598498:1 | 3/18/2025 | BLS | $394.41 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2600666:1 | 3/18/2025 | BLS | $417.29 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2591910:1 | 3/18/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2591911:1 | 3/18/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2602681:1 | 3/19/2025 | BLS | $1,933.53 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2562325:1 | 3/20/2025 | BLS | $689.21 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2562324:1 | 3/20/2025 | BLS | $691.85 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2613769:1 | 3/24/2025 | BLS | $353.05 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2607378:1 | 3/26/2025 | BLS | $510.57 | 11-Aug | 8/19/2025 | | | | $0.00 |
| 2607379:1 | 3/26/2025 | BLS | $510.57 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2617607:1 | 3/26/2025 | BLS | $1,028.01 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2620710:1 | 3/27/2025 | BLS | $355.69 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2619995:1 | 3/27/2025 | BLS | $425.21 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2632215:1 | 4/1/2025 | BLS | $418.17 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2640348:1 | 4/5/2025 | BLS | $382.97 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2640700:1 | 4/5/2025 | BLS | $417.29 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2640512:1 | 4/5/2025 | BLS | $436.65 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2650046:1 | 4/9/2025 | BLS | $528.17 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2651371:1 | 4/10/2025 | BLS | $1,552.49 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2656408:1 | 4/12/2025 | BLS | $1,414.33 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2631254:1 | 4/15/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2631255:1 | 4/15/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | | | $0.00 |
| 2667247:1 | 4/17/2025 | BLS | $528.17 | 8/11/2025 | 8/19/2025 | | | | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2652132:1 | 4/17/2025 | BLS | $689.21 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2652131:1 | 4/17/2025 | BLS | $691.85 | 11-Aug | 8/19/2025 | | $0.00 |
| 2673995:1 | 4/20/2025 | BLS | $382.97 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2673614:1 | 4/20/2025 | BLS | $490.33 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2666258:1 | 4/21/2025 | BLS | $653.13 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2666259:1 | 4/21/2025 | BLS | $654.89 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2666271:1 | 4/22/2025 | BLS | $411.13 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2666272:1 | 4/22/2025 | BLS | $411.13 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2679464:1 | 4/23/2025 | BLS | $1,995.13 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2682743:1 | 4/24/2025 | ALS | $560.24 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2685943:1 | 4/25/2025 | BLS | $485.05 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2688411:1 | 4/26/2025 | ALS | $560.24 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2689229:1 | 4/26/2025 | ALS | $560.24 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2689759:1 | 4/27/2025 | BLS | $713.85 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2695339:1 | 4/29/2025 | BLS | $382.09 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2693846:1 | 4/29/2025 | BLS | $450.73 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2678174:1 | 4/29/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2678175:1 | 4/29/2025 | BLS | $512.33 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2696557:1 | 4/30/2025 | BLS | $485.05 | 8/11/2025 | 8/19/2025 | | $0.00 |
| 2701931:1 | 5/2/2025 | BLS | $412.89 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2705131:1 | 5/3/2025 | BLS | $449.85 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2710924:1 | 5/6/2025 | BLS | $448.97 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2721836:1 | 5/11/2025 | BLS | $372.41 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2713389:1 | 5/12/2025 | BLS | $349.53 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2713390:1 | 5/12/2025 | BLS | $349.53 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2723721:1 | 5/12/2025 | BLS | $413.77 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2731672:1 | 5/15/2025 | BLS | $363.61 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2732341:1 | 5/15/2025 | BLS | $376.81 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2723334:1 | 5/15/2025 | BLS | $653.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2723335:1 | 5/15/2025 | BLS | $669.85 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2735177:1 | 5/17/2025 | BLS | $364.49 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2728235:1 | 5/17/2025 | BLS | $400.57 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2728231:1 | 5/17/2025 | BLS | $403.21 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2734625:1 | 5/17/2025 | BLS | $550.17 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2746404:1 | 5/22/2025 | ALS | $517.12 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2752561:1 | 5/24/2025 | BLS | $400.57 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2755942:1 | 5/26/2025 | BLS | $382.09 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2758698:1 | 5/27/2025 | BLS | $366.25 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2756630:1 | 5/27/2025 | BLS | $459.53 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2759826:1 | 5/28/2025 | BLS | $615.29 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2759876:1 | 5/28/2025 | BLS | $642.57 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2761825:1 | 5/29/2025 | BLS | $382.09 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2765975:1 | 5/30/2025 | BLS | $427.85 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2767525:1 | 5/31/2025 | BLS | $368.01 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2771807:1 | 6/2/2025 | BLS | $412.89 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2773949:1 | 6/3/2025 | BLS | $403.21 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2776472:1 | 6/4/2025 | BLS | $384.73 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2777534:1 | 6/5/2025 | BLS | $368.01 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2781521:1 | 6/6/2025 | BLS | $442.81 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2778778:1 | 6/6/2025 | BLS | $769.46 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2778779:1 | 6/6/2025 | BLS | $772.98 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2785251:1 | 6/8/2025 | BLS | $368.01 | 9/9/2025 | 8/19/2025 | | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2788411:1 | 6/9/2025 | BLS | $366.25 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2787665:1 | 6/10/2025 | BLS | $888.09 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2795942:1 | 6/12/2025 | BLS | $356.57 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2795193:1 | 6/12/2025 | BLS | $389.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2792443:1 | 6/12/2025 | BLS | $558.09 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2799531:1 | 6/14/2025 | BLS | $369.77 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2801069:1 | 6/15/2025 | BLS | $404.09 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2795477:1 | 6/16/2025 | ALS | $503.92 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2795478:1 | 6/16/2025 | ALS | $512.72 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2803761:1 | 6/16/2025 | BLS | $558.09 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2796472:1 | 6/16/2025 | BLS | $688.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2796473:1 | 6/16/2025 | BLS | $688.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2811115:1 | 6/19/2025 | BLS | $442.81 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2794193:1 | 6/19/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2794194:1 | 6/19/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2804588:1 | 6/24/2025 | BLS | $432.25 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2813554:1 | 6/24/2025 | BLS | $504.41 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2804572:1 | 6/24/2025 | BLS | $511.45 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2813555:1 | 6/24/2025 | BLS | $513.21 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2823648:1 | 6/26/2025 | BLS | $411.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2809747:1 | 6/26/2025 | BLS | $511.45 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2813578:1 | 6/26/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2813579:1 | 6/26/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2825888:1 | 6/26/2025 | BLS | $598.57 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2807516:1 | 6/26/2025 | BLS | $694.49 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2807517:1 | 6/26/2025 | BLS | $702.41 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2829910:1 | 6/27/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2828523:1 | 6/27/2025 | BLS | $675.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2814459:1 | 6/28/2025 | BLS | $511.45 | 8/15/2025 | 8/19/2025 | | $0.00 |
| 2833414:1 | 6/29/2025 | BLS | $357.45 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2835362:1 | 6/30/2025 | BLS | $374.17 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2834144:1 | 6/30/2025 | BLS | $460.41 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2834574:1 | 6/30/2025 | BLS | $610.89 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2837290:1 | 7/1/2025 | BLS | $372.41 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2837605:1 | 7/1/2025 | BLS | $384.73 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2826731:1 | 7/1/2025 | BLS | $426.97 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2838500:1 | 7/2/2025 | BLS | $441.05 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2842588:1 | 7/3/2025 | BLS | $431.37 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2842730:1 | 7/3/2025 | BLS | $432.25 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2825385:1 | 7/3/2025 | BLS | $434.89 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2840196:1 | 7/3/2025 | BLS | $522.89 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2841960:1 | 7/3/2025 | BLS | $1,150.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2842168:1 | 7/3/2025 | BLS | $1,169.69 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2844292:1 | 7/4/2025 | BLS | $461.29 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2830369:1 | 7/5/2025 | BLS | $432.25 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2830368:1 | 7/5/2025 | BLS | $434.89 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2846136:1 | 7/5/2025 | BLS | $443.69 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2845409:1 | 7/5/2025 | ALS | $958.84 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2849880:1 | 7/7/2025 | BLS | $670.73 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2853920:1 | 7/8/2025 | BLS | $370.65 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2856969:1 | 7/10/2025 | BLS | $369.77 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2841379:1 | 7/10/2025 | BLS | $432.25 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2841378:1 | 7/10/2025 | BLS | $434.89 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2826591:1 | 7/10/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2826592:1 | 7/10/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2860028:1 | 7/11/2025 | BLS | $369.77 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2860284:1 | 7/11/2025 | BLS | $369.77 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2860343:1 | 7/11/2025 | BLS | $383.85 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2862875:1 | 7/12/2025 | BLS | $368.89 | 8/26/2025 | 8/19/2025 | | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2862943:1 | 7/12/2025 | BLS | $446.33 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2858637:1 | 7/14/2025 | BLS | $431.37 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2866577:1 | 7/14/2025 | BLS | $587.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2866683:1 | 7/14/2025 | BLS | $862.57 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2866707:1 | 7/15/2025 | BLS | $498.25 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2851755:1 | 7/15/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2851756:1 | 7/15/2025 | BLS | $884.95 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2860400:1 | 7/16/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2860399:1 | 7/16/2025 | BLS | $886.80 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2873194:1 | 7/17/2025 | BLS | $360.09 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2873516:1 | 7/17/2025 | BLS | $382.09 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2856919:1 | 7/17/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2856920:1 | 7/17/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2875839:1 | 7/18/2025 | BLS | $358.33 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2869112:1 | 7/18/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2869143:1 | 7/18/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2861844:1 | 7/19/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2861846:1 | 7/19/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2876827:1 | 7/19/2025 | BLS | $545.77 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2880201:1 | 7/20/2025 | BLS | $361.85 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2879952:1 | 7/20/2025 | BLS | $442.81 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2867720:1 | 7/22/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 |
| 2881843:1 | 7/22/2025 | ALS | $518.88 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2885461:1 | 7/22/2025 | BLS | $684.81 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2883916:1 | 7/22/2025 | BLS | $1,167.05 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2888140:1 | 7/23/2025 | BLS | $376.81 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2859781:1 | 7/23/2025 | BLS | $432.25 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2859780:1 | 7/23/2025 | BLS | $435.77 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2856222:1 | 7/23/2025 | ALS | $529.44 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2856223:1 | 7/23/2025 | ALS | $530.32 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2888029:1 | 7/24/2025 | BLS | $492.97 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2888028:1 | 7/24/2025 | BLS | $498.25 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2860296:1 | 7/24/2025 | BLS | $576.57 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2860297:1 | 7/24/2025 | BLS | $637.29 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2889910:1 | 7/25/2025 | BLS | $442.81 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2889909:1 | 7/25/2025 | BLS | $447.21 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2894422:1 | 7/26/2025 | ALS | $560.24 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2895864:1 | 7/27/2025 | BLS | $1,317.53 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2897998:1 | 7/28/2025 | BLS | $361.85 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2897340:1 | 7/28/2025 | BLS | $368.89 | 9/16/2025 | 8/19/2025 | | $0.00 |
| 2889069:1 | 7/28/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2889070:1 | 7/28/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2898548:1 | 7/29/2025 | BLS | $565.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2879908:1 | 7/30/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2879909:1 | 7/30/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2903799:1 | 7/30/2025 | BLS | $550.17 | 8/26/2025 | 8/19/2025 | | $0.00 |
| 2905757:1 | 7/31/2025 | BLS | $380.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2906257:1 | 7/31/2025 | BLS | $1,247.13 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2892334:1 | 8/1/2025 | ALS | $1,493.21 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2892333:1 | 8/1/2025 | ALS | $1,539.85 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2912042:1 | 8/4/2025 | BLS | $477.13 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2913331:1 | 8/4/2025 | BLS | $528.17 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2914348:1 | 8/5/2025 | BLS | $355.69 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2906071:1 | 8/5/2025 | BLS | $510.57 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2906072:1 | 8/5/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 |
| 2913823:1 | 8/5/2025 | BLS | $1,506.02 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2919183:1 | 8/6/2025 | BLS | $375.05 | 9/10/2025 | 8/19/2025 | | $0.00 |
| 2918226:1 | 8/6/2025 | BLS | $658.41 | 9/10/2025 | 8/19/2025 | | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2921583:1 | 8/7/2025 | BLS | $785.13 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2923603:1 | 8/8/2025 | BLS | $618.81 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2909506:1 | 8/9/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2926360:1 | 8/9/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2929071:1 | 8/11/2025 | BLS | $362.73 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2930516:1 | 8/11/2025 | BLS | $376.81 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2930413:1 | 8/11/2025 | BLS | $447.21 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2929210:1 | 8/11/2025 | BLS | $1,581.53 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2915238:1 | 8/12/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2915239:1 | 8/12/2025 | BLS | $511.45 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2905700:1 | 8/12/2025 | BLS | $1,068.66 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2905699:1 | 8/12/2025 | BLS | $1,075.70 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2929335:1 | 8/13/2025 | BLS | $358.33 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2935270:1 | 8/13/2025 | BLS | $376.81 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2935226:1 | 8/13/2025 | BLS | $381.21 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2911762:1 | 8/13/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| 2911763:1 | 8/13/2025 | BLS | $512.33 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| 2929334:1 | 8/13/2025 | BLS | $1,528.73 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2937511:1 | 8/14/2025 | BLS | $395.29 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2936880:1 | 8/14/2025 | BLS | $1,264.73 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2939508:1 | 8/15/2025 | BLS | $457.77 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2940539:1 | 8/15/2025 | BLS | $606.49 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2923391:1 | 8/15/2025 | BLS | $1,081.15 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2923392:1 | 8/15/2025 | BLS | $1,081.15 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2939423:1 | 8/15/2025 | BLS | $1,264.73 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2942986:1 | 8/16/2025 | BLS | $362.73 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2942487:1 | 8/16/2025 | BLS | $1,167.05 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| 2943964:1 | 8/17/2025 | BLS | $368.01 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2944135:1 | 8/17/2025 | BLS | $456.89 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2945245:1 | 8/18/2025 | BLS | $475.37 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2946070:1 | 8/18/2025 | BLS | $478.01 | 9/12/2025 | 8/19/2025 | | $0.00 | |
| 2946804:1 | 8/18/2025 | BLS | $606.49 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2945672:1 | 8/18/2025 | BLS | $1,101.93 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| 2946023:1 | 8/18/2025 | BLS | $1,150.33 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| 2948163:1 | 8/19/2025 | BLS | $557.21 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2948069:1 | 8/19/2025 | BLS | $1,167.93 | 9/10/2025 | 8/19/2025 | | $0.00 | |
| 2948516:1 | 8/19/2025 | BLS | $1,431.93 | 9/9/2025 | 8/19/2025 | | $0.00 | |
| | | | $142,767.97 | | | $39.30   $796.94  $836.25 | | $143,604.22 |

**Penalties & Interest on Late Paid Pe-petition trade claims**

Late Paid Amounts

| | 2021 | 2022 | 2023 | 2024 | |
|---|---|---|---|---|---|
| Jan | 0 | 126,158.10 | 150,356.98 | 8,457.44 | |
| Feb | 0 | 220,095.18 | 140,755.50 | 13,108.29 | |
| Mar | 0 | 144,474.76 | 95,653.56 | 13,801.57 | |
| Apr | 0 | 220,195.70 | 39,858.68 | 1,180.64 | |
| May | 0 | 157,522.02 | 54,359.00 | 615.30 | |
| Jun | 0 | 155,063.93 | 79,087.40 | 2,707.28 | |
| Jul | 73,681 | 140,169.11 | 61,795.17 | 251.21 | |
| Aug | 78,681 | 146,344.79 | 50,047.78 | 0.00 | |
| Sep | 136,827 | 116,807.03 | 68,420.71 | 0.00 | |
| Oct | 94,075 | 100,388.99 | 9,311.59 | 0.00 | |
| Nov | 176,029 | 102,990.48 | 6,793.69 | 0.00 | |
| Dec | 149,953 | 199,036.63 | 7,354.95 | 0.00 | |
| Totals | **709,246.38** | **1,829,246.72** | **763,795.01** | **40,121.73** | **3,342,409.84** |

Penalties & Interest Calculation by Year

| | **If on time** | **P&I** |
|---|---|---|
| 2021 | 709,246.38 | 1,554,000.00 |
| 2022 | 1,829,246.72 | 4,070,000.00 |
| 2023 | 763,795.01 | 1,702,000.00 |
| 2024 | 40,121.73 | 74,000.00 |
| | 3,342,409.84 | **7,400,000.00** |

The backup for these calculations is voluminous and is available upon request.

