United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 22, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-90309** |
| **MODIVCARE INC.,** *et al.*, | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

**MEMORANDUM OPINION DENYING MOTION TO STAY
PENDING APPEAL (RELATES TO ECF NO. 1518)**

**BACKGROUND**

On August 20, 2025, ModivCare Inc. and its affiliates (collectively the "Debtors" and after the Effective Date, the "Reorganized Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code.[1]

On December 5, 2025, the Debtors filed their Second Amended Chapter 11 Plan (hereinafter the "Plan").[2]  On December 15, 2025, the Court entered the Order (I) Confirming Second Amended Joint Chapter 11 Plan of Reorganization of ModivCare Inc. and its Debtor Affiliates and (II) Denying Motions of Official Committee of Unsecured Creditors for Leave, Derivative Standing, and Authority to Commence and Prosecute Certain Causes of Action on Behalf of Debtors' Estates (hereinafter the "Confirmation Order"), confirming the Debtors' Plan.[3] On December 29, 2025, the Plan was substantially consummated and became effective (hereinafter the "Effective Date").[4]

On February 11, 2026, AlixPartners, LLP filed its Final Fee Application for Allowance and Compensation for Professional Services

---

[1] ECF No. 1.

[2] ECF No. 959.

[3] ECF No. 1055.  A copy of the Plan is attached as Exhibit A to the Confirmation Order.

[4] ECF No. 1134.

Rendered and Reimbursement of Expenses (hereinafter the "AlixPartners Fee Application).[5]

On February 12, 2026, White & Case, LLP (hereinafter "White & Case") filed its Final Application for Allowance of Compensation and Reimbursement of Expenses (hereinafter the "White & Case Fee Application" and together with the AlixPartners Fee Application, the "Objected Fee Applications").[6]

On March 4, 2026, ModivCare TopCo, LLC (hereinafter "TopCo") filed Objections to the AlixPartners Fee Application and the White & Case Fee Application (together, the "Fee Application Objections") on behalf of the Reorganized Debtors.[7]

On April 3, 2026, AlixPartners and White & Case both filed Replies to the Fee Application Objections.[8]

Also on April 3, 2026, TopCo filed the Motion to Compel White & Case to Respond to Discovery Requests.[9]

On April 6, the Court held a status conference on the Objected Fee Applications.[10]  During the status conference, the Court ordered the Parties to meet and confer regarding a proposed form of order bifurcating the Fee Application Objections into separate legal and factual components.[11]  The Court also suggested it may order that the Reorganized Debtor escrow the difference in AlixPartners' and White & Case's disputed fees with the registry of the Court, based on concerning allegations raised by another estate professional[12] regarding the

---

[5] ECF No. 1288.

[6] ECF No. 1290.

[7] ECF Nos. 1351 and 1354, respectively.

[8] ECF Nos. 1411 and 1410, respectively.

[9] ECF No. 1409.

[10] ECF No. 1413.

[11] *Transcript for Hearing on April 6, 2026, Regarding Status Conference on Objected Fee Applications*, ECF No. 1438 at 5:1–20.

[12] ECF No. 1412.  On February 9, 2026, Cresa LLC (hereinafter "Cresa") a non-party to the instant matter, filed the First and Final Fee Application (hereinafter the "Cresa Fee Application"), which was later granted on a final and uncontested basis.

Reorganized Debtors' theretofore compliance with the Confirmation Order which, *inter alia*, requires the Reorganized Debtor to establish a *bona fide* professional fee escrow account and adequately fund the same.[13]

On April 9, 2026, TopCo filed the Emergency Motion for Reconsideration of (I) Order Bifurcating Legal and Factual Issues and (II) Order Requiring Deposit of Funds Into Court's Registry (hereinafter the "Motion to Reconsider").[14]  In the Motion to Reconsider, TopCo sought reconsideration of this Court's (i) *sua sponte* order that the Parties work on a proposed form of order to bifurcate the Fee Application Objections, and (ii) suggestion it may require TopCo escrow the delta in disputed fees.[15]

On April 24, 2026, White & Case filed an Objection to TopCo's Motion to Compel.[16]

On April 28, 2026, White & Case filed an Objection to the Motion to Reconsider.[17]

On April 30, 2026, the Court held a status conference regarding the Fee Application Objections and Motion to Reconsider.[18]  During the status conference, the Court ruled it would (i) order the Reorganized Debtor to escrow the disputed fees, (ii) enter the proposed bifurcation order previously filed by White & Case, and (iii) carry the Motion to Reconsider as an objection.[19]

---

ECF No. 1272 (Cresa Fee Application); ECF No. 1348 (order granting Cresa Fee Application).  On April 3, 2026, Cresa filed the Motion to Enforce the Final Fee Order, Compel Payment of Court-Approved Fees, and for Related Relief, alleging the Reorganized Debtor had failed to make payment to Cresa, and seeking enforcement of this Court's prior order granting the Cresa Fee Application.

