United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 09, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | **CASE NO: 25-90309** |
| **MODIVCARE INC., *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | **(JOINTLY ADMINISTERED)** |
| Reorganized Debtors. | § | |
| | § | |

**MEMORANDUM OPINION OVERRULING, IN PART, REORGANIZED DEBTORS' OBJECTION TO DAVID MOUNTS GONZALES'S APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**[RELATED TO ECF Nos. 1660, 1724, 1769]**

Pending before the Court is a contested matter regarding David Mounts Gonzales's ("Mr. Mounts Gonzales") Application For Payment of Administrative Claim Under 11 U.S.C. § 503(b)(1).[1] For the reasons stated below, the Reorganized Debtors' Objection to Mr. Mounts Gonzales's Application for Allowance of Administrative Claim is OVERRULED, in part, and the Court will schedule a hearing to determine whether the administrative claim is an actual and necessary cost of preserving the estate.

## BACKGROUND

On August 15, 2025 (the "Petition Date"), ModivCare Inc. ("ModivCare") and its debtor affiliates (collectively before the Effective Date, the "Debtors" and after the Effective Date, the "Reorganized Debtors") filed voluntary petitions for relief under Chapter 11 of the

[1] ECF No. 1660.

United States Bankruptcy Code.[2] On December 15, 2025, the Court entered an order confirming (the "Confirmation Order") the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan").[3]

Subsequently, on December 29, 2025, the Reorganized Debtors filed notice of the Confirmation Order, which provided that the Plan would be consummated on December 29, 2025 (the "Effective Date") and set the administrative claims bar date to February 5, 2026 (the "Administrative Claim Bar Date").[4] The notice was sent to Mr. Mounts Gonzales via first-class mail on January 6, 2026.[5]

Mr. Mounts Gonzales was a director for ModivCare until he resigned on November 9, 2025.[6] He requested payment in the amount of $243,942.00 for attorney's fees incurred in connection with services provided in the chapter 11 proceedings between July 31, 2025 and November 26, 2025.[7] The services provided include responding to discovery requests, taking part in interviews, and participating in depositions.[8] Mr. Mounts Gonzalez had previously entered into an indemnification agreement on May 20, 2025 (the "Prepetition Indemnification Agreement") which provides:

> Notwithstanding any other provision of this Agreement, to the fullest extent permitted by applicable law and to the extent that Indemnitee is, by reason of Indemnitee's Corporate Status, a witness, is or was made (or asked) to respond to discovery requests in any Proceeding, or otherwise asked to participate in any Proceeding to which Indemnitee is not a party, Indemnitee shall be indemnified against all Expenses actually and reasonably incurred by

[2] ECF No. 1.
[3] ECF No. 1055.
[4] ECF No. 1134 at 2.
[5] ECF No. 1182, Ex. D at 45.
[6] ECF No. 1724 at 6 ¶ 16.
[7] ECF No. 1660-6; ECF No. 1769 at 1–2.
[8] ECF No. 1660 at 3.

> Indemnitee or on Indemnitee's behalf in connection therewith.[9]

The Prepetition Indemnification Agreement was later rejected by the Reorganized Debtors upon the Effective Date.[10]

From January 12 to January 14, 2026, Mr. Mounts Gonzales, represented by Kasowitz LLP, conferred with Verita Global (the "Claims Agent") regarding the filing of an administrative claim (the "Administrative Claim").[11] Mr. Mounts Gonzales's counsel expressed his concern because the Administrative Claim form was attached as proof of claim Official Form 410, which contains language that the form "should not be used to make a claim for an administrative expense."[12] In response, the Claims Agent reassured and confirmed that the Administrative Claim may be submitted by filing an electronic proof of claim form ("ePOC") on the website.[13] Mr. Mounts Gonzales accordingly filed an ePOC on January 28, 2026, prior to the Administrative Claim Bar Date.

Months passed without receiving any response or payment so, Mr. Mounts Gonzales filed an application for payment of an Administrative

---

[9] ECF No. 1660-1 at 2. The "Indemnitee" is Mr. Mounts Gonzales. "Corporate Status" is described as the status of a person who is or was a director of ModivCare. "Proceeding" is broadly defined and includes the Chapter 11 case at issue.