DocuSign Envelope ID: DE105E93-CEE5-41A3-9046-470C1F33A365

```
┌─────────────────────────────────────────────────────┐
│              ⊏ Internal Use Only ⊐                   │
│  Salesforce Contract # _____          │
│  Date Sent to Provider: _____          │
└─────────────────────────────────────────────────────┘
```

# TRANSPORTATION PROVIDER AGREEMENT

## Between

## MODIVCARE SOLUTIONS, LLC ("MODIVCARE")

## and

## _____MEDEX MEDICAL TRANSPORT SERVICE, INC._____ ("Provider")

WHEREAS, MODIVCARE provides brokerage services, which may include access to a proprietary software platform (the "Platform") to enable on-demand and future ride booking and trip management for non-emergency medical transportation in the State of North Carolina pursuant to contracts with certain public agencies and/or private organizations; and

WHEREAS, MODIVCARE wishes to enter into Agreements with qualified transportation companies for the provision of high-quality transportation services to be assigned to transportation providers through the Platform or as otherwise agreed to by the parties; and

WHEREAS, Provider is in the business of performing non-emergency medical transportation services and wishes to provide such services pursuant to the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein made, the sufficiency of which is hereby acknowledged, the parties agree as follows:

## I. RESPONSIBILITIES OF MODIVCARE.

    A. <u>Process Transportation Requests.</u> MODIVCARE will receive transportation requests from Participants or their agents, verify Participant eligibility, schedule trips, submit daily trip requests (a "Provider Manifest") to Provider electronically through the Platform, a secured website, or as otherwise agreed to by the parties, as well as verify billing information, and perform such other administrative functions as MODIVCARE deems necessary to provide quality transportation to Participants on behalf of its Client. MODIVCARE agrees to use best efforts to connect its Platform to Provider's electronic system for all of the foregoing purposes. Notwithstanding anything herein to the contrary, MODIVCARE shall be under no obligation to provide Provider with a specific number of transportation requests. Any trip request assigned to Provider may be withdrawn by MODIVCARE, in its sole discretion, in the event that MODIVCARE deems it necessary for the proper performance of its obligations under the Client Contract. Provider may decline any trip requests from

DocuSign Envelope ID: DE4D5E92CF565-4103-906E-470C1F33A3E5

MODIVCARE. MODIVCARE'S communication of eligibility status and authorization to provide transport may be relied upon by Provider for purposes of payment.

B. <u>Payments for Transportation.</u> MODIVCARE shall pay Provider for services it performs at MODIVCARE's request as set forth in Exhibit B. Provider shall not invoice or require payment from Participants or the Client for its services.

C. <u>Orientation.</u> MODIVCARE shall provide one or more orientation sessions for Provider staff, which will be offered at a MODIVCARE regional office, Provider's base of operations, a third-party meeting space (e.g. hotel conference site), or via web-conference. Provider is responsible for ensuring that it and its employees and drivers understand all requirements and procedures for the provision of services pursuant to this Agreement.

<u>Audit.</u> MODIVCARE and Client shall have the unconditional right, but not an obligation, to audit Provider's trip records to confirm compliance with the Agreement. Provider agrees to provide prompt and reasonable physical access during business hours to such trip records. Provider may make copies of trip records available electronically.

II. RESPONSIBILITIES OF PROVIDER. Provider shall be able to accept or decline to provide non-emergency medical transportation to Participants as requested by MODIVCARE in a manner to ensure safety. All transportation shall be performed in accordance with the terms of this Agreement (including all amendments and addenda, as applicable), and MODIVCARE's North Carolina Transportation Provider Manual ("Provider Manual"), which may be amended by MODIVCARE from time to time and is incorporated by reference and is a part of this contract. In the event of a conflict between this Agreement and the Provider Manual, the terms of this Agreement will prevail.

A. <u>General Operational Requirements.</u>
1. Provider shall designate in writing (in Exhibit E) a person empowered by Provider to effect any necessary decision or actions and to be available for consultation or conference with MODIVCARE or its designated agent regarding its performance under this Agreement.
2. Provider must be enrolled and maintain active status in the State of North Carolina NCTracks system throughout the term of this Agreement.
3. Provider shall provide non-emergency ambulance transportation.
4. Provider shall provide safe, reliable, professional, cost effective transportation services in the least intrusive way possible for Participants, while ensuring that Participants:
   a. arrive at the designated destination;
   b. arrive on time;
   c. arrive safely;
   d. are treated with dignity and respect, and
   e. achieve their maximum potential for travel independence.
5. Services will be provided in the Service Area as defined in Exhibit E - Service Level Commitment.
6. Provider shall establish and maintain both a telephone line, fax line, or other

mutually agreed upon method for MODIVCARE to contact Provider. Fax lines shall be equipped with a fax machine or e-fax software that provides reasonably unrestricted access to MODIVCARE to send faxes to Provider. Provider shall receive trip reservations from MODIVCARE electronically or via secure website and confirm the receipt thereof in a form acceptable to MODIVCARE. For same day or urgent medical appointments, including hospital discharges, Provider shall also accept reservations and job numbers from MODIVCARE by telephone.

7. Provider shall reroute trip assignments at least 24 hours prior to the scheduled pick-up time to allow MODIVCARE to make alternative arrangements. This requirement only applies to trip reservations that have been submitted to Provider at least 36 hours prior to the scheduled pick-up time. Provider shall promptly inform MODIVCARE if a Participant is assigned to an improper level of service (e.g., ambulatory patient assigned to an ambulance trip).

8. Provider, upon consultation with MODIVCARE, may refuse to transport any person who, in the judgment of the Provider, should not be transported by ambulance or is a threat to the health, safety, or welfare of Provider's employees or other Participants, or prevents or inhibits the vehicle from being operated in a safe manner.

9. Provider shall use best efforts to assist with the development of MODIVCARE's quality assurance plan, which may include discussing Provider's performance in the delivery of transportation. Provider further agrees to assist in the development of a system for corrective action plans and a system for data collection that may be requested to monitor the results of such corrective action plans. MODIVCARE will use best efforts to work with Provider to find mutually acceptable standards and means of quality assurance with do not unduly burden Provider or result in duplicative work.

10. Provider shall not unlawfully discriminate against any Participant on the basis of marital status, sexual orientation, race, color, sex, age, religion, national origin, disability, or diagnosis/health status in providing services under this Agreement.

11. Provider shall comply with applicable federal and state requirements with regard to mandatory reporting of suspected Participant abuse or neglect. Provider shall cooperate with MODIVCARE, Client, and any applicable government agency in the investigation of suspected or alleged abuse or neglect of a Participant.

12. Provider shall maintain daily office hours for dispatch and recovery until all trips assigned to provider are complete.

13. In addition to other operational reports defined in the Provider Manual, Provider will provide to MODIVCARE with any and all information required by applicable governing bodies or regulatory agencies. Provider agrees to provide copies of requested records to MODIVCARE within 30business days of the request, unless an earlier response is required by law.

B. <u>Representations and Warranties.</u> Provider makes the following material warranties to MODIVCARE to induce MODIVCARE to enter into this Agreement.

1.  Provider warrants that it has not been terminated from participation in any state Medicaid or Medicare program or been determined to have committed Medicaid or Medicare fraud.

2.  Provider warrants that it has not been excluded from participation in Federal health care programs under either Section 1128 or 1128A of the Social Security Act.

3.  Provider warrants that it has and shall maintain throughout the term of this Agreement all licenses and certificates required by any federal, state, county or local governments, including but not limited to all licenses, registrations, or certificates required to provide transportation for hire.   Provider will notify MODIVCARE immediately of any change in the status of its licenses or certificates and/or any other legal requirements referenced in this section. Provider will furnish MODIVCARE with all documentation required by this section immediately upon request.

4.  Provider will provide proof of training for Fraud, Waste and Abuse, as  well as training for HIPAA and confidentiality.

5.  Provider warrants and agrees to be bound by the mandatory terms and conditions applicable to Provider that are contained in the contract between MODIVCARE and Client.

6.  Provider warrants and agrees to accept the rates and payment terms as set forth in Exhibit B.  To the extent any compensation paid by MODIVCARE to Provider under the terms of the Agreement are subject to the provisions of 31 USC 1352, Provider certifies, to the best of his/her/its knowledge, that:

    a.  No Federal appropriated funds have been paid or will be paid to any person by or on behalf of Provider for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a Member of Congress in connection with the award of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

    b.  If any funds other than Federal appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with the award of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000, Provider shall complete and submit Standard Form - LLL "Disclosure Form to Report Lobbying", in accordance with its instructions.  The failure to file the required certification shall subject the violator to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

C.  <u>Insurance.</u> Provider shall maintain the following minimum levels of insurance throughout the term of the Agreement as required to participate in the North Carolina Medicaid

program, as evidenced through Provider's active status in the NCTracks system.

1. Vehicle Insurance.
   a. Ambulances: The required amount of insurance is the greater of the amount required by city, county or State ordinance or regulation, or $1,500,000 per occurrence per accident.
2. Comprehensive General Liability Coverage. $500,000 per incident, $1,000,000 aggregate, with "Broad Form" occurrence-based coverage including contractual liabilities as well as liabilities, without sub-limits, for sexual abuse and molestation.
3. Workers' Compensation Insurance as required by the State of North Carolina.
4. Additional Insurance Requirements.
   a. All insurance coverage, except Workers' Compensation, shall name ModivCare Solutions, LLC and Client (if requested by CLIENT) as "Additional Insured" and shall be primary with respect to claims and co-insurance determinations.
   b. Before the Effective Date of the Agreement the Provider shall submit to MODIVCARE certificates of insurance from its agent or carrier listing ModivCare Solutions, LLC and Client (if requested by Client) as "Additional Insured" and listing ModivCare Solutions, LLC as a "Certificate Holder." Failure of Provider to submit the required certificate of insurance by the effective date of this Agreement shall render the Agreement null and void as though never executed by the parties.
   c. Insurance policies shall indicate that MODIVCARE will be informed in writing at least 30 days prior to any termination of or change in insurance coverage.
   d. The certificate of insurance submitted to MODIVCARE shall describe the Provider's vehicle insurance to include coverage for "non-emergency medical transportation" and/or "transportation for hire," and confirm that the Comprehensive General Liability policy provides coverage for contractual liabilities, sexual abuse and molestation. The certificate of insurance shall also confirm the vehicle insurance policy provides coverage for "Any Auto" or symbols "2", "8" and "9".
   e. Provider shall submit additional certificates of insurance from its agent or carrier immediately upon the renewal of or any change to its insurance coverage.
   f. Provider agrees that MODIVCARE may communicate directly with its insurance agent or carrier to confirm details or obtain clarification of Provider's insurance coverage or policy terms.

D. RESERVED

E. Maintenance of Records. Provider must maintain all records related to this Agreement for the entire term of the Agreement as required by law. Notwithstanding the foregoing, in the event that any litigation, claim, dispute, audit, or other proceeding has commenced before the expiration of the retention period set forth herein, all records shall be retained until completion of the proceeding or the end of the retention period, whichever is later. Provider

must be able to provide copies of any requested records to MODIVCARE, the Client or its agents within 30 business days or such shorter time as required by law.

F.  <u>Independent Contractor.</u>  The relationship between MODIVCARE and Provider is solely that of independent contractors and nothing in this Agreement or otherwise shall be construed to create any other relationship, including one of employer/employee, principal/agent, joint venturers, partners, or any relationship other than that of independent parties contracting with each other solely for the purpose of carrying out the provisions of this Agreement.  Provider is solely responsible for the management, compensation, and payment of its employees and subcontractors, including payment of employment related taxes and insurance such as workers' compensation and unemployment insurance.

G. RESERVED

H.  <u>Assignment.</u> Provider may not assign, transfer, delegate, consign, or convey to any other person or entity Provider's rights and responsibilities hereunder without the express written consent of MODIVCARE, which shall not be unreasonably withheld  Any attempted unauthorized assignment shall be null and void.  MODIVCARE may assign its rights and obligations under this Agreement and any such assignment shall be communicated to Provider by written notice.  In the event that MODIVCARE is in default under the Client Contract, this Agreement may, at the discretion of the Client, be assigned to the Client or its agent for continued provision of transportation services.  All terms, conditions and rates established by the Agreement will remain in effect until or unless renegotiated with Client or its agent subsequent to the default action.

I.  <u>Confidentiality.</u> Provider shall treat all information obtained by it through its performance under this Agreement as confidential and shall not, unless consented to by the Member, use any information so obtained in any manner other than to discharge its obligations under this Agreement. Provider, with the consent of the Member, intends to offer health services to the Member as allowed by law, including services and products offered by Provider affiliates. Provider and MODIVCARE agree to sign and abide by a mutually acceptable Business Associate Agreement as part of this Agreement as well as any subsequent agreements that may be required by the Health Insurance Portability and Accountability Act (HIPAA) and any similar laws.  Both MODIVCARE and Provider shall treat the terms and conditions of this Agreement, including but not limited to rates, as confidential, and shall not disclose those terms and conditions, or release a copy of the Agreement, except as provided by law, without the consent of the other. Provider is willing to discuss with MODIVCARE the provision of data which may be useful in improving health outcomes or obtaining value-added payments. Both MODIVCARE and the Client shall have unrestricted authority, to the extent permitted by law, to reproduce, distribute, or use in whole or in part any submitted reports, data or materials associated with any services provided by Provider under this Agreement.

III. TERM AND TERMINATION.

A. Term. The term of this Agreement shall be one year from the Effective Date, which is the date executed by MODIVCARE as set forth on the signature page. It shall be automatically renewed for successive one-year periods unless either party shall give notice of termination 45 days prior to the last day of any term.

B. Termination. Either party may terminate this Agreement without cause upon 60-day written notice.

Either party may terminate this Agreement upon 30-day written notice in the event of a material breach of the Agreement, provided that the non-breaching party shall have first provided the other party with written notice and description of the breach and ten days to cure the breach.

MODIVCARE may terminate the Agreement immediately upon reasonable evidence that Provider has engaged in illegal, threatening or fraudulent activity, including but not limited to, falsifying trip logs or invoices, paying or offering to pay gratuities of kickbacks, or engaging in threatening verbal or physical conduct toward a Participant or MODIVCARE staff, or failing at any time to carry insurance required by this Agreement.

MODIVCARE may also terminate this Agreement immediately if directed to do so by Client.