[13] *Id.* at 6:2–9.

[14] ECF No. 1427.

[15] *Id.*

[16] ECF No. 1458.

[17] ECF No. 1466.

[18] ECF No. 1501.

[19] *Transcript for Hearing on April 30, 2026, Regarding Status Conference on Fee Application Objections*, ECF No. 1511 at 4:4–21.

The Court entered the Order Requiring the Reorganized Debtors to Deposit Funds in Escrow With the Court (hereinafter the "Escrow Order") the same day.[20]

On May 1, 2026, TopCo filed an appeal of the Escrow Order.[21]

On May 7, 2026, TopCo filed the instant Emergency Motion to Stay Pending Appeal of the Escrow Order.[22]

On May 9, 2026, the Court entered the Scheduling and Bifurcation Order.[23]

On May 11, 2026, White & Case filed the (I) Emergency Motion for Entry of an Order Finding TopCo in Civil Contempt, and (II) Emergency Objection to TopCo's Motion to Stay Pending Appeal.[24]

On May 20, 2026, the Court held a hearing on the Motion to Stay Pending Appeal, where the Parties presented oral arguments and the Court took the Stay Pending Appeal under advisement.[25]

## JURISDICTION AND LEGAL STANDARD

28 U.S.C. § 1334 provides the District Courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  The Court has post-confirmation jurisdiction over this matter as it "pertains to the implementation or execution of the [P]lan." *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); 11 U.S.C. § 1142(b).  This is a core proceeding the Court can consider under 28 U.S.C. § 157(b)(2)(B) and (L).  This proceeding has

---

[20] ECF No. 1502.
[21] ECF No. 1506.
[22] ECF No. 1518.
[23] ECF No. 1520.
[24] ECF No. 1521.
[25] ECF No. 1536.

4 / 21

been referred to the Bankruptcy Court under General Order 2012-6. The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). And venue is proper in this District pursuant to 28 U.S.C. § 1408.

Issuing a stay pending appeal is an "extraordinary remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 437 (2009) (Kennedy, J. concurring)). "Ordinarily, a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal." FED. R. BANKR. P. 8007(a)(1)(A). A stay pending appeal is an equitable remedy committed to the Court's discretion. *Bryant*, 919 F.3d at 393. The movant bears the burden of proving that a stay pending appeal should be granted by a preponderance of the evidence. *In re Geden Holdings, Ltd.*, No. 25-90138, 2026 WL 97993, at *1 (Bankr. S.D. Tex. Jan. 13, 2026) (citing *In re TMT Procurement Corp.*, No. 13-33763, 2014 WL 1577475, at *4 (Bankr. S.D. Tex. Apr. 16, 2014)). The following four factors guide the Court's discretion:

(1)     Whether the movant has made a showing of likelihood of success on the merits;

(2)     Whether the movant has made a showing of irreparable injury if the stay is not granted;

(3)     Whether the granting of the stay would substantially harm the other parties; and

(4)     Whether the granting of the stay would serve the public interest.

*In re First South Savings Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987).

The United States Supreme Court has stated "[t]he first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434. The Fifth Circuit has also stated "[a]lthough four factors are relevant to determining entitlement to a stay, the first (likelihood of success on the merits) is arguably the most important." *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005).