[10] ECF No. 1055 at 102–04 ¶¶ 8.1(a), 8.4 ("On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors . . . shall be deemed assumed . . . except for those Executory Contracts and Unexpired Leases that . . . are rejected or terminated pursuant to the terms of this Plan.") ("[T]he Debtors and the Reorganized Debtors, as applicable, shall not be obligated to indemnify and hold harmless any Entity for any claim, cause of action, liability, judgment, settlement, cost or expense of the Non-Released Parties (as defined in the Plan Supplement)."). The Plan Supplement defines the Non-Released Parties as "AI Catalyst Fund, LP and each of their respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, ***controlling person***, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries." ECF No. 802 at 8. This provision applies to Mr. Mounts Gonzales as he is the controlling person of AI Catalyst Fund.

[11] ECF No. 1769-1 at 1–3.

[12] ECF No. 1769-1 at 1.

[13] ECF No. 1769-1 at 1 (the Claims Agent confirmed that "there [would] not be a separate form" to file an Administrative Claim).

Claim under 11 U.S.C. § 503(b)(1) on July 21, 2026, which was past the Administrative Claim Bar Date.[14] In response, on August 11, 2026, the Reorganized Debtors filed an objection to the application for payment of an Administrative Claim,[15] to which Mr. Mounts Gonzales responded on September 16, 2026.[16] A hearing was held before this Court on October 6, 2026.

## JURISDICTION

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. § 157(b)(2)(B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). And venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

11 U.S.C. § 503(b)(1)(A) provides that administrative expenses may be allowed, after notice and a hearing, if the expenses are actual and necessary costs or expenses of preserving the estate. The Fifth Circuit has held that an entity seeking to recover post-petition administrative expenses must timely request payment of administrative expenses with the court, not merely file a proof of claim. *See NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991); *see also In re Jack Kline Co.*, 440 B.R. 712, 734–35 (Bankr. S.D. Tex. 2010). However, "[a]n entity . . . may tardily file [a] request [for payment of

[14] ECF No. 1660.
[15] ECF No. 1724.
[16] ECF No. 1769.

administrative expenses] if permitted by the court ***for cause***." 11 U.S.C. § 503(a) (emphasis added).

For an administrative claim to qualify as an "actual and necessary cost" under § 503(b)(1)(A), the claim must have arisen post-petition and as a result of actions taken by the trustee or debtor-in-possession that benefitted the estate. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001); *In re Barrow Shaver Resources Company, LLC*, No. 24-33353, 2026 WL 2493843, at *21 (Bankr. S.D. Tex. Aug. 24, 2026). The claim, therefore, must arise from "voluntary transactions with third parties who [provide] . . . services necessary to the successful reorganization of the debtor's estate." *In re Jack/Wade Drilling,* 258 F.3d at 387. A claimant seeking payment of an administrative claim bears the burden of proving the validity of such claim. *See In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019) (citing *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992)).

A debtor is obligated to pay for the services value if the debtor continues to receive benefits from a claimant under an executory contract, pending a decision to assume or reject the contract. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.") (citation omitted). If the claimant "performs on the executory contract postpetition, it is entitled to a postpetition administrative claim." *In re El Paso Refinery, L.P.*, 220 B.R. 37, 43 (Bankr. W.D. Tex. 1998).

**DISCUSSION**

The question presented before the Court is whether the Court may allow Mr. Mounts Gonzales's tardily filed application of an Administrative Claim. If so, whether the post-petition services are

actual and necessary costs of preserving the estate. Lastly, whether Mr. Mounts Gonzales's payment request for post-petition services, pursuant to a rejected Prepetition Indemnification Agreement, qualifies as an Administrative Claim under § 503(b).

For the reasons stated below, the Court (1) allows Mr. Mounts Gonzales's tardily filed application of an Administrative Claim "for cause" under § 503(a); (2) finds Mr. Mounts Gonzales's Administrative Claim arises post-petition; (3) concludes the payment request for post-petition services, pursuant to a rejected Prepetition Indemnification Agreement, qualifies as an Administrative Claim; and (4) schedules a further hearing to rule on whether the post-petition services performed are actual and necessary costs of preserving the estate.

## I. Mr. Mounts Gonzales Tardily Filed His Application Requesting Payment of an Administrative Claim. However, a Tardily Filed Application May be Allowed "For Cause" Under 11 U.S.C. § 503(a).

The Court will first assess whether to allow Mr. Mounts Gonzales's tardily filed application for payment of an Administrative Claim.