C. Termination after Assignment. If MODIVCARE has exercised its right hereunder to assign this Agreement to a successor organization, or to the Client or a designee or agent of the Client, Provider may cancel this Agreement within 60 days following such assignment.

## IV. ADDITIONAL PROVISIONS.

A. Governing Law. This Agreement shall be governed by and construed in all respects in accordance with the laws and regulations of the State of North Carolina, without giving effect to principles of conflicts of law.

B. Headings. The headings and titles of the sections of this Agreement are inserted for convenience only and shall not affect the construction or interpretation of any provision herein.

C. Non-solicitation. MODIVCARE shall not solicit for employment any current employee of Provider nor employ any former employee of the Provider for a period of one year from the time any such employee terminates his or her position with the Provider.

D. Use of Name. MODIVCARE shall have the right to use the name of Provider for purposes of informing Clients and potential clients of the inclusion of Provider within the MODIVCARE network and to otherwise carry out the terms of this Agreement. Provider shall not use the name, trademark or service marks of MODIVCARE or any MODIVCARE affiliate in its advertising or marketing without the prior written consent of MODIVCARE, which consent shall not be unreasonably withheld.

E. <u>Notices.</u> All written notices required by this Agreement shall be deemed delivered either on the date of receipt if personally delivered; on the day following mailing if sent postage prepaid by overnight mail through a nationally recognized overnight carrier, or on the third day following mailing if mailed postage prepaid certified return receipt requested. Such notices shall be sent to the following addresses, or to such other addresses as the parties may hereafter designate in writing:

   to MODIVCARE at:

         ModivCare Solutions, LLC
         1275 Peachtree Street, 6th Floor
         Atlanta, GA 30309
         Attn: Legal Department

   to Provider at:    *Provider's mailing address as listed in Exhibit E.*

F. Provider and MODIVCARE agree that written notices required by this agreement may also be delivered via fax and email to the following addresses and fax numbers:

   To MODIVCARE at:

   to Provider at:    Fax:  252-332-4515
               Email: dillon@medextransport.com, <u>info@medextransport.com</u>

G. <u>Amendments.</u> This Agreement (including Exhibits) may be amended only by a document in writing duly executed by an authorized representative of both parties. Notwithstanding the foregoing, Provider is obligated to comply with the Provider Manual, as that document may be amended from time to time, so long as such changes are required by applicable law or regulation. In addition, MODIVCARE may unilaterally amend this Agreement by notice, but only as required to comply with applicable law or regulation.

H. <u>Client Amendment.</u> This Agreement is subject to approval by the Client. If the Client at any time requires modifications to this Agreement, the parties will execute amendments to this Agreement reflecting such modifications. If either party is unwilling to accept any such modifications required by the Client, such party may exercise its termination rights hereunder.

I. <u>Dispute Resolution and Arbitration.</u> If any claim or controversy arising out of or relating to this Agreement cannot be resolved by the parties in the normal course of business, each Party shall designate a member of its senior management to meet to try to resolve the dispute. Notwithstanding the foregoing, nothing shall prohibit ModivCare from filing a

cross claim or a third-party claim in any litigation or action not initiated by the Parties. The provisions of this Section shall survive the termination of this Agreement.

J. <u>Severability.</u> Any determination that any provision of this Agreement or any application thereof is invalid, illegal or unenforceable in any respect in any instance shall not affect the validity, legality and enforceability of such provision in any other instance, or the validity, legality or enforceability of any other provision of this Agreement. Neither Party shall assert or claim that this Agreement or any provision hereof is void or voidable if such Party performs under this Agreement without prompt and timely written objection.

K. <u>Waiver.</u> Any delay or omission by either party to exercise any right or remedy under this Agreement shall not be construed to be a waiver of any such right or remedy or any other right or remedy hereunder. Except as otherwise explicitly set forth herein, all of the rights of either party under this Agreement are cumulative and may be exercised separately or concurrently.

L. <u>Entire Agreement.</u> This Agreement, including all Exhibits, attachments and incorporated material (i.e., Provider Manual) contains the entire agreement of the parties with respect to its subject matter and supersedes all prior oral or written agreements or understandings regarding the same subject matter. This Agreement may be executed in any number of counterparts which, read together, shall constitute one instrument.

M. <u>No Third Party Beneficiaries.</u> The parties acknowledge and agree that there are no third party beneficiaries to this Agreement, including but not limited to Participants. This Agreement shall not create a standard of care to be construed to be enforceable by a third party. Any breach of this Agreement or failure to abide by its terms shall not create a cause of action in a third party.

Unless otherwise indicated, this Agreement is entered into and effective on the date executed by ModivCare as specified below (the "Effective Date").

**MODIVCARE SOLUTIONS, LLC**                    **PROVIDER**

By: _____          By: _____

Name: _____Marvin Lewis_____          Name: ____Dillon Lowe_____

Title: _VP of Contracts & Pricing_          Title: ____CEO_____

**Effective Date**: ___10/24/2023____          Date: ___6/14/2023_____

**EXHIBIT B**
**RATES, INVOICING AND PAYMENT TERMS**

MODIVCARE and Provider hereby agree to the following terms for invoicing and payment of claims and for the re-submittal of denied claims.

Rates

Except in situations where prior arrangements have been made for hospital discharges and/or inter-facility transports where Provider is a preferred or contracted provider, or in situations involving repeated and regularly scheduled transports, such as dialysis or repeat doctor visits, only services specifically pre-authorized by, and for which a job number (aka "Ride ID") has been assigned to the Provider by MODIVCARE will be compensated. Provider will perform ambulance transportation as requested by MODIVCARE unless Provider declines the visit or determines that ambulance transport is not appropriate in accordance with section II above, including its subsections.

Provider agrees to accept on a per trip basis its negotiated rate for the transport, or if no rate has been agreed to, the lesser of its actual billed charges or the amount calculated using the applicable mileage and rates shown in the table included as Attachment 1 to this Exhibit B. The parties agree that Provider's bill to MODIVCARE and all payments made by MODIVCARE to Provider include all applicable state and local sales and use taxes on transportation services. Provider understands they are responsible to calculate and remit all applicable taxes on such services. Provider agrees to provide proof of registration with taxing agencies and payment of such taxes upon request.

Provider agrees that MODIVCARE's determination of mileage shall be based on Google Maps mileage calculation If Provider believes there to be a material mileage error, Provider may bring it to MODIVCARE's attention before running the trip. MODIVCARE will review the trip or trips in question and may reference other software to verify the distance. If Provider is not satisfied with MODIVCARE's decision regarding the mileage it may decline the trip. Performance of a trip constitutes acceptance of the mileage provided by MODIVCARE. In addition, the parties agree that MODIVCARE may use automated vehicle location ("AVL") geocoded data, when available, to review and/or research mileage determinations, service, or performance issues. Provider may bring to the attention of MODIVCARE special circumstances (road closures, weather conditions, or emergency situations where specific circumstances require unusual routing) and may ask for a reimbursement.

Invoices Submitted to MODIVCARE.

If using an approved Software Partner, Provider will use best efforts so that any rates or formulas used by the Software Partner to calculate the invoice amount is materially consistent with the rates shown in the table included as Attachments 1 & 1A to this Exhibit B. Providers that use an approved Software Partner shall provide all required data elements as defined in this Agreement for vehicles and drivers used to perform services under this Agreement, including in the event Provider uses vehicles or drivers that are not individually approved by MODIVCARE to perform services. Performance of a MODIVCARE assigned trip by Provider shall be deemed as approval and/or authorization for its approved Software Partner to communicate the aforesaid data for each vehicle and driver that performs a MODIVCARE assigned trip, once the parties have integrated their respective systems.

MODIVCARE recognizes that Provider is not, at the time of this Agreement, using an approved Software Partner for purposes of this paragraph.

### Co-Pay, Subrogation, and Coordination of Benefits

In the event that Participants are responsible for any co-payment per trip, then Provider is responsible for collection of those amounts. Provider shall retain the co-payment and the total of the collectible co-payment will be deducted from the total charges payable to Provider.

Provider agrees to fully cooperate with MODIVCARE's and Client's efforts, if any, with regard to third party recovery rights (e.g., subrogation and coordination of benefits) for services provided under this Agreement.

### Wait time

Only wait time specifically pre-authorized by MODIVCARE will be compensated, except in situations where parties have agreed otherwise.

### Payment Terms

**For dates of service prior to July 1, 2023:**

**AS A CONDITION OF PAYMENT, PROVIDER MUST SUBMIT ACCURATE INVOICES, INCLUDING PROPERLY COMPLETED TRIP LOGS, TO MODIVCARE WITHIN ONE-HUNDRED EIGHTY (180) DAYS OF DATE OF SERVICE. PROVIDER AND MODIVCARE AGREE TO USE BEST EFFORTS TO ALLOW PROVIDER TO SUBMIT AGREED UPON INVOICES AND TRIP LOGS SO AS TO REDUCE DUPLICATIVE ADMINISTRATIVE EXPENSE.** TIME IS OF THE ESSENCE WITH RESPECT TO PROVIDING PROMPT AND ACCURATE INVOICES. INVOICES NOT SUBMITTED WITHIN **ONE-HUNDRED EIGHTY (180)** DAYS OF DATE OF SERVICE WILL BE DENIED AND DISALLOWED IN THEIR ENTIRETY. HOWEVER, PROVIDER'S FAILURE TO SUBMIT A CLAIM WITHIN THIS TIME WILL NOT INVALIDATE OR REDUCE ANY CLAIM IF IT WAS NOT REASONABLY POSSIBLE FOR PROVIDER TO SUBMIT THE CLAIM WITHIN THAT TIME. IN SUCH CASE, THE CLAIM SHOULD BE SUBMITTED AS SOON AS REASONABLY POSSIBLE, AND IN NO EVENT, LATER THAN ONE (1) YEAR FROM THE TIME SUBMITTAL OF THE CLAIM IS OTHERWISE REQUIRED.

**For dates of service July 1, 2023 and following:**

**AS A CONDITION OF PAYMENT, PROVIDER MUST SUBMIT ACCURATE INVOICES, INCLUDING PROPERLY COMPLETED TRIP LOGS, TO MODIVCARE WITHIN ONE (1) YEAR OF DATE OF SERVICE. PROVIDER AND MODIVCARE AGREE TO USE BEST EFFORTS TO ALLOW PROVIDER TO SUBMIT AGREED UPON INVOICES AND TRIP**

**LOGS SO AS TO REDUCE DUPLICATIVE ADMINISTRATIVE EXPENSE.** TIME IS OF THE ESSENCE WITH RESPECT TO PROVIDING PROMPT AND ACCURATE INVOICES. INVOICES NOT SUBMITTED WITHIN **ONE (1) YEAR** OF DATE OF SERVICE WILL BE DENIED AND DISALLOWED IN THEIR ENTIRETY. HOWEVER, PROVIDER'S FAILURE TO SUBMIT A CLAIM WITHIN THIS TIME WILL NOT INVALIDATE OR REDUCE ANY CLAIM IF IT WAS NOT REASONABLY POSSIBLE FOR PROVIDER TO SUBMIT THE CLAIM WITHIN THAT TIME. IN SUCH CASE, THE CLAIM SHOULD BE SUBMITTED AS SOON AS REASONABLY POSSIBLE, AND IN NO EVENT, LATER THAN ONE (1) YEAR FROM THE TIME SUBMITTAL OF THE CLAIM IS OTHERWISE REQUIRED.

Notwithstanding the preceding paragraph, it is agreed that invoices for dates of service prior to the date of signing this Agreement will be paid by MODIVCARE as submitted. More specifically, MODIVCARE will pay such invoices without regard to the dates of service being more than 180 days in the past, or more than one year in the past, so long as such invoices were submitted to MODIVCARE prior to date of signing of this Agreement.

Claims that are denied and returned to Provider because of missing information may be resubmitted with the previously missing information. These claims will be denied in their entirety if not resubmitted within ninety (90) days of the date the claim was returned to the Provider. Provider shall continue to perform its obligations hereunder regardless of any outstanding contested amounts.

If Provider must first submit a claim to Medicare as the primary payer, the claims submission timeframes shall begin on the date of the denial of the claim by Medicare. A copy of the Medicare denial notice must be submitted with Provider's invoice.

Provider and MODIVCARE will use best efforts to agree upon quality assurance practices, and upon such agreement, Provider shall cooperate with MODIVCARE and/or Client initiated quality assurance activities, including, but not limited to, audits to confirm Participants actually attended covered medical services associated with trips invoiced by Provider. Notwithstanding any provision of the Agreement to the contrary, MODIVCARE shall only pay for transportation services when Participants actually attend a Medicaid and/or Medicare covered medical service. If a trip payment to Provider is denied because a Participant did not attend an associated covered medical service, if the failure to attend is not the fault of the Provider, then MODIVCARE will pay Provider for the attempt of transport at the level of service ordered. Provider may, to the extent permitted by law, directly bill the Participant for the transportation services. Any duplicate or overpayments made to Provider may be offset by MODIVCARE against future payments to Provider.

MODIVCARE pays properly submitted uncontested invoices twice per month by check or electronic transfer within thirty (30) days after receipt (which may be the date of receipt of paper trip logs with member signatures, if applicable), or more frequently if required by applicable State regulations or by the Client Contract. If a payment date falls on a holiday, payments will be made on the next working weekday.

<u>Quality Assurance</u>

MODIVCARE will regularly confirm Participant attendance at the medical appointments designated in the trip reservations as part of its duty to prevent and mitigate fraud, waste and abuse. Provider agrees to cooperate with MODIVCARE to investigate any instances in which a medical facility reports a Participant did not attend an appointment associated with a trip reservation that has been reported as a completed trip by Provider and has been invoiced to and paid by MODIVCARE. Provider's failure to respond in writing within thirty (30) days of MODIVCARE's written request shall be considered confirmation that the trip did not occur, and Provider waives any right to protest or appeal such determination. MODIVCARE shall deduct the cost of such trips from Provider's next payment. If no payments to Provider are due, the Provider shall return the amounts in question to MODIVCARE within thirty (30) days of written demand.

Optional Participant Signature Requirements

The following additional provisions shall apply if, and only if, a MODIVCARE Client requires a Participant signature to be captured as confirmation of a completed trip.

- MODIVCARE shall notify Provider in writing no less than 30 days prior to implementation of a Client mandated Participant signature requirement, in which event, and as a condition of payment, Provider's electronic invoice shall include Participant's e-signature.
- If Provider's electronic invoice does not capture the Participant's e-signature, Provider shall submit to MODIVCARE completed paper trip logs, including Participants' signatures, for all trips billed by Provider.
- In the event a Participant is incapable of e-signing or signing the paper trip log, a member of the Participant's household or designated caretaker, or a representative of the drop-off medical facility is required to e-sign or sign the paper trip log using their own name (i.e., not signing the Participant's name) and stating their relationship to the Participant (i.e., James Doe – father, or Jane Doe – facility nurse). In no event should a driver or attendant sign the Participant's name on behalf of the Participant.
- Unsigned trips, trips with Participant's initials instead of signatures, or trips with notes that the Participant is unable to sign are considered incomplete and will not be accepted for payment. Improperly completed or incomplete paper trip logs, if applicable, will be returned to Provider and payment will be denied for either the entire trip log or for individual trips reported thereon, whichever is applicable.
- If Provider is submitting paper trip logs to supplement electronic invoices, Provider must also include a completed summary invoice form with each batch of trip logs submitted to MODIVCARE. Provider shall use trip log and summary invoice forms that are provided by MODIVCARE. MODIVCARE reserves the right to modify the format of the trip log and summary invoice form from time to time. Provider may use alternative trip log or summary invoice forms only with the express written consent of MODIVCARE.
- Paper trip logs must be free of excessive changes. Changes on the trip log should be made with a single line through the text so that the original text remains visible (i.e., no whiteouts, blackouts or complete obscuring of original text). Any changes on the trip log should be dated and initialed by the driver. MODIVCARE reserves the right to deny individual trips or entire trip logs with excessive changes pending confirmation of the details of such changes with Provider.