## DISCUSSION

### I.    LIKELIHOOD OF SUCCESS ON THE MERITS.

With respect to the first and most important factor, likelihood of success on the merits, TopCo argues this factor weighs in its favor and that TopCo is likely to succeed on its challenge of the Escrow Order because (i) the necessary factual elements and procedure for issuing mandatory injunctive relief were not established, (ii) the Escrow Order lacks statutory authority, (iii) the Escrow Order required the Reorganized Debtor to transfer its own property into the Court's registry without due process because it was raised and entered on a *sua sponte* basis without notice and an opportunity to be heard, (iv) the Escrow Order improperly expands the Reorganized Debtors' potential fee liability, and (v) the Escrow Order was impossible to comply with because it contained a retroactive compliance deadline.[26]

White & Case argues to the contrary: (i) TopCo's arguments are fundamentally misplaced because they operate off the false assumption that the funds at issue are the Reorganized Debtors' property, (ii) the Plan affirmatively provides funds earmarked for professionals must be held in an escrow account, and no Plan provision or alternative agreement grants the Reorganized Debtors authority over the manner in which that account is maintained, (iii) the standards and procedural protections in place for a mandatory injunction are not applicable because the Escrow Order merely enforces the Court's prior Confirmation Order, and (iv) the Escrow Order does not lack statutory authority because the Court has continuous authority to enforce its own

---

[26] ECF No. 1518, at 5–10.  In a parenthetical citation to *Ruiz v. Estelle*, TopCo asserts it only need present a "substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting stay."  666 F.2d 854, 856 (5th Cir. 1982).  TopCo does not explain why this matter presents a "serious legal question," nor why this case warrants some other relaxed standard.  *See In re Geden Holdings*, No. 25-90138, 2026 WL 97993, at *3 (Bankr. S.D. Tex. Jan. 13, 2026) (quoting *In re Dernick*, No. 18-32417, 2019 WL 236999, at *3 (Bankr. S.D. Tex. Jan. 16, 2019) ("A serious legal question exists when legal issues have far-reaching effect, involve significant public concerns, or have a broad impact on federal/state relations.")).

orders, such as the Confirmation Order, and the Escrow Order falls within this Court's broad powers under 11 U.S.C. § 105(a).[27]   For the reasons discussed below, the Court agrees with White & Case's position, and concludes TopCo has not sufficiently demonstrated a likelihood of success in challenging the Escrow Order on appeal.

### A.     The Escrow Order is Not a Mandatory Injunction.

To start, it must be noted TopCo appears to be operating off a fundamental misunderstanding of what the Plan requires in terms of the professional fee escrow account.  Article II ¶ 2.5 of the Plan provides:

> a) As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate.  No Liens, Claims, or Interests shall encumber the Professional Fee Escrow or Cash held in the Professional Fee Escrow in any way.  Subject to the DIP Orders, the Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors, their Estates, or the Reorganized Debtors, and (ii) shall be held in trust for the Professionals; *provided*, that funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full in cash pursuant to one or more Final Orders of the Bankruptcy Court shall revert to the Reorganized Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided*, that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.
>
> (b) If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed

---

[27] ECF No. 1521, at 10–12.

> Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly, and, in any event, by no later than five (5) Business Days of the Debtors or the Reorganized Debtors, as applicable, being alerted to such deficiency, funded in Cash to the Professional Fee Escrow from the Debtors' Estates or Reorganized Debtors, as applicable, without any further action or order of the Bankruptcy Court.
>
> (c) Any objections to Professional Fee Claims shall be served and filed no later than twenty-one (21) days after filing of the final applications for compensation or reimbursement.

*See* Confirmation Order, Ex. A at 19–20 (original emphasis).

TopCo's argument that the Escrow Order is deficient in satisfying the mandatory injunction requirements under *Winter v. Natural Resources Defense Council, Inc.* is an attack on a straw man. 555 U.S. 7 (2008). Those requirements are not applicable because the Escrow Order itself does not require affirmative conduct of the Reorganized Debtors not already required under the terms of the Confirmation Order.[28] *Savage Tavern v. Signature Stag, LLC,* 589 F.Supp.3d 624, 639 (N.D. Tex. 2022) ("A mandatory injunction [] 'seeks to alter the *status quo* prior to litigation rather than maintain it. That is, it mandates [a party] take some action inconsistent with the *status quo* rather than prohibiting them from altering the *status quo*.'") (quoting *Texas v. Ysleta*

---

[28] Nor are the requirements under FED. R. BANKR. P. 7001(g) applicable because the Escrow Order merely enforces the provisions of the Plan requiring the Reorganized Debtors to establish and maintain a *bona fide* and adequately funded escrow account for the payment of professional fees. To the extent there are allegations the Reorganized Debtors failed to comply with this provision, the Court's Escrow Order simply ensures that provision was complied with pending resolution of the issue. To the extent those allegations prove false—as the Court hopes they do—the Court is vested with the authority to withdraw the Escrow Order and permit the Reorganized Debtors to continue to comply with their obligations under the Plan. Keeping the Escrow Order in place during the pendency of the narrow dispute regarding whether the Reorganized Debtors failed to comply with the Confirmation Order is consonant with the procedural requirements laid out in FED. R. BANKR. P. 7001 for when adversary proceedings are required.