### A. Mr. Mounts Gonzales Tardily Filed the Application for an Administrative Claim.

The Fifth Circuit has established a bright-line rule, providing that a claimant seeking to recover a post-petition administrative expense must file an application for such claim, not merely file a proof of claim. *See NL Indus.*, 940 F.2d at 966; *see also In re Jack Kline Co.*, 440 B.R. at 734–35. "Filing a proof of claim containing an administrative expense request is simply insufficient for a creditor to satisfy its obligation under § 503(a) to timely file and serve a request for payment of an administrative claim by an Administrative Claims Bar Date." *In re Taco Bueno Rests., Inc.*, 606 B.R. 289, 298 (Bankr. N.D. Tex. 2019).

In the instant case, the Plan requires the filing of an Administrative Claim to be completed prior to the Administrative Claim Bar Date, which was set to February 5, 2026.[17] Nonetheless, Mr. Mounts Gonzales tardily filed the application on the Court's docket on July 21, 2026, which is 166 days after the deadline.[18] Although Mr. Mounts Gonzales timely filed an ePOC on January 28, 2026—before the Administrative Claim Bar Date—the law is clear that a proof of claim containing a request for payment of administrative expenses is insufficient under § 503(b).

Thus, Mr. Mounts Gonzales's tardily filed application for payment of an Administrative Claim should not be allowed, unless the Court finds a "cause" to allow such claim.

### B. The Court Finds "Cause" to Allow the Tardily Filed Request for Payment of an Administrative Claim.

Section 503(a) provides that a claimant may tardily file a request for payment of administrative expenses "if permitted by the court for cause." *See* 11 U.S.C. § 503(a).

*In re Taco Bueno* illustrates facts analogous to the instant case.[19] *See generally* 606 B.R. at 289–305. There, the court held that a claimant's timely proof of claim, which characterizes part of the claim as a post-petition claim, does not constitute a finding of "cause" that permits a tardily filed Administrative Claim application. *Id.* at 303. The debtor there had sent ten notices to the claimant regarding the

---

[17] ECF No. 1134 at 2.

[18] ECF No. 1660.

[19] A claimant was served with notice of the Plan Confirmation and Effective Date. The claimant subsequently filed a proof of claim using the Official Form 410 prior to the Administrative Claim Bar Date, characterizing part of the claim as an Administrative Claim. "The preface in the first paragraph of the Proof of Claim explicitly informed counsel for [the claimant] as follows: 'Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.'" The claimant later filed a Request for Allowance and Payment of Administrative Expense after the bar date had passed.

relevant deadlines, and therefore, the claimant's "lack of notice" argument did not present the court with sufficient evidence establishing "cause." *Id.* at 303–04. Further, the court reasoned that, *inter alia*, the claimant's attorney disregarded the instruction on Official Form 410, which provides a conspicuous warning to "not use this form to make a request for payment of an administrative expense." *Id.* at 301.

The *In re Taco Bueno* court distinguished its case with *In re Sage Richmond L.L.C.*, where the court there allowed a tardily filed Administrative Claim that was filed through a timely proof of claim. *See* 285 B.R. 364, 365–66 (Bankr. E.D. Va. 2002). There, the court agreed with the proposition that a request for an Administrative Claim cannot be filed as a proof of claim. *Id.* at 365 (citing 4 COLLIER ON BANKRUPTCY ¶ 503.02 [1] (Lawrence P. King ed., 15th ed. rev. vol. 2001)). However, the court recognized there is "little case authority on the issue raised[;]" and nevertheless, "there is some authority for the court to allow a [claimant] to characterize a proof of claim as a request for administrative expense." *Id.*

This Court believes the reasoning in *In re Sage Richmond* has some relevance here, and this case is distinguishable from *In re Taco Bueno*. Mr. Mounts Gonzales's counsel has shown "cause" for the tardily filed application. As shown in the email correspondence, Mr. Mounts Gonzales's counsel communicated with the Claims Agent that the proof of claim Official Form 410 was the only available form in the claims register website. Unlike *In re Taco Bueno*, Mr. Mounts Gonzales's counsel did not disregard the conspicuous warning in the Official Form 410 but rather pointed out to the Claims Agent that the "form should not be used to make a claim for an administrative expense."[20] He subsequently asked the Claims Agent to direct him to the applicable Administrative Claim form. The Claims Agent instead instructed him to

[20] ECF No. 1769-1 at 1.

"submit the [administrative] claim form using the electronic proof of claim Form (ePOC) on the website."[21]

The Court views this email correspondence as sufficient evidence in establishing "cause" to allow Mr. Mounts Gonzales's tardily filed application for payment of an Administrative Claim.[22]

### II. Mr. Mounts Gonzales May Request Payment of an Administrative Claim so Long as the Post-Petition Expenses are Necessary for Preserving the Estate.