For clarity, paper trip logs are only required if Provider's electronic invoices do not capture Participants' e-signatures.  Paper trip log are not required if Provider's electronic invoices capture and transmit Participant e-signatures.

Notwithstanding the foregoing, Provider and MODIVCARE have agreed that Provider may submit CMS 1500 forms with electronic data, to include member date of birth, as sufficient invoicing.

Charges Against Invoices

RESERVED

**[Remainder of Page Intentionally Left Blank]**

## ATTACHMENT 1 TO EXHIBIT B
### RATE CARD EFFECTIVE FOR ALL DATES JULY 1, 2021 – MARCH 31, 2023

**Provider Name ("Provider"):  MedEx Medical Transport Service, Inc.**

### 2021 – 2022  Rate Table

| Rate Description | Base Rate | Miles Included in Base Rate | Comments |
|---|---|---|---|
| Non-Emergency Ambulance Services: | | N/A | |
| Basic Life Support (BLS) - Base Rate | $225.14 | | |
| Advanced Life Support (ALS) - Base Rate | $270.17 | | |
| Specialty Care Transport (SCT) - Base Rate | n/a | | |
| Ground Mileage Rate | $7.63 | | We do not include mileage in any base rates |

The rates listed on this Attachment 1 to Exhibit B shall be effective, for dates of service prior to April 1, 2023, on the date executed by ModivCare as specified below (the "Effective Date").

**MODIVCARE SOLUTIONS, LLC**       **PROVIDER**

By: _Marvin O. Lewis_             By: _Dillon Lowe_

Name: Marvin Lewis                 Name: Dillon Lowe

Title: VP of Contracts & Pricing   Title: CEO

**Effective Date:** 10/24/2023     Date: 6/14/2023

## ATTACHMENT 1A TO EXHIBIT B
## RATE CARD EFFECTIVE FOR ALL DATES APRIL 1, 2023 AND FOLLOWING

**Provider Name ("Provider"):  MedEx Medical Transport Service, Inc.**

### 2023 Rate Table

| Rate Description | Base Rate | Miles Included in Base Rate | Comments |
|---|---|---|---|
| Non-Emergency Ambulance Services: | | N/A | |
| Basic Life Support (BLS) - Base Rate | $349.53 | | |
| Advanced Life Support (ALS) - Base Rate | $419.44 | | |
| Specialty Care Transport (SCT) - Base Rate | n/a | | |
| Ground Mileage Rate | $8.80 | | We do not include mileage in any base rates |

The rates listed on this Attachment 1A to Exhibit B shall be effective, for dates of service on or after April 1, 2023, on the date executed by ModivCare as specified below (the "Effective Date").

**MODIVCARE SOLUTIONS, LLC**

By: _____
Name: _____Marvin Lewis_____
Title: ___VP of Contracts & Pricing___
**Effective Date:** ____10/24/2023____

**PROVIDER**

By: _____Mmarlowe_____
Name: ___Dillon Lowe_____
Title: ___CEO_____
Date: ___6/14/2023_____

DocuSign Envelope ID: DE10FE93-CEE5-4A18-9046-470C1F33A3C5

# EXHIBIT D
## FRAUD, WASTE AND ABUSE PREVENTION POLICY

Federal law requires that entities that receive at least $5 million in annual payments under a State Medicaid program establish written policies for their employees, contractors and agents that furnish detailed information regarding the federal and state False Claims Acts, the administrative remedies available under those acts, other protection under the acts, and the Company's procedures for detecting fraud, waste and abuse.

ModivCare's policy is to provide detailed information to all employees, contractors and agents about federal and state False Claims Acts as well as information about ModivCare's policies and procedures to detect and prevent fraud, waste and abuse. We require that you adhere to these policies and disseminate the information in this Exhibit D to all employees and contractors. The information in this policy forms part of its employee manual, its transportation provider manual, and is distributed to all contractors and agents as required by the Deficit Reduction Act of 2005.

Federal False Claims Act

The federal False Claims Act applies to the submission of claims by healthcare providers for payment by Medicare, Medicaid and other federal and state healthcare programs. The False Claims Act is the federal government's primary civil remedy for improper or fraudulent claims. It applies to all federal programs, from military procurement contracts to welfare benefits to healthcare benefits.

The False Claims Act prohibits, among other things:

- knowingly presenting or causing to be presented to the federal government a false or fraudulent claim for payment or approval;
- knowingly making or using, or causing to be made or used, a false record or statement in order to have a false or fraudulent claim paid or approved by the government;
- conspiring to defraud the government by getting a false or fraudulent claim allowed or paid; and
- knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government.

"Knowingly" means that a person, with respect to information: 1) has actual knowledge of the information; 2) acts in deliberate ignorance of the truth or falsity of the information; or 3) acts in reckless disregard of the truth or falsity of the information.

Enforcement

- The United States Attorney General may bring civil and criminal actions for violations of the False Claims Act. In a civil action the government must establish

its case by presenting a preponderance of the evidence, while in a criminal action it must meet the higher burden of proof that applies in criminal cases. The False Claims Act allows private individuals to bring "qui tam" actions for violations of the False Claims Act.

Reporting Suspected Fraud, Waste or Abuse

An employee or contractor who has knowledge or information that any activity that may violate any of the laws discussed above or of any fraud, waste of abuse should notify his or her supervisor or other management official, who will in turn report the matter to ModivCare. Transportation providers must have a system in place for reporting potential violations, which includes a way of reporting information anonymously.

No Retaliation

Federal and state law as well as ModivCare policy prohibits any retaliation or retribution against any person who reports suspected violations of these laws whether to their employer, to ModivCare, to law enforcement officials or by filing a lawsuit on behalf of the government. Anyone who believes that he or she has been the subject to any such retaliation or retribution should also report this to their supervisor or other appropriate person, as provided by their employer's policy covering such matters.

Program Fraud Civil Remedies Act of 1986

The Program Fraud Civil Remedies Act of 1986 ("PFCRA") authorizes federal agencies such as the Department of Health and Human Services to investigate and assess penalties for the submission of false claims to the agency. The conduct prohibited by the PFCRA is similar to that prohibited by the False Claims Act. For example, a person may be liable under the PFCRA for making, presenting, or submitting, or causing to be made, presented, or submitted, a claim that the person knows or has reason to know:

- is false, fictitious, or fraudulent;
- includes or is supported by any written statement that:
  - o omits a material fact;
  - o is false, fictitious, or fraudulent as a result of such omission; and
  - o include such material fact; or
  - o is for payment for the provision of property or services which the person has not provided as claimed.

If a government agency suspects that a false claim has been submitted, it can appoint an investigating official to review the matter. The investigating official may issue a subpoena to further investigate, or may refer the matter to the Department of Justice for proceedings under the False Claims Act. If, based on the investigating official's report, an agency concludes that further action is warranted, it may issue a complaint regarding the false claim. A hearing following the detailed due process procedures set forth in the regulations implementing the PFCRA would be held.

State False Claims Acts

In addition to the requirements of federal law, you must comply with applicable state laws. At this time, nearly forty states have enacted False Claims Acts that are similar in substance and procedure to the Federal laws described, above. In addition, a number of municipalities, such as Chicago and New York City have their own False Claims Acts that are similar in substance and procedure to the Federal laws described above.

Fraud, Waste and Abuse / Company Detection

ModivCare has numerous policies and procedures for detecting fraud, waste and abuse. Some of the most important procedures are described below.

- A specific gate keeping protocol during the reservation process is used to verify that the member is eligible for transportation and that the trip is to a Medicaid provider.
- A detailed verification process for each invoice submitted by transportation providers checks whether the trip was performed by an eligible driver in a certified vehicle; that the price is correct; and that the member signed for the trip.
- Standing orders are regularly recertified with the health care facility.
- Patient attendance records at health care facilities are compared to provider invoices.
- Field monitors inspect vehicles and monitor trips for compliance.
- Every trip must be preauthorized, have a job number, and be performed in compliance with contract requirements in order to be paid.
- All network transportation provider drivers undergo criminal background checks and are checked against the OIG exclusion database. No excluded person may drive under a ModivCare contract.

ModivCare takes any allegation of fraud, waste or abuse very seriously and appropriately investigates any such allegation. Providers are required to report suspected cases of fraud, waste, abuse or other impropriety. Providers must cooperate in any investigations initiated by ModivCare or any government agency, as required by law.

**[Remainder of Page Intentionally Left Blank]**

# EXHIBIT E
## SERVICE LEVEL COMMITMENTS & PROVIDER INFORMATION

Provider agrees to maintain the following operational availability, service areas, and service standards:

**Method for Receiving Trips from MODIVCARE:**

**As agreed with Provider**

    **[__]**    **MODIVCARE Web-Based Platform:**

    **[__]**    **Integrated 3rd Party Dispatch Platform:**

        ____ *WellRyde*

        ____ *DispatchBot*

        ____ *CTS TripMaster*

        ____ Other: _____

**Transportation Service Hours:**

| | **Operating Hours (Local Time)** | **Day(s) of Week** |
|---|---|---|
| Normal Hours: | _____24/7_____ to | ___ Su / ___ M / ___ Tu / ___ W / ___ Th / ___ F / ___ Sa |
| After Hours: | _____ to _____ | ___ Su / ___ M / ___ Tu / ___ W / ___ Th / ___ F / ___ Sa |
| Weekend Hours: | _____ to _____ | ___ Su / ___ M / ___ Tu / ___ W / ___ Th / ___ F / ___ Sa |

**Service Area(s):**

| Counties: | Franchised Counties: Counties that only the franchisee can perform trips starting and ending in the county. Hertford, Pitt, Nash, Beaufort, Cumberland, Durham, Wake, Wayne, Wilson, Forsyth and Johnston. In addition, we can perform trips that begin and end in different counties. We perform such trips throughout central and eastern NC. Furthermore, we are able to perform member transports from North Carolina out of state, if necessary. We are also able to accommodate overnight trips by special arrangement. |
|---|---|
| Zip Codes: | All zip codes in counties above. |

**Dispatch Contact Info & Operating Hours:**

    Phone:    ____855-329-1003_____

    Fax:    ____252-332-4515_____

Email: \_\_\_\_dispatch@medextransport.com,
wbrooks@medextransport.com_____
Normal Hours: \_\_\_\_24/7_____
After Hours: _____

**24/7 Emergency Contact Name and Phone #:**
Name: \_\_\_\_Dillon Lowe_____
Phone: \_\_\_\_252-287-7365_____

**Provider's Authorized Representative:**
Name: \_\_\_\_Dillon Lowe_____
Title: \_\_\_\_CEO_____
Phone: \_\_\_\_2522877365_____
Email: \_\_\_\_dillon@medextransport.com_____

**Provider's Mailing Address:**
Care Of: \_\_\_\_MedEx Medical Transport_____
Address 1: \_\_\_\_PO Box 506_____
Address 2: _____
City: \_\_\_\_Ahoskie_____
State: \_\_\_\_NC_____
Zip Code: \_\_\_\_27910_____

**[Remainder of Page Intentionally Left Blank]**

DocuSign Envelope ID: DF4D5E92-CFB5-41C3-9046-470C1F33A3B5

**EXHIBIT F**

ModivCare is a subcontracted vendor performing non-emergency medical transportation brokerage and related services on behalf of managed care organizations (our "Clients") who are in turn contracted with the North Carolina Department of Health and Human Services ("DHHS"). As noted in the language highlighted in paragraph 6, below, the contracts between our Clients and DHHS requires the inclusion of the following Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion Lower Tier Covered Transaction be included in all downstream agreements. Provider is understood to be "Subcontractor" as used in the following Certification.

**Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion Lower Tier Covered Transactions**

1. By signing this Agreement, Subcontractor is providing the certification set out below.
2. The certification in this clause is a material representation of the fact upon which reliance was placed when this transaction was entered into. If it is later determined that Subcontractor knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originate may pursue available remedies, including suspension and/or debarment.
3. Subcontractor will provide immediate written notice to Plan if at any time Subcontractor learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.
4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549, 45 C.F.R. Part 76.
5. Subcontractor agrees that it shall not knowingly enter any lower tier covered transaction with a person who is debarred, suspended, determined ineligible or voluntarily excluded from participation in this covered transaction unless authorized by the department or agency with which this transaction originated.
6. Subcontractor further agrees that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transaction," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.
7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Non-procurement List.
8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.
9. Except for transactions authorized in paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with

which this transaction originated may pursue available remedies, including suspension, and/or debarment.

## Certification

1. Subcontractor certifies, by submission of this document, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.
2. Where Subcontractor is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this Agreement.

**PROVIDER**

By: _Marlowe_

Name: ___Dillon

Lowe_____

Title:

____CEO_____

Date: __6|14|2023_____

# EXHIBIT G

## NORTH CAROLINA MANDATORY MEDICAID PROVISIONS

ModivCare is a subcontracted vendor performing non-emergency medical transportation brokerage and related services on behalf of managed care organizations (our "Clients") who are in turn contracted with the North Carolina Department of Health and Human Services ("DHHS"). The contracts between our Clients and DHHS requires the inclusion of the following mandatory and superseding provisions in all downstream provider agreements. All other provisions of the Agreement that are not in conflict with this Exhibit remain in full force and effect.

1. **Survival - Insolvency:** In the case of ModivCare's insolvency, Provider agrees to cooperate in good faith with ModivCare Clients and/or the NC DHHS to timely transition administrative duties and records.

2. **Member Billing:** Provider shall not bill any Medicaid Managed Care Member for covered services, except for specified coinsurance, copayments, and applicable deductibles. This provision does not prohibit Provider and Member from agreeing to continue non-covered services at the Member's own expense, as long as Provider has notified the Member in advance that the NC Medicaid NEMT program may not cover or continue to cover specific services and the Member agrees to receive the service.

3. **Member Billing:** Provider shall collect applicable Member deductibles, copayments, coinsurance, and fees for non-covered services.

4. **Provider Accessibility:** Provider's shall provide service in accordance with the standards for provider accessibility defined in the Agreement.

5. **Member Appeals and Grievances:** Provider shall cooperate with the Member regarding Member appeals and grievance procedures.

6. **Assignment:** Provider shall not assign, delegate, or transfer its duties and obligations under the Agreement without the prior written consent of ModivCare, which shall not be unreasonably withheld.

7. **Assignment:** ModivCare shall notify Provider, in writing, of any duties or obligations that are to be delegated or transferred by ModivCare, before the effective date of such delegation or transfer.

8. **Government Funds:** Provider acknowledges that funds used for Provider's payments are government funds.

9. **G. S. § 58-50-270(1) through (3):** The terms defined in North Carolina G. S. § 58-50-270(1) through (3) apply to the Agreement, as applicable. Specifically:
   a. "Amendment" – means any change to the terms of a contract, including terms incorporated by reference, that modifies fee schedules. A change required by federal or State law, rule, regulation, administrative hearing, or court order is not an amendment.

b. "Contract" – means an agreement between an insurer and a health care provider for the provision of health care services by the provider on a preferred or in-network basis.