*del Sur Pueblo*, EP-17-CV-179-PRM, 2018 WL 1566866, at \*9 (W.D. Tex. Mar. 29, 2018)).

Here, the *status quo ante* was the Confirmation Order, which required the Reorganized Debtors to establish and maintain a *bona fide* professional fee escrow account adequately funded "with Cash equal to the Professional Fee Claims Estimate." *See* Confirmation Order, Ex. A at 19–20.  Article II ¶ 2.6 of the Plan provides

> Each Professional shall estimate in good faith its unpaid Professional Fee Claim and other unpaid fees and expenses incurred in rendering services to the Debtors, before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date (such estimate the "*Professional Fee Claims Estimate*"); *provided*, that such estimate shall not limit, nor shall it be construed as limiting, the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow; *provided*, that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow based on such estimates.

*See* Confirmation Order, Ex. A at 20 (original emphasis).  To the extent White & Case represented to the Reorganized Debtors in good faith its unpaid Professional Fee Claim, corresponding amounts were required to be funded in the professional fee escrow account under Article II ¶ 2.5 of the Plan.  *See* Confirmation Order, Ex. A at 19–20.

9 / 21

The Court initially noted the delta in White & Case's and AlixPartners' funds might need to be escrowed based on concerning allegations raised by Cresa in a separate motion that the Reorganized Debtor had failed make payments on one of this Court's previously granted fee applications.[29]  White & Case echoed these allegations at the hearing on the Motion to Stay Pending Appeal, in addition to other more concerning allegations the Reorganized Debtors had transferred funds out of what was purported as the professional fee escrow account to an affiliate.[30]  The escrow agreement TopCo introduced into evidence at the hearing on the Motion to Stay Pending Appeal purports "Verita [(the escrow agent)] will take direction from the Company's representatives, employees, agents and/or professionals [] with respect to [fund] services" Verita provides under the under that certain Services Agreement, dated as of August 11, 2025.[31]  The Services Agreement, attached as Exhibit A to the escrow agreement, broadly outlines the services Verita will provide with respect to administration and maintenance of the purported professional fee escrow account, but does not curb or limit the Reorganized Debtors authority over the account or its scope.[32]  Taking into consideration this evidence, White & Case's allegations, and TopCo's response at the hearing the Motion to Stay Pending Appeal,[33] the Court was left more concerned the Confirmation Order may have been violated and the disputed funds may be in jeopardy—not less.

If the Reorganized Debtors retained such broad authority over the professional fee escrow account as to be able to transfer funds to non-estate professional affiliates as White & Case alleges, the *status quo* as required under the Plan would have been altered.  If the Reorganized Debtors failed to adequately fund the professional fee escrow account with sufficient Cash corresponding to the Professional Fee Claims

---

[29] ECF No. 1412, at 5.

[30] *Transcript for Hearing on May 20, 2026, regarding Hearing on Motion to Stay Pending Appeal and Motion for Civil Contempt*, ECF No. 1554 at 12:1–19.

[31] ECF No. 1530-9, at 1–3.

[32] *Id.* at 3.

[33] *Transcript for Hearing on May 20, 2026, regarding Hearing on Motion to Stay Pending Appeal and Motion for Civil Contempt*, ECF No. 1554 at 18:18–22.

Estimate, the *status quo* as required under the Plan would have been altered.  On the basis of these allegations and with due concern, the Court issued the Escrow Order which ensured the *status quo ante* was preserved by requiring the delta in White & Case's and AlixPartners' fees be placed with the Court.  The substantive or procedural requirements for a mandatory injunction were simply not applicable given the circumstances.

### B.    The Escrow Order Did Not Violate Due Process.

Perhaps TopCo's strongest argument is that the Court entered the Escrow Order *sua sponte* from the bench, without prior request or an evidentiary hearing, and that TopCo was therefore deprived of its due process right to notice and an opportunity to be heard.