An administrative claim may be allowed, after notice and a hearing, if the claim arises post-petition and as a result of actions taken by the trustee or debtor-in-possession that benefited the estate. *In re Jack/Wade,* 258 F.3d at 387.

The Court will address the next issues in the following order: (1) first, whether Mr. Mounts Gonzales's Administrative Claim arises post-petition and if so, whether the payment request for post-petition services pursuant to a rejected contract may be allowed; and (2) second, whether the Administrative Claim is a result of actions taken by the trustee or debtor-in-possession that benefited the estate.

---

[21] ECF No. 1769-1 at 1.

[22] ECF No. 1724 at 14–15. The Reorganized Debtors argue that Mr. Mounts Gonzales "failed to demonstrate excusable neglect to support the late filing of his administrative claim" under the *Pioneer* factors. *See generally Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (the factors in determining whether a party's neglect of a deadline is excusable include: the "danger of prejudice to debtor, length of delay and its potential impact on judicial proceedings, reason for delay, including whether it was within reasonable control of movant, and whether movant acted in good faith"). Applying the *Pioneer* factors, the Court reaches the same conclusion. The *Pioneer* factors weigh in favor of Mr. Mounts Gonzales—his counsel acted in good faith and has a sound reason for delay because he communicated with the Claims Agent and was reassured that the method to file an Administrative Claim was to file an ePOC on the claims register website.

### A. Mr. Mounts Gonzales's Request for Payment of an Administrative Claim Arises Post-Petition.

In their brief, the Reorganized Debtors cite *In re Trevino* and *In re Superior Air Parts, Inc.* to support their argument that Mr. Mounts Gonzales's claim arises pre-petition when the Prepetition Indemnification Agreement was signed, not when the post-petition events triggering the indemnification obligation occurred.[23] *See generally* 535 B.R. 110, 148 (Bankr. S.D. Tex. 2015); 486 B.R. 728, 739 (Bankr. N.D. Tex. 2012) *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014). However, reliance on *Trevino* and *Superior Air Parts* is misplaced.

The court in *Trevino* applied a prepetition relationship test to determine whether a future claimant has a "claim" under § 101(5). 535 B.R. at 148. The court further applied the prepetition relationship test to an indemnification claim, stating "the operative date for a bankruptcy claim is when the agreement was executed, not when the facts giving rise to actual liability occurred." *Id.* However, *Trevino* did not involve an administrative expense claim. Similarly, *Superior Air Parts* did not involve an administrative expense claim. *See generally* 486 B.R. at 739.

The Court agrees that a prepetition relationship test is useful in determining whether a future claimant has a "claim" under § 101(5); nonetheless, the Court is reluctant to apply the prepetition relationship test in determining whether a claim arises post-petition for purposes of § 503(b).

The Reorganized Debtors further assert that the indemnification claims of former directors should be denied priority because the underlying service was prepetition. The Court instead finds this argument and the cited cases to weigh against them.[24] Here, the

---

[23] ECF No. 1724 16–19.

[24] ECF No. 1724 at 18 n.3. In support of their argument, the Reorganized Debtors cite to the following cases, which the Court finds unpersuasive and misplaced. *See e.g.*, *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 819–22 (Bankr. D. Del.

Reorganized Debtors' obligation to indemnify Mr. Mounts Gonzales arose from his *post-petition conduct*, not based on his underlying prepetition services. Following the Petition Date, Mr. Mounts Gonzales produced documents for ModivCare's discovery requests.[25] He was interviewed by the special committee of the Board of Directors in their efforts to investigate potential estate causes of action on October 30, 2025.[26] He was deposed by the creditors' committee on November 14 and 26, 2025.[27] These post-petition expenses incurred by Mr. Mounts Gonzales are arguably indemnified pursuant to Section 6 of the Prepetition Indemnification Agreement.[28] Accordingly, Mr. Mounts