10. **G. S. § 58-50-275(a) and (b):** The notice provision defined in North Carolina G. S. § 58-50-275(a) and (b) apply to the Agreement. Specifically, notices provided under the Agreement shall be deemed made (i) five business days following the date the notice is placed, first-class postage prepaid, in the United States mail; (ii) on the day the notice is hand delivered; (iii) for certified or registered mail, the date on the return receipt; or (iv) for commercial courier service, the date of delivery.

11. **G. S. § 58-50-280(a) through (d):** The requirements for Amendments defined in North Carolina G. S. § 58-50-280(a) through (d) apply to the Agreement, as applicable. Specifically:

a. ModivCare shall send any proposed contract amendment to Provider's notice contact pursuant to G.S. 58-50-275. The proposed amendment shall be dated, labeled "Amendment," signed by ModivCare, and include an effective date for the proposed amendment.

b. Provider shall be given at least 60 days from the date of receipt to object to the proposed amendment. The proposed amendment shall be effective upon Provider failing to object in writing within 60 days.

c. If Provider objects to a proposed amendment, then the proposed amendment is not effective and ModivCare shall be entitled to terminate the contract upon 60 days written notice to Provider.

d. Nothing prohibits Provider and ModivCare from negotiating contract terms that provide for mutual consent to an amendment, a process for reaching mutual consent, or alternative notice contacts.

12. **G. S. § 58-50-285(a) and (b):** In compliance with North Carolina G. S. § 58-50-285(a) and (b), ModivCare will provide a copy of its policies and procedures, in the form of a Provider Manual to Provider prior to execution of a new or amended contract and annually. The Provider Manual may be provided to Provider in hard copy, CD, or other electronic format, and may be provided by posting the Provider Manual on the ModivCare web site. The Provider Manual shall not conflict with or override any term of the Agreement, including payment rates and fees. In the event of a conflict between the Provider Manual and the language in the Agreement, the Agreement language shall prevail.

13. **Compliance with State and Federal Laws:** Provider understands and agrees that it is subject to all state and federal laws, rules, regulations, waivers, policies and guidelines, and court-ordered consent decrees, settlement agreements, or other court orders that apply to the Agreement and ModivCare Clients' managed care contract with the North Carolina Department of Health and Human Services (NC DHHS), and all persons or entities receiving state and federal funds. Provider understands and agrees that any violation by a provider of a state or federal law relating to the delivery of services pursuant to this Agreement, or any violation of the Clients' contracts with NC DHHS could result in liability for money damages, and/or civil or criminal penalties and sanctions under state and/or federal law.

DocuSign Envelope ID: 0E405E92CEF554A18-9046-470C-1E33A355

14. **Hold Member Harmless:**  Provider agrees to hold the Member harmless for charges for any covered service. Provider agrees not to bill a Member for medically necessary services covered by the ModivCare so long as the Member is eligible for coverage.

15. **Liability:**  Provider understands and agrees that the NC DHHS does not assume liability for the actions of, or judgments rendered against, ModivCare, its employees, agents or subcontractors. Further, Provider understands and agrees that there is no right of subrogation, contribution, or indemnification against NC DHHS for any duty owed to Provider by ModivCare or any judgment rendered against ModivCare.

16. **Non-discrimination / Equitable Treatment of Members:**  Provider agrees to render Provider Services to Members with the same degree of care and skills as customarily provided to Provider's customers who are not Members, according to generally accepted standards of business. Provider and ModivCare agree that Members and non-Members should be treated equitably. Provider agrees not to discriminate against Members on the basis of race, color, national origin, age, sex, gender, or disability.

17. **Department authority related to the Medicaid program**:  Provider agrees and understands that in the State of North Carolina, the Department of Health and Human Services is the single state Medicaid agency designated under 42 C.F.R. §431.10 to administer or supervise the administration of the state plan for medical assistance. The Division of Health Benefits is designated with administration, provision, and payment for medical assistance under the Federal Medicaid (Title XIX) and the State Children's Health Insurance (Title XXI) (CHIP) programs. The Division of Social Services (DSS) is designated with the administration and determination of eligibility for the two programs.

18. **Access to provider's records:**  Provider agrees to provide at no cost to the following entities or their designees with prompt, reasonable, and adequate access to the Agreement and any records, books, documents, and papers that relate to the Agreement and/or Provider's performance of its responsibilities under this Agreement for purposes of examination, audit, investigation, contract administration, the making of copies, excerpts or transcripts, or any other purpose NC DHHS deems necessary for contract enforcement or to perform its regulatory functions:
    i. The United States Department of Health and Human Services or its designee;
    ii. The Comptroller General of the United States or its designee;
    iii. The North Carolina Department of Health and Human Services (NC DHHS), its Medicaid managed care program personnel, or its designee;
    iv. The Office of Inspector General;
    v. North Carolina Department of Justice Medicaid Investigations Division;
    vi. Any independent verification and validation contractor, audit firm, or quality assurance contractor acting on behalf of NC DHHS;
    vii. The North Carolina Office of State Auditor, or its designee;
    viii. A state or federal law enforcement agency;
    ix. And any other state or federal entity identified by NC DHHS, or any other entity engaged by NC DHHS.

Provider shall cooperate with all announced and unannounced site visits, audits, investigations, post-payment reviews, or other program integrity activities conducted by the NC Department of Health and Human Services.

Nothing in this section shall be construed to limit the ability of the federal government, the Centers for Medicare and Medicaid Services, the U.S. Department of Health and Human Services Office of Inspector General, the U.S. Department of Justice, or any of the foregoing entities' contractors or agents, to enforce federal requirements for the submission of documentation in response to an audit or investigation.

19. **Provider ownership disclosure:** Provider agrees to disclose the required information, at the time of application, and/or upon request, in accordance with 42 C.F.R.§ 455 Subpart B, related to ownership and control, business transactions, and criminal conviction for offenses against Medicare, Medicaid, CHIP and/or other federal health care programs. See 42 C.F.R. § 455, Parts 101 through 106 for definitions, percentage calculations, and requirements for disclosure of ownership, business transactions, and information on persons convicted of crimes related to any federal health care programs.

    Provider agrees to notify, in writing, ModivCare and the NC Department of Health and Human Services of any criminal conviction within twenty (20) days of the date of the conviction.

20. **Provider Grievances and Appeals:** Provider and ModivCare agree to address and resolve grievances and appeals through the Dispute Resolution provisions defined in Section II.H. of the Agreement.

21. **Provider Grievances and Appeals:** Provider shall complete the steps of the Dispute Resolution provisions defined in Section II.H. of the Agreement before seeking other legal or administrative remedies under state or federal law.

22. **Submission of Claims:** Provider shall not submit claim or encounter data for services covered by Medicaid Managed Care and ModivCare's Clients directly to NC DHHS.

23. **Annual Audit / Review:** Provider agrees that ModivCare may conduct an annual review of Provider to ensure all requirements of the Agreement are met.

24. **Staff and Volunteer Records:** If Applicable, Provider shall maintain a file for their staff, approved volunteers, and member relatives and friends who are reimbursed directly for NEMT services. ModivCare may review these files to assure that all information is current within timeframes specified by ModivCare's and/or its Client's fraud, waste, and abuse monitoring plan.

25. **Staff and Volunteer Changes:** Provider shall maintain an agreement with each of its staff and approved volunteers to report all changes to file records.

26. **Driver Age and Records:** Provider agrees ModivCare may perform a periodic review of driver licenses and verification all drivers are at least 18 years of age and properly licensed. Provider will review driving records of all drivers every 12 months.

27. **Driver Age and Licensure:** All drivers must be at least 18 years of age and properly licensed to operate the specific vehicle used to transport members.

28. **Alcohol and Drug Testing:** Provider's drivers must participate in a random and reasonable suspicion alcohol and drug-testing program modeled on the Federal Transit Authority alcohol and drug testing program.

29. **Employee Screening:** Upon hire, Provider will conduct criminal background and driving record checks for its employees. In addition, Provider will check the NCOEMS credentialing site for a valid certification for its employees. Provider will also perform regular OIG checks as required by NC Medicaid.

30. **Separate Invoice:** If Provider's payment terms include to payments for no-shows or driver wait time, Provider agrees that all charges for no-shows or driver wait time will be separately invoiced separately from Medicaid transportation reimbursable costs.

31. **Complaints:** Provider shall record all member complaints which deal with matters in Provider's control, including the date that the complaint was made, the nature of the complaint and what steps were taken to resolve the complaint.

32. **Accident and Incident Reports:** Provider shall maintain written policies and procedures regarding how drivers handle and report incidents, including Member emergencies, vehicle breakdowns, accidents and other service delays.

33. **Billing Codes:** Provider shall use applicable transportation billing codes on invoices for reimbursements or filing claims.

34. **Medicaid Enrollment:** Provider shall meet all NC DHHS Medicaid Provider Enrollment requirements.

35. **Non-Reimbursable Costs:** Except as agreed between Provider and MODIVCARE, Provider agrees that ModivCare shall not reimburse or pay Provider for non-reimbursable costs, including, but not limited to, services that are not pre-authorized by ModivCare.

36. **Payment Terms:** To the extent inconsistent with the following, the section of Exhibit B of the Agreement titled "Payment Terms" is replaced owith the following:

Provider shall submit all claims to ModivCare for processing and payments within one-hundred-eighty (180) calendar days from the date of a covered trip. However, Provider's failure to submit a claim within this time will not invalidate or reduce any claim if it was not reasonably possible for Provider to submit the claim within that time. In such case, the claim should be submitted as soon

as reasonably possible, and in no event, later than one (1) year from the time submittal of the claim is otherwise required.

    i. For NEAT claims:

        1. ModivCare shall within eighteen (18) calendar days of receiving an NEMT Claim notify the provider whether the claim is clean or pend the claim and request from the provider all additional information needed to process the claim.

        2. ModivCare shall pay or deny a clean claim at lesser of thirty (30) calendar days of receipt of the claim or the first scheduled provider reimbursement cycle following adjudication.

        3. An NEAT pended claim shall be paid or denied within thirty (30) calendar days of receipt of the requested additional information.

    ii. If the requested additional information on an NEAT pended claim is not submitted within ninety (90) days of the notice requesting the required additional information, ModivCare shall deny the claim per NC G.S. § 58-3-225 (d).

        1. ModivCare shall reprocess NEAT claims in a timely and accurate manner as described in this provision (including interest and penalties if applicable).

    iii. If ModivCare fails to pay a clean claim in full pursuant to this provision, ModivCare shall pay Provider interest and penalty. Late Payments will bear interest at the annual rate of eighteen (18) percent beginning on the date following the day on which the claim should have been paid or was underpaid.

    iv. Failure to pay a clean claim within thirty (30) days of receipt will result in the ModivCare paying Provider a penalty equal to one (1) percent of the total amount of the claim per day beginning on the date following the day on which the claim should have been paid or was underpaid.

    v. ModivCare shall pay the interest and penalty from subsections iii. and iv. as provided in those subsections and shall not require Provider to request the interest or the penalty.

DocuSign Envelope ID: DE10FE93-CFE5-4143-9046-470C1F33A3C5

**EXHIBIT C**
## SUBCONTRACTOR BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") is entered into as of the **Effective Date of the Prior Agreement**, by and between MODIVCARE and MedEx Medical Transport, Inc. ("MedEx") to comply with the Privacy Rule and the Security Rule promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 CFR Parts 160 through 164, and the Health Information Technology for Economic and Clinical Health Act ("HITECH Act").

**Whereas**, MODIVCARE and MedEx are parties to a pre-existing agreement (the "Prior Agreement"), pursuant to which MedEx provides services to MODIVCARE;

**Whereas**, in connection with services provided under the Prior Agreement, MODIVCARE makes available to MedEx certain Protected Health Information that is confidential and must be afforded special treatment and protection;

**Whereas**, MODIVCARE has entered into Business Associate Agreements with certain Covered Entity Clients and, pursuant to such Business Associate Agreements, MODIVCARE has agreed to maintain an agreement with each agent or subcontractor that has or will have access to the Protected Health Information which MODIVCARE creates or receives in the course of performing services for its Covered Entity Clients; and

**Whereas**, the parties are entering into this Agreement, the terms of which shall be part of and subject to the Prior Agreement, in order for MODIVCARE to satisfy its obligations under HIPAA and one or more Business Associate Agreements to which MODIVCARE is a party.

**Now therefore**, the Parties agree as follows:

1.     **Definitions**. The following terms shall have the meaning ascribed to them in this Section. Other capitalized terms shall have the meaning ascribed to them in the context in which they first appear.

    **a. Covered Entity Client** shall mean an entity with whom MODIVCARE contracts for transport services which qualifies as a "Covered Entity" under 45 C.F.R. § 160.103, as amended.

    **b. Designated Record Set** shall have the same meaning given such term under 45 C.F.R.     § 164.501, as amended.

    **c. HIPAA** shall mean the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

    **d. HIPAA Regulations** shall mean the regulations promulgated under HIPAA by the United States Department of Health and Human Services at 45 C.F.R. Parts 160-164.

    **e. HITECH Act** shall mean the Health Information Technology for Economic and Clinical Health Act, Title XIII of Division A and Title IV of Division B of the American Recovery and Investment Act of 2009, Public Law 111-5, enacted on February 17, 2009.

    **f. Individual** shall mean the person who is the subject of the Protected Health Information, and shall include a person who qualifies as a personal representative of that person.

    **g. Protected Health Information** ("PHI") means individually identifiable health information (as defined in 45 C.F.R. § 160.103, as amended), limited to the information created or received by MedEx from or on behalf of MODIVCARE or MODIVCARE's Covered Entity Clients. It includes information that relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and that (a) identifies the individual; or (b)

with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

    **h.**    **Secretary** shall mean the Secretary of the Department of Health and Human Services ("HHS") and any other officer or employee of HHS to whom the authority involved has been delegated.

    **i.**    **Unsecured Protected Health Information** ("Unsecured PHI") shall mean PHI that is not secured through the use of technology or methodology specified by the Secretary in applicable guidance.

    **j.**    **Breach** shall mean the unauthorized acquisition, access, use, or disclosure of PHI which compromises the security or privacy of such information, except where an unauthorized person to whom such information is disclosed would not reasonably have been able to retain such information. Exceptions to this definition exist for cases in which: (1) the unauthorized acquisition, access, or use of PHI is unintentional and made by an employee or individual acting under authority of MedEx if such acquisition, access, or use was made in good faith and within the course and scope of the employment or other professional relationship with MedEx, and such information is not further acquired, accessed, used, or disclosed; (2) an inadvertent disclosure occurs by an individual who is authorized to access PHI at MedEx to another similarly situated individual at MedEx, as long as the PHI is not further acquired, accessed, used, or disclosed without authorization; or (3) a disclosure of PHI occurs and MedEx has a good faith belief that an unauthorized person to whom the disclosure was made would not reasonably have been able to retain such information.

    **k.**    **Security Incident** shall have the meaning set forth in 45 C.F.R. § 164.304 and related Guidance promulgated by the Secretary.

    **l.**    Any terms capitalized, but not otherwise defined, in this Agreement shall have the same meaning as those terms have under HIPAA, the HIPAA Regulations, and the HITECH Act.