The Court was clear at the April 6, 2026 status conference on the Objected Fee Applications that it was concerned about recent allegations the Reorganized Debtors had theretofore violated the Confirmation Order.  In particular, the Court stated:

> THE COURT: The other thing that I noticed, there was a motion filed by [Cresa] that is the -- I had approved a fee app for them on an uncontested basis, and they haven't been paid. So I don't know how much money -- monies are still owed to White & Case and Alix, but I don't want, you know, to the extent I award additional fees, I don't want there to be any issue with the collection of those fees.[34]

Also at the April 6 hearing, the Court suggested it may order that TopCo escrow the difference in AlixPartners and White & Case's disputed fees with the registry of the Court:

> THE COURT: So I'm inclined to issue an order asking that -- requiring the Debtor to escrow the delta in the fees with the [r]egistry of the Court. So again, Mr. Patterson or Ms.

---

[34] *Transcript for Hearing on April 6, 2026, Regarding Status Conference on Objected Fee Applications*, ECF No. 1438 at 5:21–25, 6:1–5.

> Goott, if you could work with Mr. Zakia, figure out how much is still owed and put that in the [r]egistry of the Court, you know, subject to my court order.[35]

The foregoing demonstrated the Court was contemplating, but had not yet ruled, that it would order the delta in fees be escrowed pending resolution of the Objected Fee Applications.

Since the April 6 hearing, TopCo filed its Motion to Reconsider which contained numerous arguments as to why the Court should dismiss or vacate its (yet to be made) ruling that the difference in funds were to be placed with the Court's registry.[36]  It was not until after the April 30 hearing that the Court entered the Escrow Order—24 days after the April 6 hearing, and 21 days after TopCo filed its Motion to Reconsider.[37]

At the April 30 hearing, the Court stated it had considered the Motion to Reconsider and ruled it would carry the motion as an objection.[38]  Prior to entry of the Escrow Order, TopCo had three and a half weeks' worth of notice as to this issue, two separate hearings, and a separate filing.  It cannot be said TopCo lacked due process, when at each of these junctions TopCo had the opportunity to explain and assuage the Court of concerns that disputed funds were at risk of being transferred out of the purported professional fee escrow account then in use.  Instead, when directly asked about this issue at the April 30 hearing, counsel stated on the record he "[thought]" the purported professional fee escrow account used at the time "[was] an escrow account" because he had received an account on it "that morning," but that he was aware it had a "deficiency" and that he was "not sure" of the Court's interpretation of the Plan provisions providing obligations for the account.[39]  The record of this dispute demonstrates TopCo was

---

[35] *Id.* at 6:2–9.
[36] ECF No. 1427.
[37] ECF No. 1502.
[38] *Transcript for Hearing on April 30, 2026, Regarding Status Conference on Fee Application Objections*, ECF No. 1511 at 4:4–7.
[39] *Id.* at 26:1–20.

afforded ample notice and an opportunity to be heard on this issue, and that TopCo used these to muddle, rather than clarify what the status of the professional fee escrow account was. Accordingly, the nature of the Court's Escrow Order having been raised and issued *sua sponte* is not a reason to stay its effectiveness.[40]

Moreover, the backbone of TopCo's due process arguments is the premise that the Reorganized Debtors' property interests were violated by entry of the Escrow Order. But this premise is misleading at best. As stated above, Article II ¶ 2.5 of the Plan provides "that funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full in Cash pursuant to one or more Final Orders of the Bankruptcy Court shall revert to the Reorganized Debtors." So, it is true the Reorganized Debtors may retain a potential "reversionary interest" in the disputed funds based on multiple layers of contingency: the Court would need to disallow portions of the disputed funds, upon which those funds would remain escrowed until all Fee Applications were dealt with; then, if any funds remained after all Professional Fee Claims were paid, those escrowed funds would revert back to the Reorganized Debtors. However, the Escrow Order did not "presuppose entitlement to disputed funds," but rather ensured any funds subject to dispute were properly guarded. The order was parallel—not divergent—to the Plan. Those escrowed funds