---

1999) (holding that the indemnification costs incurred by the directors as defendants in a securities fraud litigation is not entitled to administrative expenses because *the litigation arose prepetition* and *was based on the directors' prepetition conduct*, not merely because the underlying service was prepetition); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 n.4 (1st Cir. 1992) (holding that a claimant's request for payment based on his prepetition lease indemnification agreement is not an administrative expense because the lease agreement was no longer executory at the time of the debtor's Chapter 11 filing and did not benefit the estate); *In re Christian Life Ctr.,* 821 F.2d 1370, 1373–74 (9th Cir. 1987) (holding that the indemnification claim is not entitled to administrative priority because the claim for indemnity arose from a claimant's pre-petition conduct); *In re Amfesco Indus., Inc.*, 81 B.R. 777, 784–85 (Bankr. E.D.N.Y. 1988) (holding that a claimant may be entitled to an administrative claim for indemnification only if the services are rendered post-petition to the debtor-in-possession); *In re Philadelphia Mortg. Tr.*, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) (holding that a claimant's claim is not entitled to an administrative claim because the "services which gave rise to them were performed pre-petition"); *In re Baldwin-United Corp.*, 43 B.R. 443, 454–56 (S.D. Ohio 1984) (confirming that officers and directors' indemnity claims are not entitled to administrative priority for expenses accrued in defending themselves against allegations of misconduct during their prepetition tenure on the board).

[25] ECF No. 1660 at 3 ¶ 7.

[26] ECF No. 1660 at 3 ¶ 8.

[27] ECF No. 1660 at 3–4 ¶ 9.

[28] ECF No. 1660-1 at 3, 6 § 6 (emphasis added) ("[T]o the extent that Indemnitee is, ***by reason of Indemnitee's Corporate Status***, a witness, is or was made (or asked) to ***respond to discovery requests in any Proceeding***, or otherwise ***asked to participate in any Proceeding to which Indemnitee is not a party***, Indemnitee shall be indemnified against all Expenses actually and reasonably incurred by Indemnitee or on Indemnitee's behalf in connection therewith."). The "Indemnitee" is Mr. Mounts Gonzales. "Corporate Status" is described as the status of a person who is or was a director of ModivCare. "Proceeding" is broadly defined and includes the Chapter 11 case at issue. *See* ECF No. 1660-1 at 2; ECF No. 1660 at 2.

Gonzales may request payment for the post-petition services performed from the Petition Date on August 15, 2025.

### *i. Post-Petition Services Pursuant to a Rejected Prepetition Indemnification Agreement.*

Because the Court concludes that the Administrative Claim arises post-petition, the Court will now turn on whether the payment request for post-petition services, pursuant to a rejected contract, qualifies as an Administrative Claim.

The Reorganized Debtors' obligation to indemnify Mr. Mounts Gonzales's post-petition services is rejected under Section 8.4 of the Plan.[29] Nevertheless, a debtor is obligated to pay for the post-petition value provided by the claimant under an executory contract, pending a decision to assume or reject the contract. *See Bildisco & Bildisco*, 465 U.S. at 531. If the claimant "performs on the executory contract postpetition, it is entitled to a postpetition administrative claim." *In re El Paso Refinery,* 220 B.R. at 43. Mr. Mounts Gonzales may therefore request payment for services performed post-petition and pre-rejection. Accordingly, the payment request for post-petition and pre-rejection services qualifies as an Administrative Claim.

---

[29] ECF No. 1055 at 104 ¶ 8.4; ECF No. 802 at 8; ECF No.1724 at 22 ¶ 5. Section 8.4 of the Plan states in pertinent part: ***"Except as otherwise provided in this Plan, all such Indemnification Obligations shall be deemed and treated as Executory Contracts that are assumed by the Debtors under this Plan.*** Notwithstanding anything to the contrary set forth in this Section 8.4 of this Plan or elsewhere, ***the Debtors and the Reorganized Debtors, as applicable, shall not be obligated to indemnify and hold harmless*** any Entity for any claim, cause of action, liability, judgment, settlement, cost or expense of ***the Non-Released Parties*** (as defined in the Plan Supplement)." ECF No. 959. According to the Plan Supplement, the "Non-Released Parties" include Mr. Mounts Gonzales as a controlling person of AI Catalyst Fund. *See* ECF No. 802 at 8.

### B. The Administrative Expense Must Be an Actual and Necessary Cost or Expense of Preserving the Estate.

The Court will schedule a hearing to determine whether Mr. Mounts Gonzales's Administrative Claim is a result of actions taken by a trustee or debtor-in-possession, to request post-petition services, that benefited the estate.

## CONCLUSION

For the reasons stated above, the Court hereby OVERRULES, in part, the Reorganized Debtors' Objection to David Mounts Gonzales's Application for Allowance of Administrative Claim.[30] A hearing will be scheduled to determine whether the post-petition services performed are actual and necessary costs of preserving the estate.

Signed: November 09, 2026

Alfredo R Pérez
United States Bankruptcy Judge

[30] ECF No. 1724.