**2.**    **Limits on use and Disclosure of PHI.** MedEx agrees that it will not use or disclose PHI for any purpose other than as expressly permitted or required by this Agreement. MedEx may use or disclose PHI for the following purposes:

    **a.**    As reasonably necessary to perform the services described in, and to effectuate the purposes of, the Prior Agreement, or as otherwise permitted or required under this Agreement or as Required By Law;

    **b.**    For the proper management and administration of MedEx's business and to carry out its legal responsibilities, and to coordinate care with its affiliates who may be providing care or Durable Medical Equipment in the community, provided that: (i) such disclosures are Required or permitted by Law; or (ii) MedEx obtains in writing prior to making any disclosure to a third party or Affiliate (a) reasonable assurances from the third party or Affiliate that the PHI will be held confidentially and used or further disclosed only as Required or permitted by Law or for the purposes for which it was disclosed to the third party or Affiliate ; and (b) an agreement from the third party or Affiliate to notify MedEx immediately of any instance of which it is aware in which the confidentiality of the PHI has been breached; and

    **c.**    To perform Data Aggregation Services, as that term is defined by 45 C.F.R. § 164.501, on behalf of MedEx or its Affiliates or MODIVCARE.

**3.**    **Additional Obligations:**

    **a. Limits on use and Further Disclosure.** MedEx agrees that the Protected Health Information shall not be further used or disclosed other than as permitted or required by the Prior Agreement, as amended by this Agreement or as permitted or Required by Law.

    **b. Safeguards.** MedEx will establish and maintain appropriate safeguards and warrants that it has established reasonable safeguards to prevent any use or disclosure of the PHI, other than as provided for by the Prior Agreement, as amended by this Agreement, or as permitted or Required by Law. Without limiting the foregoing, MedEx agrees to implement administrative, physical, and technical safeguards

DocuSign Envelope ID: DE10FE93-CFE5-4A18-9046-470C1F33A3F5

that reasonably and appropriately protect the confidentiality, integrity, and availability of Electronic PHI. MedEx agrees not to use or disclose any PHI in any manner that will violate HIPAA Regulations.. MedEx shall specifically comply with 45 C.F.R. §§ 164.308, 164.310, 164.312, and 164.316 of the Security Rule as such regulations are amended from time to time, as required by the HITECH Act. MedEx will periodically complete a privacy and security survey, audit, and/or attestation if requested by MODIVCARE to assist MODIVCARE in auditing MedEx's compliance with the HIPAA Regulations.

**c. Minimum Necessary.** MedEx shall only request, use, and disclose the minimum amount of PHI necessary to accomplish the purpose of the request, use, or disclosure.

**d. Reports of Improper use or Disclosure.** MedEx shall report to MODIVCARE, within three business days from discovery, any use or disclosure of PHI not provided for or allowed by this Agreement or Security Incident of which MedEx becomes aware. Without limiting the foregoing, MedEx agrees to report to MODIVCARE, within three business days from discovery, any Security Incident with respect to Electronic PHI of which it becomes aware. Such reports and any Breach report in connection with this Agreement should be made to the designated MODIVCARE HIPAA Compliance Officer at the following email address: hipaaofficer@ModivCare.com.

**e. Breach Notification.** In the event of a Breach of Unsecured PHI, MedEx shall provide written notification to MODIVCARE of such Breach without unreasonable delay and no more than three business day from discovery of the Breach so that MODIVCARE can notify its Covered Entity Clients, if required.

**f. Contents of Breach Notification.** MedEx's notification to MODIVCARE of a Breach of Unsecured PHI will describe in so far as such information is available to MedEx : (1) what happened, including the date of the Breach and date of discovery; (2) the types of Unsecured PHI that were involved; (3) any steps individuals should take to protect themselves from potential harm resulting from the Breach; and (4) what MedEx is doing to investigate the Breach, to mitigate harm, and to protect against further Breaches. The notice shall include any other information then required by law. MedEx shall provide any additional information concerning the reported Breach, Security Incident and/or unauthorized use or disclosure of PHI as reasonably requested by MODIVCARE.

**g. Subcontractors, Affiliates and Agents.** MedEx agrees that anytime PHI is provided or made available to any subcontractors Affiliates or agents, MedEx will enter into a Business Associate Agreement with the subcontractor or agent that contains the same effective protections as the material terms, conditions and restrictions on the use and disclosure of PHI as contained in this Agreement. This includes without limitation any dealings with Affiliates or contracts with billing companies, factoring companies, or other entities to whom MedEx may provide its trip logs, trip manifests, or MODIVCARE billing documents.

**h. Right of Access to Information.** To the extent that MODIVCARE is obligated by contract or by law to provide Individuals access to Protected Health Information in a Designated Record Set, MedEx will provide such access to MODIVCARE within five business days of MODIVCARE's written request. This right of access shall be limited by and conform with and meet all of the requirements of 45 C.F.R. § 164.524. MODIVCARE will provide MedEx written proof of such contract or legal requirement in such cases.

**i. Amendment and Incorporation of Amendments.** MedEx agrees to make PHI contained in a Designated Record Set available to MODIVCARE for amendment within five business days of MODIVCARE's request and to incorporate any amendments to PHI in accordance with 45 C.F.R. § 164.526.

**j. Provide Accounting.** As required by law, MedEx will document disclosures of PHI and information related to such disclosures as would be required to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. § 164.528. MedEx will provide such information to MODIVCARE within five business days upon request.

**k. Access to Books and Records.** MedEx agrees to make records relating to the use and disclosure of PHI received from, or created or received on behalf of MODIVCARE, available to

DocuSign Envelope ID: DE10FE92-CEE5-4A19-9046-470C1E33A3C5

MODIVCARE and to the Secretary for purposes of determining MODIVCARE Covered Entity Client's compliance with HIPAA, HIPAA Regulations, and the HITECH Act, as may be required by contract or law

    **l.** **Return or Destruction of Information.** On termination of this Agreement, MedEx agrees to continue to protect PHI received from MODIVCARE or MODIVCARE's Covered Entity Clients, or created or received by MedEx on MODIVCARE's behalf for as long as necessary to protect the PHI and to limit any further use or disclosure. When retention of the PHI is no longer required by law or contract, MedEx shall promptly destroy such PHI, and upon written request it shall certify in writing to MODIVCARE that the Protected Health Information has been destroyed.

    **m. Mitigation Procedures.** MedEx agrees to mitigate, to the extent practicable, any harmful effect of the use or disclosure of PHI, as required by law.

    **n. Sanction Procedures.** MedEx will develop and implement a system of sanctions for any employee, subcontractor or agent who violates the terms of this Agreement or applicable law.

    **o. Training.** MedEx trains its employees, agents, and subcontractors on the requirements of HIPAA related law and contract with regard to PHI, and its Affiliates do so as well, and will provide proof of such training to MODIVCARE upon request.

    **p. Property Rights**. MedEx agrees that it acquires no ownership rights to the PHI, including any de-identified information, as a result of this Agreement.

**4.**     **Term and Termination.** The Term of this Agreement shall commence as of the date executed by the parties, and shall terminate when MedEx is no longer a "Business Associate" (as defined in the HIPAA Regulations) of MODIVCARE.

**5.**     **Termination for Cause**. MODIVCARE may immediately terminate this Agreement and the Prior Agreement without penalty if directed to do so by a Covered Entity Client. Upon MODIVCARE's knowledge of a material breach by MedEx of the terms of this Agreement, MODIVCARE shall :

    **a.** Provide an opportunity for MedEx to cure the breach or to end the violation within a reasonable time, or such shorter time as may be required by law. If MedEx does not cure the breach nor end the violation within such time, MODIVCARE may terminate the Prior Agreement and this Agreement immediately without penalty;

    **b.** Immediately terminate the Prior Agreement and this Agreement if MedEx has breached a material term of this Agreement and cure is not possible; or

    **c.** If neither termination nor cure is feasible, MODIVCARE shall report the violation to the Secretary.

**6.**     **Insurance terms.** MedEx shall maintain the following Insurance limits which MODIVCARE has agreed to accept in lieu of an express indemnity against all claims, liabilities, judgments, fines, assessments, penalties, awards, or other expenses of any kind whatsoever, including, without limitation attorney's fees, witness fees, and costs of investigation, litigation or dispute resolution, relating to or arising out of any breach or alleged breach of this Agreement, HIPAA, the HITECH ACT, or the HIPAA Regulations by MedEx, its employees, agents, or subcontractors.

a. Umbrella Liability Coverage per the attached certificate

    $6 million

b. Cyber Insurance per the attached certificate

    $2 million

**7.**     **Miscellaneous:**

DocuSign Envelope ID: DE10FE92-CFE5-4A49-9046-470C1F33A3C5

      a.    **Binding Nature.** This Agreement shall be binding on the Parties hereto and their successors and assigns.

      b.    **Article Headings.** The article headings used are for reference and convenience only, and shall not enter into the interpretation of this Agreement.

      c.    **State Law.** To the extent any applicable state law confidentiality requirements are not preempted by HIPAA, MedEx agrees to comply with such state law requirements.

      d.    **Third Party Participants.** MedEx agrees that any of MODIVCARE's Covered Entity Clients to whom MedEx provides services and with whom MODIVCARE has entered into a Business Associate agreement are third party Participants of this Agreement. Notwithstanding the foregoing, no other individual or entity shall be considered a third party beneficiary of this Agreement.

      e.    **Amendment.** The Parties mutually agree to amend this Agreement from time to time as necessary for either party to comply with the requirements of HIPAA, the HITECH Act, and/or the HIPAA Regulations as they may be amended or revised from time to time, and any judicial, legislative, or administrative interpretation which alters or conflicts with any provisions contained herein. If the parties are unable to agree on an amendment within ten business days thereafter, MODIVCARE may terminate the Agreement immediately with written notice to MedEx.

      f.    **Conflict.** In the event of any conflict between this Agreement and the Prior Agreement as to the subject matter referenced herein, this Agreement shall control.

      g.    **Interpretation.** The terms of this Agreement shall be construed in light of any applicable interpretation or guidance on HIPAA, the HITECH Act, and/or the HIPAA Regulations issued by the HHS or the Office for Civil Rights from time to time. This Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA, the HITECH Act, and the HIPAA Regulations. The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA, the HITECH Act, and the HIPAA Regulations.

      h.    **Independent Contractors.** MedEx and MODIVCARE agree that they are independent parties and not employees, partners, or party to a joint venture of any kind. Neither party shall hold itself out as the other's agent for any purpose, and shall have no authority to bind the other to any obligation.

      i.    **Assignment.** MedEx shall not assign its rights or obligations under this Agreement without the prior written consent of MODIVCARE, which consent shall not be unreasonably withheld.

**IN WITNESS WHEREOF,** MODIVCARE and MedEx have caused this Agreement to be signed and delivered by their duly authorized representatives, as of the date set forth above.

**MODIVCARE SOLUTIONS, LLC**        **MedEx Medical Transport, Inc.**

| | | | |
|---|---|---|---|
| By: | *Marvin O. Lewis* | By: | *Dillon Lowe* |
| Name: | Marvin Lewis | Name: | Dillon Lowe |
| Title: | VP of Contracts & Pricing | Title: | CEO |
| Date: | 10/24/2023 | Date: | 6/14/2023 |

DocuSign Envelope ID: DE10FE93-CF55-4118-9046-470C1F33A395

**Non-Emergency Medical Transportation**
**Account Setup Agreement**

**Provider Name:** MedEx Medical Transport Service, Inc. ("**Provider**")

ModivCare Solutions, LLC ("MODIVCARE") and Provider enter into this Account Setup Agreement ("Agreement") based upon the following recitals, the sufficiency of which is hereby acknowledged.

## ARTICLE I. PURPOSE

1.0    MODIVCARE, in its capacity as the broker of non-emergency medical transportation ("NET") services to various Clients, including Medicaid Agencies and Managed Care Organizations, intends to enter into Agreements with qualified transportation companies for the provision of high-quality transportation services, and Provider, who is in the business of performing non-emergency medical transportation services and intends to provide such services pursuant to the terms of this Agreement.

1.1    This Agreement delineates the responsibilities of MODIVCARE and Provider and the execution of this Agreement is a precondition and requirement for Provider to submit invoices to MODIVCARE and receive payment for NET services.

## ARTICLE II. PARTIES ADDRESS FOR NOTICE

**ModivCare Solutions, LLC.**           **Provider:** MedEx Medical Transport Service, Inc.
1275 Peachtree Street, NE             Address: PO Box 506, Ahoskie, NC 27910
Atlanta, GA 30309                     Address:
Attention: SVP Contracts and Pricing  FEIN or SS#: 80-0519885
(404) 888-5800                        Contact Name: Dillon Lowe
                                      Phone #: 252-287-7365

## ARTICLE III.  GENERAL PROVISIONS

3.0    The term of this Agreement shall be from the date of execution by signature through a period of one (1) calendar year.  The Agreement shall automatically renew for additional one-year terms unless terminated by either party in accordance with the provisions of Article VIII of this Agreement.

3.1    Provider shall not sell, transfer, assign or dispose of this Agreement, in whole or in part, or any of its rights or obligations, to any other party without the express written consent of MODIVCARE, which consent shall not be unreasonably withheld. Any attempted unauthorized assignment shall be null and void.

3.2    Any change to this Agreement will be effective only when set forth in writing and signed by an authorized representative of each party.

## ARTICLE IV.  SCOPE OF WORK

4.0    Provider shall provide NET service to individuals as pre-authorized by MODIVCARE.

4.1    Certifications.
a)  Provider certifies and will provide conclusive documentation, as applicable, that it is in

compliance with applicable city, county, state and federal requirements regarding licensing, certification and insurance for all personnel and vehicles.

b) Provider  insurance is specifically addressed in the contract and BAA between the parties. A copy of providers Certificate of Insurance is attached.

c) Provider certifies that it is in compliance with applicable laws and regulation regarding federal and state exclusionary database checks, criminal background checks, and drug screens for all drivers. Criminal background checks may include fingerprinting if required by any law enforcement entity for the jurisdictions in which Provider performs NET services. Provider further certifies that all drivers meet current state and federal motor carrier safety regulations and guidelines.

d) Provider certifies that vehicles shall comply with the Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation as well as any applicable Federal Transit Administration (FTA) regulations for the type of vehicle utilized by Provider.

e) Provider warrants that it has never been terminated from participation in any state Medicaid or Medicare program or been determined to have committed Medicaid or Medicare fraud.

f) Provider certifies that all information obtained regarding riders will be held in strict confidence and is used only as permitted and specified in the contract and BAA between the parties.


4.2    MODIVCARE and Provider have separately agreed in their contract on terms of payment for trips performed on dates of service prior to the effective date of this agreement. MODIVCARE and Provider have further agreed in their contract that payments under this Agreement are strictly limited to services specifically pre-authorized by MODIVCARE for dates of service on or after the effective date of this agreement, with the following exceptions:

a) Situations where prior arrangements have been made for hospital discharges and/or inter-facility transports where Provider is a preferred or contracted provider; and
b) Situations involving repeated and regularly scheduled transports, such as dialysis or repeat doctor visits.


4.3    MODIVCARE and Provider have addressed terms and conditions for submission and payment of invoices and Quality Assurance in their contract.

4.4    Provider shall inform MODIVCARE immediately of any vehicle collision or accident that occurs while a vehicle operated by Provider is in route for a MODIVCARE assigned trip. Provider shall also inform MODIVCARE immediately of any incident resulting in injury to a Participant, or to a driver or other passenger, as well as any moving violation that occurs while providing services under this Agreement and/or any incident involving a Participant that could result in liability to Provider or MODIVCARE. The Provider shall file a written report with MODIVCARE within  three (3) working days of any accident, incidents, or moving violation and shall cooperate with MODIVCARE and the Client during any ensuring investigation. Provider shall include a copy of any police reports and tickets/summons with its written report as supporting documentation.