---

[40] Cabined within TopCo's due process argument is the assertion that the Court lacked authority—statutory or otherwise—to enter the Escrow Order, and that no provision of the Bankruptcy Code or other federal laws were cited as a basis for the order. ECF No. 1518, at 9 ¶ 37. This argument can be dealt with in short order, because as stated in the jurisdiction statement of this Memorandum Opinion, Plan confirmation is a core matter, and this Court has continuous jurisdiction to enforce its own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Court also retains broad equitable powers under 11 U.S.C § 105(a) to issue orders "necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Moreover, issuing such *sua sponte* orders falls within the District Court's broad inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Anderson v. Dunn*, 19 U.S. 204, 227 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and *submission to their lawful mandates*.") (emphasis added)).

are not yet the Reorganized Debtors', nor White & Case's; they were the subject of the professional fee escrow, and ownership pends this Court's ruling on the Objected Fee Applications. Accordingly, the Escrow Order cannot be said to alter the Reorganized Debtors' property interests on this basis.

TopCo's argument the Reorganized Debtors retain a "present, non-contingent property interest in the administration of the escrow account itself," is similarly unavailing. TopCo mistakes the Reorganized Debtors' obligation to establish, maintain, and adequately fund the professional fee escrow account with a property interest. TopCo does not cite any proposition of law or any particular Plan provision which provides "administration of the professional fee escrow account is a property right of the Reorganized Debtors" or their assigns. Nor would it matter for purposes of element one of TopCo's Motion to Stay Pending Appeal. The Escrow Order was borne out of allegations raised by White & Case—and the Court's due concern—that the Reorganized Debtors had failed to comply with and were in violation of the Confirmation Order. The Escrow Order by requiring that the disputed funds be deposited with the Court's registry does not affect a property interest of the Reorganized Debtors, regardless of the truth of White & Case's allegations.

### C.      TopCo's Other Arguments are Unavailing.

With respect to TopCo's argument the Escrow Order improperly expands potential fee liability, the text of the order does not say that.[41] Paragraph three of the Escrow Order contains a broad yet general reservation of White & Case's and AlixPartners' rights to "seek additional compensation from the Reorganized Debtors, including on account of reimbursable fees or expenses incurred after the [E]ffective [D]ate."[42] This paragraph does not provide, those "additional funds" would be available pursuant to the Plan and the claims distribution

---

[41] ECF No. 1502.

[42] *Id.* at 2 ¶ 3.

14 / 21

process, as TopCo appears to suggest.  Indeed, the reservation would likely be aimed at reserving White & Case's and AlixPartners' right to seek funds from the Reorganized Debtors pursuant to Rule 11, perhaps based on TopCo's serial filings with respect to this matter or alleged violations of the Confirmation Order.

With respect to TopCo's argument the Escrow Order imposes an impossible retroactive compliance deadline, as the Court stated in its recent Order to Show Cause, TopCo's *ability to comply* with the Escrow Order's timing requirements has no bearing on alleged previous Confirmation Order violations.[43]  Again, the Escrow Order was issued based on allegations the Reorganized Debtors were violating the Confirmation Order, and was issued for the purpose of preserving the *status quo ante* under the Plan by requiring the disputed funds be safeguarded pending resolution of the Objected Fee Applications. Whether or not TopCo could have complied with a retroactive date in the Escrow Order—which was the product of a mere administrative error(typo), rather than any substantive defect with the order itself— has no bearing on the Court's premise for entering it.  If the Court withdrew the order, amended the date, and reissued it ensuring TopCo's compliance was required proactively, rather than retroactively, this argument would vanish.  This point does not prove TopCo is likely to succeed on the merits of its appeal.

In sum, the Court concludes TopCo failed to demonstrate its likelihood of success in challenging the Escrow Order on appeal.

## II.     IRREPARABLE INJURY.

With respect to element two, irreparable injury, TopCo provides two arguments: (i) the forced transfer of $1.644 million from the Reorganized Debtors' control into the Court's registry prior to any adjudication of the Objected Fee Applications constitutes irreparable harm in and of itself, and (ii) the deprivation of the Reorganized Debtors' ability to manage or otherwise control its property during the pendency

---

[43] ECF No. 1576, at 7 n.34.

of its appeal of the Escrow Order constitutes harm which cannot be fully remedied after the fact.[44]   White & Case argues TopCo's limited arguments with respect to "loss of control" over the disputed funds does not satisfy the burden of proving irreparable harm.[45] According to White & Case, TopCo cannot suffer irreparable harm from losing control over funds it does not own and may not be entitled to.[46]  According to White & Case, the Escrow Order's mere transfer of the disputed funds from one purported custodial arrangement to another does not constitute a cognizable injury, let alone an irreparable one.[47]   White & Case also states TopCo failed to identify any business disruption, operational harm, or injury beyond the purported loss of control over the disputed funds.[48]  The Court agrees with White & Case.