## ARTICLE V.  CONFIDENTIALITY, PRIVACY, and SECURITY

5.0    Provider shall comply with all applicable laws and regulations pertaining to confidentiality, privacy, and security of proprietary and confidential information. The provisions of this section do not preclude the Provider from compliance with federal and state reporting laws and regulations. Further, these provisions also allow the Provider to fully meet reporting requirements for audit purposes.

5.1    Provider's reporting obligations under HIPAA are controlled by the BAA between the parties.

## ARTICLE VII.  AUDIT AND INSPECTION

7.0    Provider shall furnish records and information regarding any invoice(s) for service(s) to MODIVCARE, any MODIVCARE Clients, any state Medicaid Agency or Medicaid Fraud Control Unit, the Centers for Medicare and Medicaid Services ("CMS") and any representative of the U.S. Secretary of the Department of Health and Human Services ("DHHS") in compliance with applicable law or regulation. The Contractor shall not destroy or dispose of records, which are under audit, review, or investigation.

7.1     This Section 7.1 is not applicable if Provider is a public transit authority as that designation is used in 42 U.S.C. §1396a(87).

In accordance with applicable Federal regulations and CMS guidance, Provider agrees to provide copies of the following records for all drivers used to perform services under this Agreement within three (3) business days of request.

  a) Confirmation each driver is not excluded from participation in any Federal health care program (as defined in 42 U.S. Code §1320a–7b(f)) and is not listed on the exclusion list of the Inspector General of the Department of Health and Human Services.
  b) Copy of each driver's valid driver's license.
  c) Copy of the driving history for each driver, including traffic violations.

In addition, any driver who violates State drug laws are prohibited from providing services under this Agreement.

## ARTICLE VIII.  OTHER TERMS AND CONDITIONS

8.0     The relationship between MODIVCARE and Provider is solely that of independent contractors and nothing in this Agreement or otherwise shall be construed or deemed to create any other relationship including one of employer and employee or principle and agent or joint venture or any relationship other than that of independent parties contracting with each other solely for the purpose of carrying out the provisions of this Agreement. Provider is solely responsible for the management, compensation, and payment of employment related taxes and insurance for its employees, including but not limited to workers' compensation and unemployment insurance.

8.1     If Provider is also a participating network provider for MODIVCARE pursuant to an executed Transportation Agreement, then this Agreement is subordinate to the Transportation Agreement and any provisions of this Agreement that are in conflict with provisions of the Transportation Agreement (including any Exhibits thereto) shall be considered null and void and the provisions of the Transportation Agreement shall control.

8.2     This Agreement shall be construed in accordance with and governed by the laws of the State of North Carolinaregardless of the forum where it may come up for construction.

## ARTICLE IX.  TERMINATION AND/OR REDUCTION IN SCOPE

9.0     Either party may terminate this Agreement by providing  thirty (60) day written notice of termination to the other party or by providing sixty (120) day written notice if Medicare transportation services are provided through the Agreement.

9.1     In the event funding of the NET program from the State, Federal or other sources is withdrawn, reduced, or limited in any way after the effective date of this Agreement and prior to the anticipated Agreement expiration date, this Agreement may be terminated immediately upon written notification to the Provider by MODIVCARE.

9.2     Termination of this Agreement shall not release either party from any obligations set forth herein which shall survive this Agreement as noted herein or by their nature would be intended to apply after any termination.

9.3     Any determination that any provision of this Agreement or any application thereof is invalid, illegal, or unenforceable in any respect in any instance shall not affect the validity, legality and enforceability of such provision in any other instance, or the validity, legality or enforceability    of

DocuSign Envelope ID: BD9604CA-C64B-4AC6-B67E-61EA16959346

any other provision of this Agreement. Neither Party shall assert or claim that this Agreement or any provision hereof is void or voidable if such Party performs under this Agreement without prompt and timely written objection

Unless otherwise indicated, this Agreement is entered into and effective on the date executed by ModivCare Solutions, LLC as specified below.

**MODIVCARE SOLUTIONS, LLC**
**Effective Date:** 10/24/2023
**Signature:** Marvin Lewis
**Printed Name:**
**Title:** VP of Contracts & Pricing

**PROVIDER:** MedEx Medical Transport Service, Inc.
**Date:** 9/27/23
**Signature:** Dillon Lowe
**Printed Name:** Dillon Lowe
**Title:** CEO

| MODIVCARE Internal Use Only | | |
|---|---|---|
| GL Code: | Set up in AP: Y____ N____ By: | |



**DISABLED WOMEN MINORITY BUSINESS ENTERPRISE (DWMBE)**
**QUESTIONNAIRE**

**Company Name:** MedEx Medical Transport Service, Inc. **Date:** 8/30/23

A **SMALL BUSINESS ENTERPRISE (SBE)** is any corporation, partnership, sole proprietorship, individual. or other business enterprise operating for profit with 100 employees or fewer, including employees employed in any subsidiary or affiliated corporation which otherwise meets the requirements of the federal small business innovation research program, except for the limitation regarding a maximum number of company employees.

Does your company qualify as a **SMALL BUSINESS ENTERPRISE?**   Yes __✓__  No ____

Is your company certified as a **SMALL BUSINESS ENTERPRISE?**    *Yes __✓__ No ____

*(\*If yes, please attach certificate)*

A **WOMAN BUSINESS ENTERPRISE (WBE)** is at least 51% owned by a woman or in the case of a publicly owned enterprise, a business enterprise in which at least 51% of the voting stock is owned by minority group members; or any enterprise that is approved or certified as such for purposes of participation in the contracts subject to minority business enterprise requirements involving federal programs and federal funds.

Does your company qualify as a **WOMAN BUSINESS ENTERPRISE?**   Yes __✓__  No ____

Is your company certified as a **WOMAN BUSINESS ENTERPRISE?**    *Yes __✓__ No ____

*(\*If yes, please attach certificate)*

**A MINORITY BUSINESS ENTERPRISE (MBE)** is at least 51% owned by minority group members, or in the case of a publicly owned enterprise a business enterprise that is approved or certified as such for purposes of participation in the contracts subject to women owned business enterprise requirements involving federal programs and federal funds.

Does your company qualify as a **MINORITY BUSINESS ENTERPRISE?**  Yes ____  No __✓__

Is your company certified as a **MINORITY BUSINESS ENTERPRISE?**   *Yes ____  No __✓__

*(\*If yes, please attach certificate)*

DWMBE Questionnaire
Version 1, 11/2020



A **DISABLED VETERAN BUSINESS ENTERPRISE (DVBE)** meets all of the following:
1. The business is at least 51 percent owned by one or more disabled veterans, or in the **case** of a publicly owned business, at least 51 percent of its stock is owned by one or more disabled veterans; a subsidiary which is wholly owned by a parent corporation but only if at least 51 percent of the voting stock of the parent corporation is owned by one or more disabled veterans; or a joint venture in which at least 51 percent of the joint venture's management and control and earnings are held by one or more disabled veterans.
2. One or more disabled veterans manage and control the daily business operations. The disabled veterans who exercise management and control are not required to be the same disabled veterans as the owners of the business concern.
3. A sole proprietorship, corporation, or partnership with its home office located in the United States, which is not a branch or subsidiary of a foreign corporation, foreign firm or other foreign-based business.

Does your company qualify as a **DISABLED VETERAN BUSINESS ENTERPRISE (DVBE)?**

 **Yes** _____ **No** _✓__

Is your company certified as a **DISABLED VETERAN BUSINESS ENTERPRISE (DVBE)?**

**\*Yes** _____ **No** _✓__

*(\*If yes, please attach certificate)*

A **VETERAN BUSINESS ENTERPRISE (VBE)** is at least 51% owned by a veteran or in the case of a publicly owned enterprise, a business enterprise in which at least 51% of the voting stock is owned by veterans; or any enterprise that is approved or certified as such for purposes of participation in the contracts subject to minority business enterprise requirements involving federal programs and federal funds.

Does your company qualify as a **VETERAN BUSINESS ENTERPRISE (VBE)?** **Yes** _____ **No** _✓__

Is your company certified as a **VETERAN BUSINESS ENTERPRISE (VBE)?** **\*Yes** _____ **No** _✓__

*(\*If yes, please attach certificate)*

**A DISABLED BUSINESS ENTERPRISE @BE)** is at least 51% owned by a disabled person, or in the case of a publicly owned enterprise, a business enterprise in which at least 51% of the voting stock is owned by disabled persons; or any enterprise that is approved or certified as such for purposes of participation in the contracts subject to minority business enterprise requirements involving federal programs and federal funds.

Does your company qualify as a **DISABLED BUSINESS ENTERPRISE (DBE)?** **Yes** _____ **No** _✓__

Is your company certified as a **DISABLED BUSINESS ENTERPRISE (DBE)?** **\*Yes** _____ **No** _✓__

DWMBE Questionnaire
Version 1, 11/2020



## MODIVCARE PROVIDER NETWORK QUESTIONNAIRE

Please provide all the requested information to the best of your ability via fax **AND** mail the original.
If you need more space, please write on the back or attach a separate sheet.  Thank you.

### *COMPANY CONTACT INFORMATION*

COMPANY NAME: _____ MedEx Medical Transport Service, Inc. _____

STREET ADDRESS: _ 902 East Memorial Drive, Ahoskie, NC 27910 _

MAILING ADDRESS: _ PO Box 506, Ahoskie, NC 27910 _

CITY: _____  STATE: _____  ZIP CODE: _____

PHONE: _ 252-287-7365 _____  FAX: _ 252-332-4515 _____

EMAIL: _ dillon@medextransport.com ___  WEB SITE : _ www.medextransport.com _

DISPATCH PHONE #: _ 855-329-1003 _____

**Which of the following best describes your company?** Private __✓__ Not for Profit_____ Taxi _____ Transit Agency_____

Human Services Agency_____ Agency on Aging _____ Faith Based Organization_____

NAME OF PERSON AUTHORIZED TO ENTER COMPANY INTO CONTRACTUAL OBLIGATIONS:

NAME: _ Dillon Lowe _____TITLE: _ CEO _____

PHONE #: _ 252-287-7365 _____  FAX: _ 252-332-4515 _____  EMAIL: _ dillon@medextransport.com _

## BASIC OPERATIONS INFORMATION

In what State do you operate? ___ North Carolina _____

How many total vehicles do you operate in the state? __ 60 _____

**How many vehicles do you operate per county by type (Total must equal number above)?** Please fill below:

| County | Sedan – Non Taxi | Taxi | Mini Van | Full Size Van | ADA Wheelchair Van | Non-emergency Stretcher/Gurney | BLS Ambulance | ALS Ambulance | Other (please specify) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Please complete with number of vehicles by type in each county** | | | |
| Hertford | | | | | | | 6 | | |
| Johnston | | | | | | | 5 | | |
| Wake | | | | | | | 3 | | |
| Durham | | | | | | | 5 | 1 | |
| Wilson | | | | | | | 10 | 2 | |
| Pitt | | | | | | | 9 | | |
| Wayne | | | | | | | 8 | 2 | |

| Cumberland | | | | | | 7 | 2 | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

How many drivers do you employ? __200__ How many office personnel? __45__ How many other? _____

**Please describe your hours of operation**:

| Day | Hours of Operation | |
|---|---|---|
| | From: | To: |
| Monday | 24/7 | |
| Tuesday | | |
| Wednesday | | |
| Thursday | | |
| Friday | | |
| Saturday | | |
| Sunday | | |

What type of 2-way communication system do you use to talk to your drivers? __Cell Phone & Mobile App__

_____

Please describe your routing and dispatch technology and procedures: __Logis IDS__

_____

_____

_____

Please describe your vehicle insurance coverage limits: __see attached COI naming MODIVCARE as an additional insured__

_____

*MEDICAL TRANSPORTATION EXPERIENCE*

Do you currently provide Non-Emergency Medical Transportation (NEMT) Services? __Yes__

Please list all local, state or other permits or licenses you hold. __NC provider licenses__

Are you licensed as an ambulance service? __Yes__

Have you ever been terminated from a State/Federal program or convicted of Medicaid/Medicare fraud? __No__

Approximately how many *WEEKLY* one-way MEDICAL trips do you currently provide? __+1,000__ Other? _____

If you would like to increase this amount, what number of *weekly one-way* trips would you like to provide? __no limit__

How many additional vehicles would you need to manage that level of operation? __we would need scheduling of doctor's appointments more than 24 hours in advance to operate efficiently__

Are you able to offer services in a language other than English? If yes, please indicate the language: __some Spanish__

If you currently provide NEMT services, please list the facilities you currently serve. (Attach separate list if needed)

_____

_____

## DRIVER MANAGEMENT

Please describe your driver hiring and screening process:  Each candidate is required to go through a screening process

 prior toconsideration to include: criminal background check, OIG check, driving history check, face-to-face interview,

 drug screen, and physical lifting test.

Please describe your driver training and evaluation process:  HIPAA Privacy, Fraud, Waste and Abuse, CMS Compliance,

 American Disabilities Act, Health, Safety and Welfare, bloodborne pathogens, CEVO-safe driver training,

 safe lifting techniques, and training on various company policies

## QUALITY ASSURANCE PROGRAM

What steps do you take to monitor and ensure the timeliness, safety, and sensitivity of your transportation services?

 Each unit is monitored closely to ensure timeliness through our dispatch software and GPS tracking software.

 Both softwares track the location of our vehicles and give real-time updates of unit status and pick up times.

 Our units are equipped with GPS tracking and dash cams that alerts our management team of traffic violations

 and give instant coaching feedback to our drivers.

### DWMBE STATUS

**If your company qualifies, or is certified as one of the following please check the appropriate box and complete the attached DWMBE questionnaire.**

| Type | Check | Designation | Ownership Definition |
|------|-------|-------------|---------------------|
| SBE | ✓ | Small Business Enterprise | Business with less than 500 employees |
| MBE | | Disadvantaged Business | Business with 51% or more certified defined US minority ownership |
| WBE | ✓ | Woman Owned Business Enterprise | Business with 51% or more certified woman ownership |
| VET | | Veteran Business Enterprise | Business 51% or more certified US military veteran owned |
| DVBE | | Disabled Veteran Business Enterprise | Business 51% or more certified disabled US veteran owned |
| DBE | | Disabled Business Enterprise | Business 51% or more certified disabled persons owned |

**OTHER COMMENTS OR CLARIFICATIONS**: _____

_____

**COMPLETED BY**: _____Dillon Lowe_____   **TITLE**: _____CEO_____

**E MAIL**: _____dillon@medextransport.com_____   **TELEPHONE**: __252-287-7365__

**DATE**: __8/30/23__



# AFTER HOURS CONTACT INFORMATION

**Please fill out the information below for our records. More than one contact may be listed.**

**Company Name:** MedEx Medical Transport

**Name of contact:** Dillon Lowe, CEO
**Phone #:** 252-287-7365

**Name of contact:** Jeff White, COO
**Phone #:** 252-373-7414

**Version: Nov 2020**

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

---

*Print or type.*
*See Specific Instructions on page 3.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

MedEx Medical Transport Service, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☑ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

PO Box 506

**6** City, state, and ZIP code

Ahoskie, NC 27910

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

### Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**or**

**Employer identification number**

| 8 | 0 | – | 0 | 5 | 1 | 9 | 8 | 8 | 5 |

---

### Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**

Signature of U.S. person ▶ 

Date ▶  8/30/23

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)



## ELECTRONIC FUNDS TRANSFER (EFT) AUTHORIZATION AGREEMENT

I/we hereby authorize *ModivCare Solutions, LLC* ("*The Company*") to initiate electronic credit entries to the financial institution and account indicated below.  I/we further authorize "*The Company*" to initiate electronic debit entries to the account listed below to correct any errors.  This authority is to remain in full force and effect until "*The Company*" has received written notification to terminate the agreement. All changes must be submitted in writing and may require a new EFT agreement.