"The key word [for this factor] is *irreparable*, and an injury is 'irreparable' only if it cannot be undone through monetary remedies." *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985).  When assessing irreparable injury for the purpose of a preliminary injunction, the Supreme Court found that a movant must "demonstrate that irreparable harm is *likely*."  *Winters*, 555 U.S. at 22.

The Court's prior determination the Escrow Order does not affect the Reorganized Debtors' contingent (or purported non-contingent) property interests in the disputed funds takes the winds out of its irreparable harm argument.  Moreover, as White & Case aptly  points out, TopCo failed to explain or introduce any evidence as to why an order to escrow the disputed fees (which should have been off limits already) would likely affect the Reorganized Debtors' business operations—let alone how that order might harm, or could potentially harm the Reorganized Debtors.  Because the Court does not deem the Reorganized Debtors to have suffered articulable "harm" by escrowing the $1.644

---

[44] ECF No. 1518, at 10.

[45] ECF No. 1521, at 12–13.

[46] *Id.*

[47] *Id.*

[48] *Id.*

million with Court's registry, the Court need not address the issue of whether any purported harm caused by escrowing the disputed fees could be undone through monetary remedies.

TopCo failed to meet its burden with respect to element two of the stay pending appeal requirements as well.

### III.   SUBSTANTIAL HARM TO THE OTHER PARTIES.

With respect to the third element, balance of the hardships to the parties, TopCo argues (i) staying effectiveness of the Escrow Order would preserve the *status quo* pending appellate review—the *status quo* which, according to TopCo, "has all funds in escrow pursuant to [the P]lan," (ii) there is no evidence the Reorganized Debtors will dissipate or misuse the funds during the pendency of the appeal, and (iii) requiring the Reorganized Debtors to relinquish control imposes a unilateral burden on the Reorganized Debtors.[49]   In contrast, White & Case argues granting a stay of the Escrow Order would substantially harm Unofficial Creditor's Committee professionals and other estate professionals with outstanding administrative claims.[50]   White & Case argues that TopCo has demonstrated "vigorous resistance" to ensuring professionals fees are properly safeguarded, and that TopCo has no credibility for arguing those funds are not at risk of dissipation or misuse.[51]   White & Case argues that professionals hold beneficial interests in the disputed funds, that a stay of the Escrow Order risks their dissipation, commingling, or otherwise unavailability, and that the only burden TopCo faces is the prior obligation to fund the professional fee escrow.[52]   The Court agrees the balance of harms favors White & Case's position.

Balancing the harms "requires th[e] Court to balance the hardships of the parties and find whether the harms outweigh any likely irreparable injury to the movant absent a stay." *In re Dernick*, 2019 WL

---

[49] ECF No. 1518, at 11.
[50] ECF No. 1521, at 13.
[51] *Id.*
[52] *Id.*

at *4 (citing *Daniels Health Science, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 585 (5th Cir. 2013)).  "While no strict definition of 'substantial harm' exists, courts have generally found that a significant delay in the administration of the estate, or a delay in the distribution to creditors under a plan generally satisfies the criterion of harm to other parties."  *Id.* (citations omitted).

The Court has already determined the Reorganized Debtors have failed to demonstrate any articulable harm—let alone irreparable harm—that they might suffer as a result of denying the stay.  The Court also reasoned that the *status quo ante* under the Confirmation Order was supposed to be the disputed funds having been safeguarded in a *bona fide* professional fee escrow account that was adequately funded, although the underlying dispute in the Objected Fee Applications and allegations raised by White & Case gave the Court reason to doubt that was the case.  Requiring the disputed funds to be escrowed with the Court ensures the *status quo* is preserved, not altered.  Absent a stay, the purported "unilateral burden" the Reorganized Debtors stand to face is a prior obligation they had under the terms of the Plan.  TopCo is correct that no evidence has yet been admitting demonstrating the Reorganized Debtors are at risk of dissipating or misusing funds designated for professionals.[53]  Regardless, the nature of White & Case's allegations that the Reorganized Debtors heretofore violated both the Confirmation Order and the Escrow Order, in addition to Cresa's prior Motion to Enforce alleging the Reorganized Debtors failed to pay out sums granted in its own fee application suggest professionals with unpaid Professional Fee Claims in this bankruptcy proceeding may be at risk of nonpayment if this alleged conduct continues.[54]  Without making factual determinations as to the extent the Reorganized Debtors may have dissipated or misused funds earmarked for professionals, the

---

[53] The Letter White & Case attached to its Motion for Civil Contempt was not admitted into evidence at the hearing on the Motion to Stay Pending Appeal.  ECF No. 1536.