### Section 1 (*To be completed by the Transportation Provider*)

Type of Transaction:    X  Add            _____ Change            _____ Delete

Transportation Provider Name:   MedEx Medical Transport Service, Inc.
                 Address:   902 East Memorial Drive, Ahoskie, NC 27910

Telephone Number:   855-329-1003
Federal Tax Identification Number:   80-0519885

Authorize Signer Name:   Dillon Lowe, CEO
Authorize Signature:   *Dillon Lowe*

### Section 2 (*To be completed by the Financial Institution*)

Direct Deposit to be made to:   MedEx Medical Transport Service Inc.

Financial Institution Name:    Southern Bank and Trust Company
              Address:    506 Main Street, Ahoskie, NC 27910

Telephone Number:   252-332-5149

Routing & Transit Number/ABA #:   053102586

Account Number (*Transportation Provider*):   5731823041

Bank Official Signature:                    Date:   7/6/2021

### Section 3 (*To be completed by ModivCare Solutions, LLC*)

Date Received: _____   Vendor Code: _____

A/P Approval: _____   Treasury Approval: _____

# PLEASE ATTACH VOIDED CHECK HERE
## No Counter/Starter Checks



10047

**MedEx Medical Transport Service, Inc.**
PO Box 506
Ahoskie, NC 27910
252-332-4555

Southern Bank and Trust Company
Ahoskie
66-258/531

PAY TO THE
ORDER OF _____ $ _____

_____ DOLLARS

PROTECTED AGAINST FRAUD

MEMO _____

⑈010047⑈ ⑆053102586⑆ 57118 23041⑈

MedEx Medical Transport Service, inc.

10047



MedEx Medical Transport Service, inc.

10047







# ModivCare Transportation Provider
# EDI Operational Information

Please Type or Print Clearly

Company Name: MedEx Medical Transport Service, Inc.

Mailing Address: PO Box 506, Ahoskie, NC 27910

Contact Name: Dillon Lowe

Job Title: CEO

Phone Number: 252-287-7365

Fax Number: 252-332-4515

Email Address: dillon@medextransport.com

ModivCare Provider Number: _____

Contracted Provider?          _____ Yes ____No

Authorized Signatures: The following authorized signatures will be accepted on User Request forms. If the signature on the User Request form does not match one of the below signatures, the request will be denied.

| | | |
|---|---|---|
| *Signature* | CEO | Dillon Lowe |
| | *Title* | *Name* |
| *Signature* | COO | Jeff White |
| | *Title* | *Name* |
| *Signature* | President/Owner | Donna Hurdle |
| | *Title* | *Name* |

# Electronic Data Interchange (EDI) Agreement for ModivCare Transportation Providers

This is to certify that ___MedEx Medical Transport Service, Inc._____ of

(Company Name)

___902 East Memorial Drive, Ahoskie, NC 27910_____on

(Street Address)                    (City)          (State)        (Zip Code)

the ___18th_____ day of ___September_____, 20_23__, agrees to the following conditions for the submission of electronic transactions to ModivCare Solutions, LLC.

1. The Transportation Provider acknowledges that certain information transmitted under this Agreement may be protected by the Health Insurance Portability and Accountability Act ("HIPAA") and agrees to comply with all relevant requirements of HIPAA and its regulations, including but not limited to:

- Implementing administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic protected health information that it creates, receives, maintains, or transmits in connection with performing services for ModivCare;

- Ensuring that any agent, including a subcontractor, to whom it provides such information, agrees to implement reasonable and appropriate safeguards to protect it;

- Reporting to ModivCare any security incident of which it becomes aware;

- Agreeing that this agreement and any other agreement with ModivCare may be terminated if ModivCare determines that the Transportation Provider violated a material term of this contract.

2. The Transportation Provider is not to be construed as an agent of ModivCare Solutions, LLC by virtue of this agreement. This agreement only governs the terms under which the undersigned Transportation Provider may submit electronic transactions while performing services for ModivCare Solutions, LLC

3. Access to ModivCare's secure website may be terminated at any time by ModivCare Solutions, LLC with or without cause or notice. Providers must ensure that any PC used to access the site is fully up-to- date with all Microsoft operating systems patches and has updated anti-virus software such as Symantec (Norton) or McAfee.

4. The undersigned Transportation Provider agrees to use the system in accordance with the instructions of ModivCare and understands the intentional entry of invalid or false information is unlawful and may have significant adverse legal repercussions. The Transportation Provider is responsible for ensuring that its employees or agents use the system correctly.  Contracted Transportation Providers may be assessed liquidated damages in accordance with their transportation contract with ModivCare for improper reporting or improper invoicing.

5. Each user of the secured electronic systems must have his or her individual user id and password which is kept confidential. There can be no "shared" logins.

6. The Transportation Provider will promptly notify ModivCare by fax of any EDI users who have left the company so their access to electronic systems can be terminated.  Promptly is defined as a maximum of 2 business days.

7. This agreement will become effective when executed by both parties and may be amended only in writing similarly executed.

**TRANSPORTATION PROVIDER**

**MODIVCARE SOLUTIONS, LLC**

MedEx Medical Transport Service, Inc.
(Print Name of Company)

_____
(Signature of Owner or Official)

Dillon Lowe
_____
(Printed Name of Owner or Official)

CEO                         9/18/2023
_____
Title of Auth. Representative        Date

_____
(Signature of Authorized Representative)

Marvin Lewis
_____
(Printed Name of Authorized Representative)

VP of Contracts & Pricing   10/24/2023
_____
Title of Auth. Representative        Date

# ModivCare EDI User Form

Please Type or Print Clearly
*These fields are required

*Date: 9/18/2023

\*Provider Name: MedEx Medical Transport Service, Inc.

\*Mailing Address: PO Box 506, Ahoskie, NC 27910

\*Phone Number: 855-329-1003

\*Fax Number: 252-332-4515

ModivCare Provider Number: _____

**\*Access:** Select from the following options below.

☒ Add New User                  ☐ Re-activate Existing User Login

☐ De-activate User              ☐ Password Reset

\*Last Name: Lowe

\*First Name: Dillon

Username: _____ (For existing users)

\*Authorized Signature: _Dillon Lowe_____

**(From Operational Information Form**)

Fax to ModivCare External Stakeholder Support at: 877-637-9094

NOTE: This form will be completed by ModivCare Solutions, LLC and faxed back to the fax number provided at the top.  Please be sure to supply a fax number where the return fax can be secured until given to the user.

| TO BE COMPLETED BY MODIVCARE SOLUTIONS, LLC: | |
|---|---|
| User ID Assigned: | |
| Temporary Password: | |
| Date Completed & Completed By: | |

# ModivCare EDI User Form

Please Type or Print Clearly
*These fields are required

*Date: 9/18/2023

*Provider Name: MedEx Medical Transport Service, Inc.

*Mailing Address: PO Box 506, Ahoskie, NC 27910

*Phone Number: 855-329-1003

*Fax Number: 252-332-4515

ModivCare Provider Number: _____

**\*Access:** Select from the following options below.

☒ Add New User ☐ Re-activate Existing User Login

☐ De-activate User ☐ Password Reset

*Last Name: Morris

*First Name: Lindsay

Username: _____ (For existing users)

*Authorized Signature: _Dillon Lowe_

**(From Operational Information Form)**

Fax to ModivCare External Stakeholder Support at: 877-637-9094

NOTE: This form will be completed by ModivCare Solutions, LLC and faxed back to the fax number provided at the top. Please be sure to supply a fax number where the return fax can be secured until given to the user.

| TO BE COMPLETED BY MODIVCARE SOLUTIONS, LLC: | |
|---|---|
| User ID Assigned: | |
| Temporary Password: | |
| Date Completed & Completed By: | |



# Transportation Provider Manual
# Acknowledgement of Receipt

I, __Dillon Lowe_____   ___CEO_____hereby

   **(Name)**                                      **(Title)**

acknowledge and that I have received a complete copy of ModivCare Solutions, LLC's Provider

Manual for my state on behalf of and for/

_____MedEx Medical Transport Service, Inc._____.

**(Legal Name of Transportation Provider)**

**PROVIDER:**
_____MedEx Medical Transport Service, Inc._____

**Printed Name:** ____Dillon Lowe_____

**Title:** _____CEO_____

**Signature:** _Dillon Lowe_____

**Date Received:** ___8/30/23_____

Acknowledgement of Receipt
Of Provider Manual
Form Version: Nov 2020

CHANGE TEXT SIZE    |    Language  English  ▾    |    Report an Error

**Contacts and links**

### Learn ⌄    ### Find ⌄    ### Enroll

**Get answers**

*Learn about*     *Find and view*    *Choose a*         **Words to know**
*NC Medicaid*     *primary care*     *health plan*
*Managed*         *providers*        *and primary*      **Member resources**
*Care*            *(PCPs) and*       *care provider*
                  *health plans*     *(PCP)*            **Submit forms online**

**Online account**

**Home**    |    **Find**    |    **Find a provider**

Login to Enroll

To search, enter a location and one more search field.

🔍 **Search by:**

**Health Plan**              **Provider**              **Organization**

   **Watch a video >**

You can now search for other health care options in this directory.
For questions or to learn more, go to Get Answers.

## Search by Organization for a Health Plan

To search, enter a location and one more search field.

Privacy - Terms

**Organization Name**

Medex

**Benefit Program**

(Choose)                                    ▾

**Specialty**

Choose one or more                          ▾

☐ PCP Only ❓                    ☐ IHCP Only ❓

## Search by Location*

◯ City   ◯ ZIP Code   ⦿ County

**County ***

Pitt                                        ▾

## Gender of Patients Accepted

◯ Male   ◯ Female

## Age of Patients Accepted

◯ 0 - 20   ◯ 21 and Over   ◯ Both

☐ **Accepting New Patients**



☐ **Accepting Siblings**

**NPI / Atypical #**

NPI / Atypical #

**Language**

(Choose one) ▼  ?

**Accessibility**

(Choose one or more) ▼  ?

Search     Clear all

**Unable to find your provider?**
Please check the NC Medicaid Provider and Health Plan Lookup Tool again later. Health plans add new providers to their networks often, and the tool is updated each day.

⚊⚊ Results for: Organization Name: **Medex**, County: **Pitt**

1 Organizations match your search.

📍 view on map

# MEDEX MEDICAL TRANSPORT SERVICE INC

**GREENVILLE LOCATION**

Enroll

**NPI/Atypical #**

1467774018

**Phone**

(252) 332-4555

**Benefit Program Accepted**

NC Medicaid

**Address**

101 STATON CT
GREENVILLE, NC 27834
Driving directions

**Standard Plans Accepted**

AmeriHealth Caritas
HealthyBlue

**Tailored Plans Accepted**

Sandhills Center

**Other Plans Accepted**
NC Medicaid Direct

∧

MEDE)

GR

NPI

Ph

DocuSign Envelope ID: DE10FE93-CFE5-4118-9046-470C1F33A3C5

**Contact us**   |   **Non-discrimination**   |   **Site map**   |   **Privacy statement**   |

**About the data**   |   **Text message terms and conditions**   |   **Auxiliary aids and services**

 

© 2023 Created by Maximus®

---

العربية   |   Mon-Khmer   |   繁體中文   |   Tagalog   |   Français   |   Deutsch   |   ગુજરાતી   |   हिंदी   |
Hmoob   |   한국어   |   ລາວພາສາ   |   日本語   |   Русский   |   Español   |   Tiếng Việt

DocuSign Envelope ID: DE10FE93-CFE5-4118-9046-470C1F33A3F5

10/2/25, 3:10 PM

Case 23-90309   Document 724   Filed in TXSB on 11/4/25   Page 78 of 83
Organized into a Health Plan | NC Medicaid Managed Care

CHANGE TEXT SIZE    |    Language  English  ▾    |    Report an Error

**Learn ▾**

Learn about
NC Medicaid
Managed
Care

**Find ▾**

Find and view
primary care
providers
(PCPs) and
health plans

**Enroll**

Choose a
health plan
and primary
care provider
(PCP)

**Contacts and links**

**Get answers**

**Words to know**

**Member resources**

**Submit forms online**

**Online account**

NCDHHS
NC Medicaid
Division of Health Benefits

**Home**    |    **Find**    |    **Find a provider**

Login to Enroll

To search, enter a location and one more search field.

🔍 **Search by:**

**Health Plan**              **Provider**              **Organization**

  **Watch a video >**

You can now search for other health care options in this directory.
For questions or to learn more, go to Get Answers.

## Search by Organization for a Health Plan

To search, enter a location and one more search field.

Privacy · Terms

**Organization Name**

Medex

**Benefit Program**

(Choose)                                      ▼

**Specialty**

Choose one or more                            ▼

☐ **PCP Only** ❓                    ☐ **IHCP Only** ❓

**Search by Location***

○ City     ○ ZIP Code     ● County

**County ***

Pitt                                          ▼

**Gender of Patients Accepted**

○ Male     ○ Female

**Age of Patients Accepted**

○ 0 - 20     ○ 21 and Over     ○ Both

☐ **Accepting New Patients**



☐ **Accepting Siblings**

**NPI / Atypical #**
NPI / Atypical #

**Language**
(Choose one)                                                   ▼          ❓

**Accessibility**
(Choose one or more)                                     ▼          ❓

Search      Clear all

**Unable to find your provider?**
Please check the NC Medicaid Provider and Health Plan Lookup Tool again later. Health plans add new providers to their networks often, and the tool is updated each day.

⚙ Results for: Organization Name: **Medex**, County: **Pitt**

1 Organizations match your search.                              📍 view on map

DocuSign Envelope ID: DE10FE93-CF55-4118-9046-470C1F33A3F5

## MEDEX MEDICAL TRANSPORT SERVICE INC

**GREENVILLE LOCATION**

Enroll

**NPI/Atypical #**

1467774018

**Phone**

(252) 332-4555

**Benefit Program Accepted**

NC Medicaid

**Address**

101 STATON CT
GREENVILLE, NC
27834
Driving directions

**Standard Plans Accepted**

AmeriHealth Caritas
HealthyBlue

**Tailored Plans Accepted**

Sandhills Center

**Other Plans Accepted**
NC Medicaid Direct

∧

MEDEX

GR

NPI

Ph
...............

**Contact us**   |   **Non-discrimination**   |   **Site map**   |   **Privacy statement**   |

**About the data**   |   **Text message terms and conditions**   |   **Auxiliary aids and services**

 

**© 2023 Created by Maximus®**

---

العربية   |   Mon-Khmer   |   繁體中文   |   Tagalog   |   Français   |   Deutsch   |   ગુજરાતી   |   हिंदी   |

Hmoob   |   한국어   |   ພາສາລາວ   |   日本語   |   Русский   |   Español   |   Tiếng Việt