[54] *Transcript for Hearing on May 20, 2026, regarding Hearing on Motion to Stay Pending Appeal and Motion for Civil Contempt*, ECF No. 1554 at 12:1–19; ECF No. 1412, at 5.

Court concludes TopCo has failed to carry its burden with respect to element three of the stay pending appeal requirements.

### IV.   THE PUBLIC INTEREST.

With respect to element four, whether granting a stay would serve the public interest, TopCo argues (i) the public has a strong interest in ensuring bankruptcy courts act within their statutory authority and in accordance with fundamental principles of due process, and (ii) the public interest favors adherence to the Bankruptcy Code's framework for governing professional compensation, as laid out in 11 U.S.C. § 330.[55]  White & Case argues the question presented is not whether the Court was acting within its statutory authority when it entered the Escrow Order, but rather whether public interest is served by permitted a reorganized debtor to defy court orders.[56] According to White & Case, the answer to that question is no.[57]  White & case also argues the public interest is served by ensuring professionals who accept engagements in chapter 11 cases can do so with confidence that their allowed fees will be paid in accordance with the terms of a confirmed plan, and that holding otherwise might have a chilling effect on future representation of various constituencies.[58]  In the Court's view, the public interest does not favor granting the stay.

TopCo's public interest arguments reiterate its fundamental misunderstanding of what the Plan requires of the Reorganized Debtors and why the Escrow Order was entered.  First, the Court is not acting without statutory authorization, but rather is acting squarely within its authority.  TopCo asserts its appeal of the Escrow Order raises "significant legal questions concerning the limits of [this Court's] authority" but fails to address that this matter is a core proceeding, and the Court has continuous jurisdiction to enforce the Confirmation Order. 28 U.S.C. § 157(b)(2)(B), (L);  *Travelers*, 557 U.S. at 151.   Second,

---

[55] ECF No. 1518, at 11.
[56] ECF No. 1521, at 14.
[57] *Id.*
[58] *Id.* at 14–15.

"compel[ling] the pre-allowance deposit of disputed funds" is entirely consistent with the Confirmation Order—in fact, the Plan required the Reorganized Debtors to do just that. Third, TopCo appeared at multiple hearings and filed the Motion to Reconsider, stating arguments as to why the Escrow Order should not be entered before the Court did so; but its representations to the Court have exacerbated, rather than alleviated, the issue of alleged non-compliance with the Confirmation Order. Fourth, the Court has not circumvented its obligations to review the Objected Fee Applications for reasonableness and necessity under 11 U.S.C. § 330, but rather preserved them by ensuring nothing untoward happens to the disputed funds during adjudication of the dispute. Nor did TopCo introduce any evidence at the hearing on the Motion to Stay Pending appeal that might lead the Court to view the public interest in this case differently.

"In bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against that estate." *In re Dernick*, 2019 WL at \*5 (citations omitted). Ensuring the Reorganized Debtors pay out administrative claims for professional fees as designated under the Plan advances the public policy of a successful reorganization. *In re Babcock & Wilcox,* No. Civ. A. 00-1410, 2000 WL 1092434, at \*3 (E.D. La. Aug. 2, 2000). The Court is hesitant to enable any potential violations of the Confirmation Order. Denying the stay ensures the procedure for escrowing professional fees is complied with, while preserving the issue of whether the Confirmation Order has heretofore been violated with respect to the Reorganized Debtors' obligation to establish, maintain, and fund a *bona fide* professional fee escrow account. The Court concludes the public interest favors denying the stay.

## CONCLUSION[59]

---

[59] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

For the foregoing reasons, the Court hereby **DENIES** TopCo's Motion to Stay Pending Appeal.

White & Case's counsel is directed to settle an order consistent with this Memorandum Opinion within 14 days.

SIGNED 06/21/2026

_____
Alfredo R Pérez
United States Bankruptcy Judge